UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
NO.05-30102-MAP

———————————

ANTHONY GARVIN
PLAINTIFF
V.
HAMPDEN COUNTY SHERIFF'S DEPARTMENT, SHERIFF MICHAEL J. ASHE, JR.,
HAMPDEN COUNTY COMMISSIONERS, COMMONWEALTH OF MASSACHUSETTS,
SUPT. BASIL TSGARIS, DEPUTY CHIEF OF SECURITY KENNEY,
MAJOR (FIRST NAME UNKNOWN) WELDON, LT. (FIRST NAME UNKNOWN)
KORMAN, LT. JUAN RAMOS, LT. (FIRST NAME UNKNOWN) CADIGAN,
OFFICER WILLIAM MULDROW, OFFICER VICTOR KELLY AND
THE UNKNOWN OFFICER IN THE TOWER
DEFENDANTS

———————————

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL DISCOVERY.**

Now come the defendants in the above-entitled action and oppose Plaintiff's

Motion to Compel Discovery.  As reasons therefore, defendants state as follows:


This is a case in which plaintiff makes numerous claims arising out of two

incidents that occurred while plaintiff was incarcerated at the Hampden County

Correctional Center in 2003.  The first incident involves an assault on plaintiff by an

inmate named Timothy Zanetti on or about June 2, 2003.  The second incident

involves the assignment of another inmate, Omar Marrero, as plaintiff's cell mate

during the period from about September 17, 2003 to about September 30, 2003.

Plaintiff claims that Mr. Marrero obtained information about plaintiff during this

time and later testified untruthfully against the plaintiff during the plaintiff's trial

which resulted in plaintiff's conviction on a first degree murder charge.

Defendants have each answered numerous interrogatories and they have responded to Plaintiff's requests for production so as to provide the discoverable information or material available to them. (See discovery responses attached) The facts relevant to the circumstances surrounding the assault, including the name of the officers on duty in the area at the time, the duties of the various individual defendants at the time, their knowledge concerning the parties to the assault and the policy and procedure for moving inmates into and out of cells have been disclosed, all as more specifically set forth in defendants' particular discovery responses,. Relevant non-privileged documents have also been produced pertaining to this matter. However, plaintiff seeks and asks the Court to compel the disclosure of extensive additional information and material that is not relevant to his claim, not discoverable for the various reasons set forth in Defendants' responses, and the provision of which would unduly infringe on the security of the correctional facility.

Similarly, with respect to the assignment of Mr. Marrero as plaintiff's cell mate, defendants have also disclosed the circumstances surrounding Mr. Marrero's assignment to plaintiff's cell, the general procedure involved in making such assignments and the information known to the defendants at the time of the assignment. Relevant non-privileged documents have also been produced. More particularly, defendants' information indicates that they were not aware of any hostility between Marrero and the plaintiff until after they were no longer cell mates and defendants deny employing Mr. Marrero to unlawfully obtain information from

2

plaintiff. Again, however, plaintiff seeks and asks the Court to compel the disclosure of extensive additional information and material that is not relevant to his claim, not discoverable for the various reasons set forth in Defendants' responses, and the provision of which would unduly infringe on the security of the correctional facility, all as more specifically set forth in Defendants' particular discovery responses.

During the course of status conferences in the present case, plaintiff has admitted that the same arguments made in this case concerning Mr. Marrero were made unsuccessfully at plaintiff's criminal trial seeking to preclude Mr. Marrero's testimony. That case is reportedly on appeal and Defendants contend that Plaintiff is attempting to use discovery in this case of irrelevant, immaterial or protected information, including information in the alleged possession of the Hampden and Hampshire District Attorneys' offices, to try to support the appeal of his criminal case.

Defendants rely on the responses made previously to Plaintiffs particular discovery requests and they contend that the additional material and information

3

sought by plaintiff is not discoverable in this action. WHEREFORE, the defendants

request that the Plaintiff's Motion to Compel Discovery be denied.

> The Defendants,
> By their Attorney:
>
> *Kevin D Withers*
>
> Edward J. McDonough, Jr.
> Kevin D. Withers, Esq., BBO# 531660
> Egan, Flanagan and Cohen, P.C.
> 67 Market Street - Post Office Box 9035
> Springfield, MA 01102
> (413) 737-0260; Fax: (413) 737-0121

### Certificate of Service

*Kevin D. Withers* certifies that copies of the foregoing document was served on Anthony Garvin to S.B.C.C. P. O. Box 8000, Shirley, MA 01464 by first class mail on 10/18/2006.

4

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
NO.05-30102-MAP

—————————————

ANTHONY GARVIN
PLAINTIFF
V.
HAMPDEN COUNTY SHERIFF'S DEPARTMENT, SHERIFF MICHAEL J. ASHE, JR.,
HAMPDEN COUNTY COMMISSIONERS, COMMONWEALTH OF MASSACHUSETTS,
SUPT. BASIL TSGARIS, DEPUTY CHIEF OF SECURITY KENNEY,
MAJOR (FIRST NAME UNKNOWN) WELDON, LT. (FIRST NAME UNKNOWN)
KORMAN, LT. JUAN RAMOS, LT. (FIRST NAME UNKNOWN) CADIGAN,
OFFICER WILLIAM MULDROW, OFFICER VICTOR KELLY AND
THE UNKNOWN OFFICER IN THE TOWER
DEFENDANTS

—————————————

DEFENDANT MICHAEL J. ASHE, JR.'S ANSWERS TO PLAINTIFF'S
FIRST SET OF INTERROGATORIES

1.    Define the duties and responsibilities of each defendant.

A.    Objection.  Defendants object to producing this documentation  because
      plaintiff has requested information that could threaten the safety, health and
      security of staff and other inmates.  Without waiving said objection states as
      follows:
              Michael J. Ashe, Jr. is Sheriff of Hampden County
              Basil Tsagaris is Assistant Superintendent
              John Kenney is Deputy Chief of Security
              Edward Weldon is Assistant Superintendent in charge of classification
              Thomas Korman is a Lieutenant
              Juan Ramos is a Captain
              John Cadigan is a Captain
              William Muldrow is a Correctional Officer
              Victor Kelly is a Correctional Officer

2.    Who is in charge of cell assignment at the C-tower?

A.    After classification assigns a pod, the pod officers on duty assign the cell.

3.    On June 2nd, 2003, did officer Muldrow radio to the control tower and order
      the unknown officer in the tower to open the cell door of Timothy Zanetti?

A.    See Officer Muldrow's answers to interrogatories.

4.    Where was officer Muldrow when said cell was opened?

A.      See Officer Muldrow's answers to interrogatories.

5.      Were there any other officers in front of the door when it was opened? If so, who?

A.      See Officer Muldrow's answers to interrogatories.

6.      Did officer Muldrow and officer Kelly know that the plaintiff was on administrative protective custody?

A.      I do not know.  See Answers of Officer Muldrow and Officer Kelly.

7.      Whoelse [sic] knew of the plaintiff's status? And how did they know?

A.      I do not know.  The information concerning plaintiff's status is available on the computer system.

8.      Did anyone report this attack to medical? If so, who, when; If not, why?

A.      According to the Incident Report and Medical Records, Health Services was called.

9.      Did the plaintiff receive medical treatment in regard to the attack? If yes, state when, where, and by whom; If hot, state why not.

A.      According to the Medical Records, Plaintiff was seen by Michael Hall on June 2, 2003.

10.     Was the attack video taped? If so who has it? If not, state why.

A.      I do not know.  See John Kenney's Answers to Interrogatories.

11.     What is the defendant, the-unknown officer in the tower's name?

A.      Tim Allen.

12.     Why has the unknown officer in the tower not answered the complaint?

A.      I have been advised by counsel that the complaint has not been amended nor served on the officer.

13.     Has the unknown officer in the tower ever worked in the C-2 unit between May 27,2003 and June 2nd, 2003? If so, when?

A.    I do not know.  See John Kenney's answers to interrogatories.

14.    Did anyone question inmate Zanetti as to his motive for the attack? If so, who, when; and what was discovered if anything?; and was it documented? If not, why not?

A.    I do not know.  See John Kenney's Answers to Interrogatories.

15.    Did the plaintiff request any actions to be taken due to said attack?  If so what and when as well as who it was requested of?

A.    I do not know.  See John Kenney's Answers to Interrogatories.

16.    What, if anything was done about this attack on the plaintiff?  When and by whom.

A.    I do not know.  See John Kenney's Answers to Interrogatories.

17.    Was the institution aware of any threats or the likelyhood [sic] of danger the plaintiff faced?  If so, who was aware?

A.    I do not know.    See John Kenney's and Juan Ramos' Answers to Interrogatories.

18.    Was the institution aware of Omar Marrero's affiliation to the lafamilia gang? If so, when did they become aware; and in said circumstancies [sic], who is notified of such a status?

A.    I do not know.  See Juan Ramos's Answers to Interrogatories.

19.    Was anyone at the Hampden county house of correction involved in contacking the state police, or the district attorney's office, for the soul purpose of assisting Omar Marrero in becoming a commonwealth witness against the plaintiff? If so, who ,when was the call made; and from what number and extension was the call made?

A.    Not to my knowledge.

20.    Did Lt. Juan Ramos notify the district attorney's office of any other potential witnesses against the plaintiff, and or in any other criminal matter? If so, who were said potential witnesses, and from where did he place said call to the district attorney? What is the phone number and extention [sic] of said phone?

A.    See Lt. Ramos' Answers to Interrogatories.

21.   Did LT. Juan Ramos tell the plaintiff's private investigator, Nicholas Cockoros, that inmate Timothy Zanetti was no longer at the Hampden county house of correction, and that Mr.Zanetti did not want to speak to anyone on April 2nd of 2004

A.    See Lt. Ramos' Answers to Interrogatories.

22.   Was Springfield police officer Michael White under mental observation and, or suicide watch while housed in the C-2 unit? If so, when, why and in what cell(s) was he housed in? And from what date was he in said cell(s)?

A.    Objection.  The information sought is protected by the phsycian-patient privilege.

23.   Was anyone aware of the fact that Omar Marrero was a Commonwealth witness prior to being placed in the plaintiff's cell?  If so, who and what did he/she know?

A.    Not to my knowledge.

24.   How many times was Omar Marrero in any of the segregation units? And why was he there each time?

A.    Objection.  The information sought constitutes "evaluative information" under the C.O.R.I. statute.  M.G.L. c. 6 § 167 exempts from disclosure, "evaluative information" defined as: "'Evaluative information', records, data, or reports concerning individuals charged with crime and compiled by criminal justice agencies which appraise mental condition, physical condition, extent of social adjustment, rehabilitative progress and the like, and which are primarily used in connection with bail, pre-trial or post-trial release proceedings, sentencing, correctional and rehabilitative planning, probation or parole."

25.   When Omar Marrero returned to the C-2 unit in, or around september of 2003, why was he placed there?

A.    Objection.  The information sought constitutes "evaluative information" under the C.O.R.I. statute.  M.G.L. c. 6 § 167 exempts from disclosure, "evaluative information" defined as: "'Evaluative information', records, data, or reports concerning individuals charged with crime and compiled by criminal justice agencies which appraise mental condition, physical

4

condition, extent of social adjustment, rehabilitative progress and the like, and which are primarily used in connection with bail, pre-trial or post-trial release proceedings, sentencing, correctional and rehabilitative planning, probation or parole."

26.     Upon Inmate Marrero's return to C-2 this time in question did anyone learn of Mr.Marrero's alleged Commonwealth witness status? If so, who and what did they learn?

A.      Not to my knowledge.

27.     Did officer Kelly enter an enemey [sic] status between Omar Marrero and the plaintiff on october 28, 2003? If so why?; and If not this date, did he do so on any date? and why?

A.      See Officer Kelly's Answers to Interrogatories.

Signed under the penalties of perjury this 17th day of May, 2006.

_Michael J. Aske, Jr._
Michael J. Aske, Jr.
Sheriff of Hampden County

**AS TO OBJECTIONS:**

_Edward J. McDonough, Jr._
Edward J. McDonough, Jr., Esquire

Certificate of Service

_Edward J. McDonough_ certifies that copies of the foregoing document was served on Anthony Garvin to S.B.C.C. P. O. Box 8000, Shirley, MA 01464 by first class mail on 5/17/2006.

5

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
No.05-30102-MAP

---

ANTHONY GARVIN
PLAINTIFF
V.
HAMPDEN COUNTY SHERIFF'S DEPARTMENT,
SHERIFF MICHAEL J. ASHE, JR.,
HAMPDEN COUNTY COMMISSIONERS,
COMMONWEALTH OF MASSACHUSETTS,
SUPT. BASIL TSGARIS,
DEPUTY CHIEF OF SECURITY KENNEY,
MAJOR (FIRST NAME UNKNOWN) WELDON,
LT. (FIRST NAME UNKNOWN) KORMAN,
LT. JUAN RAMOS,
LT. (FIRST NAME UNKNOWN) CADIGAN,
OFFICER WILLIAM MULDROW,
OFFICER VICTOR KELLY AND
THE UNKNOWN OFFICER IN THE TOWER
DEFENDANTS

---

DEFENDANT MICHAEL J. ASHE, JR.'S ANSWERS
TO PLAINTIFF'S SUPPLEMENTAL SET OF INTERROGATORIES

1.    What are your full and in detail daily duties and responsibilities at the

Hampden county House of correction and in regard to the C-1 and C-2 unit?

RESPONSE: Defendants object to providing this information because

plaintiff has requested information that could threaten the

safety, health and security of staff and other inmates.    The

information requested is not relevant to the issue pleaded in

the pending action and is not reasonably calculated to lead to

the discovery of admissible evidence.    Without waiving said

objection states as follows: I am the Sheriff of Hampden

County and an employee, official and officer of the

Commonwealth of Massachusetts. My duties involve general

supervision of all aspects of the operation of the Hampden County Correctional Center, including but not limited to C-1 and C-2.

2.    What is the procedure that any officer must follow when removing and replacing an inmate from and into a cell in detail?

RESPONSE:  A standard escort by an officer on duty would involve the opening/closing of the cell trap door, appropriately cuff the inmate through the trap door, inmate is requested to turn away from the door, signal/radio to tower to open specific cell door, if appropriate place leg restraints and escort inmate to destination.

3.    Is it some ones [sic] responsibility to check if or make sure that enemies are not placed in the same cell? If so, who was that person for the C-1 and C-2 unit in 2003?

RESPONSE:  The person making such assignment varies.  POD staff on duty normally assigns POD cells.  At the time the assignment is made, the officer on duty would consider all the available information pertinent to the assignment process, including known enemy status.

4.    Do you have any personal relationship with anyone in the district attorney's office? If so, who and how so?

RESPONSE:  Objection - the question is unduly vague an ambiguous with respect to the meaning of the term "personal relationship" and the information sought is not relevant to the subject matter of

2

the pending action and is not reasonably calculated to lead to the discovery of admissible evidence. Without waiving said objection, in my capacity as Sheriff of Hampden County I am familiar with many people in the District Attorney's office.

5.    When Omar Marrero returned to the C-2 unit on or about August of 2003 after being jumped by his own LaFamilia gang brothers, who did the investigation and what did they find out, was there a report written and who was notified of the findings?

RESPONSE:  Objection - the information sought is not relevant to the subject matter of the pending action and is not reasonably calculated to lead to the discovery of admissible evidence. The information sought constitutes "evaluative information" under the C.O.R.I. statute. M.G.L. c. 6 § 167 exempts from disclosure, "evaluative information" defined as: "'Evaluative information', records, data, or reports concerning individuals charged with crime and compiled by criminal justice agencies which appraise mental condition, physical condition, extent of social adjustment, rehabilitative progress and the like, and which are primarily used in connection with bail, pre-trial or post-trial release proceedings, sentencing, correctional and rehabilitative planning, probation or parole." Without waiving said objection, the Unit Disciplinary Board is responsible for any investigations.

6.    What was discovered from said investigation?

3

RESPONSE:  Objection - the information sought is not relevant to the subject matter of the pending action and is not reasonably calculated to lead to the discovery of admissible evidence. The information sought constitutes "evaluative information" under the C.O.R.I. statute.  M.G.L. c. 6 § 167 exempts from disclosure, "evaluative information" defined as: "'Evaluative information', records, data, or reports concerning individuals charged with crime and compiled by criminal justice agencies which appraise mental condition, physical condition, extent of social adjustment, rehabilitative progress and the like, and which are primarily used in connection with bail, pre-trial or post-trial release proceedings, sentencing, correctional and rehabilitative planning, probation or parole."

7.    Have you ever had to discipline, or order someone else to discipline any of the other defendants, if so, why and who?

RESPONSE:  Objection - the information sought is not relevant to the subject matter of the pending action and is not reasonably calculated to lead to the discovery of admissible evidence.

8.    Has any of the defendants, including yourself, ever been subject to any civil suits concerning the violation of rights of inmates or staff, if so, by whom was the suit file [sic], when was the suit filed and why was it filed?

RESPONSE:  Objection - the information sought is not relevant to the subject matter of the pending action and is not reasonably calculated to lead to the discovery of admissible evidence.

4

Signed under the penalties of perjury this *19th* day of July, 2006.

Michael J. Ashe, Jr.

**AS TO OBJECTIONS:**

_____

Kevin D. Withers, Esquire

CERTIFICATE OF SERVICE

_____ certifies that copies of the foregoing document was served on Anthony Garvin to S.B.C.C. P. O. Box 8000, Shirley, MA 01464 by first class mail on 7/24/2006.

5

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
NO.05-30102-MAP

ANTHONY GARVIN
PLAINTIFF

V.

HAMPDEN COUNTY SHERIFF'S DEPARTMENT, SHERIFF MICHAEL J. ASHE, JR.,
HAMPDEN COUNTY COMMISSIONERS, COMMONWEALTH OF MASSACHUSETTS,
SUPT. BASIL TSGARIS, DEPUTY CHIEF OF SECURITY KENNEY,
MAJOR (FIRST NAME UNKNOWN) WELDON, LT. (FIRST NAME UNKNOWN)
KORMAN, LT. JUAN RAMOS, LT. (FIRST NAME UNKNOWN) CADIGAN,
OFFICER WILLIAM MULDROW, OFFICER VICTOR KELLY AND
THE UNKNOWN OFFICER IN THE TOWER
DEFENDANTS

DEFENDANT JOHN CADIGAN'S ANSWERS TO PLAINTIFF'S
FIRST SET OF INTERROGATORIES

1.    Define the duties and responsibilities of each defendant.

A.    Objection.  Defendants object to producing this documentation  because
      plaintiff has requested information that could threaten the safety, health and
      security of staff and other inmates.  Without waiving said objection states as
      follows:

          Michael J. Ashe, Jr. is Sheriff of Hampden County
          Basil Tsgaris is Assistant Superintendent
          John Kenney is Deputy Chief of Security
          Edward Weldon is Assistant Superintendent in charge of classification
          Thomas Korman is a Lieutenant
          Juan Ramos is a Captain
          John Cadigan is a Captain
          William Muldrow is a Correctional Officer
          Victor Kelly is a Correctional Officer

2.    Who is in charge of cell assignment at the C-tower?

A.    After classification assigns a pod, the pod officers on duty assign the cell.

3.    On June 2nd, 2003, did officer Muldrow radio to the control tower and order
      the unknown officer in the tower to open the cell door of Timothy Zanetti?

A.    I do not know.  I was not on duty on June 2, 2003 and I was not assigned to
      the investigation.

4.      Where was officer Muldrow when said cell was opened?

A.      I do not know.  I was not on duty on June 2, 2003 and I was not assigned to the investigation.

5.      Were there any other officers in front of the door when it was opened? If so, who?

A.      I do not know.  I was not on duty on June 2, 2003 and I was not assigned to the investigation.

6.      Did officer Muldrow and officer Kelly know that the plaintiff was on administrative protective custody?

A.      I do not know.  On June 2, 2003 on the facilities' Jail Management System, the plaintiff was listed as "protective custody at inmate's request" but not administrative protective custody.  See Answers of Officer Muldrow and Officer Kelly.

7.      Whoelse [sic] knew of the plaintiff's status? And how did they know?

A.      I do not know.

8.      Did anyone report this attack to medical? If so, who, when; If not, why?

A.      According to the Incident Report and Medical Records, Health Services was called.

9.      Did the plaintiff receive medical treatment in regard to the attack? If yes, state when, where, and by whom; If hot, state why not.

A.      According to the Medical Records, Plaintiff was seen by Michael Hall of Health Services on June 2, 2003.

10.     Was the attack video taped? If so who has it? If not, state why.

A.      I do not know.

11.     What is the defendant, the-unknown officer in the tower's name?

A.      I do not know.

12.     Why has the unknown officer in the tower not answered the complaint?

A.     I do not know.

13.    Has the unknown officer in the tower ever worked in the C-2 unit between
       May 27, 2003 and June 2nd, 2003? If so, when?

A.     I do not know.

14.    Did anyone question inmate Zanetti as to his motive for the attack? If so,
       who, when; and what was discovered if anything?; and was it documented?
       If not, why not?

A.     I do not know. I was not on duty on June 2, 2003 and I was not assigned to
       the investigation.

15.    Did the plaintiff request any actions to be taken due to said attack? If so what
       and when as well as who it was requested of?

A.     I do not know.

16.    What, if anything was done about this attack on the plaintiff? When and by
       whom.

A.     According to the Jail Management System, plaintiff's classification was
       changed to "Administrative Protective Custody" on June 27, 2003 after a
       hearing.

17.    Was the institution aware of any threats or the likelyhood [sic] of danger the
       plaintiff faced? If so, who was aware?

A.     According to the Jail Management System, on May 28, 2003, Nelson Aponte
       was listed as an enemy of the plaintiff.

18.    Was the institution aware of Omar Marrero's affiliation to the lafamilia gang?
       If so, when did they become aware; and in said circumstancies [sic], who is
       notified of such a status?

A.     I do not believe so.

19.    Was anyone at the Hampden county house of correction involved in
       contacking the state police, or the district attorney's office, for the soul
       purpose of assisting Omar Marrero in becoming a commonwealth witness
       against the plaintiff? If so, who ,when was the call made; and from what
       number and extension was the call made?

3

A.    Not to my knowledge.

20.    Did Lt. Juan Ramos notify the district attorney's office of any other potential witnesses against the plaintiff, and or in any other criminal matter? If so, who were said potential witnesses, and from where did he place said call to the district attorney? What is the phone number and extention [sic] of said phone?

A.    See Lt. Ramos' Answers to Interrogatories.

21.    Did LT. Juan Ramos tell the plaintiff's private investigator, Nicholas Cockoros, that inmate Timothy Zanetti was no longer at the Hampden county house of correction, and that Mr.Zanetti did not want to speak to anyone on April 2nd of 2004

A.    See Lt. Ramos' Answers to Interrogatories.

22.    Was Springfield police officer Michael White under mental observation and, or suicide watch while housed in the C-2 unit? If so, when, why and in what cell(s) was he housed in? And from what date was he in said cell(s)?

A.    Objection.  The information sought is protected by the phsycian-patient privilege.

23.    Was anyone aware of the fact that Omar Marrero was a Commonwealth witness prior to being placed in the plaintiff's cell?  If so, who and what did he/she know?

A.    Not to my knowledge.

24.    How many times was Omar Marrero in any of the segregation units? And why was he there each time?

A.    Objection.  The information sought constitutes "evaluative information" under the C.O.R.I. statute.  M.G.L. c. 6 § 167 exempts from disclosure, "evaluative information" defined as: "'Evaluative information', records, data, or reports concerning individuals charged with crime and compiled by criminal justice agencies which appraise mental condition, physical condition, extent of social adjustment, rehabilitative progress and the like, and which are primarily used in connection with bail, pre-trial or post-trial release proceedings, sentencing, correctional and rehabilitative planning, probation or parole."

25.    When Omar Marrero returned to the C-2 unit in, or around september of

4

2003, why was he placed there?

A.    Objection.  The information sought constitutes "evaluative information" under the C.O.R.I. statute.  M.G.L. c. 6 § 167 exempts from disclosure, "evaluative information" defined as: "'Evaluative information', records, data, or reports concerning individuals charged with crime and compiled by criminal justice agencies which appraise mental condition, physical condition, extent of social adjustment, rehabilitative progress and the like, and which are primarily used in connection with bail, pre-trial or post-trial release proceedings, sentencing, correctional and rehabilitative planning, probation or parole."

26.    Upon Inmate Marrero's return to C-2 this time in question did anyone learn of Mr.Marrero's alleged Commonwealth witness status? If so, who and what did they learn?

A.    Not to my knowledge.

27.    Did officer Kelly enter an enemey [sic] status between Omar Marrero and the plaintiff on october 28, 2003? If so why?; and If not this date, did he do so on any date? and why?

A.    I do not know.  According to the Jail Management System on October 21, 2003 some one entered "keep separate from Omar Marrero".

Signed under the penalties of perjury this 1st day of May, 2006.

By:  _John P Cadigan_____
John Cadigan

AS TO OBJECTIONS,

_Edward J McDonough Jr_____
Edward J. McDonough, Jr., Esquire

Certificate of Service

_Edward J McDonough_ certifies that copies of the foregoing document was served on Anthony Garvin to S.B.C.C. P. O. Box 8000, Shirley, MA 01464 by first class mail on 5/19/2006.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
NO.05-30102-MAP

---

ANTHONY GARVIN
PLAINTIFF
V.
HAMPDEN COUNTY SHERIFF'S DEPARTMENT, SHERIFF MICHAEL J. ASHE, JR.,
HAMPDEN COUNTY COMMISSIONERS, COMMONWEALTH OF MASSACHUSETTS,
SUPT. BASIL TSGARIS, DEPUTY CHIEF OF SECURITY KENNEY,
MAJOR (FIRST NAME UNKNOWN) WELDON, LT. (FIRST NAME UNKNOWN)
KORMAN, LT. JUAN RAMOS, LT. (FIRST NAME UNKNOWN) CADIGAN,
OFFICER WILLIAM MULDROW, OFFICER VICTOR KELLY AND
THE UNKNOWN OFFICER IN THE TOWER
DEFENDANTS

---

DEFENDANT JOHN CADIGAN'S ANSWERS
TO PLAINTIFF'S SUPPLEMENTAL SET OF INTERROGATORIES

1.    What are your full and in detail daily duties and responsibilities at the

Hampden county House of correction and in regard to the C-1 and C-2 unit?

RESPONSE:  Defendants object to providing this information because

plaintiff has requested information that could threaten the

safety, health and security of staff and other inmates.   The

information requested is not relevant to the issue pleaded in

the pending action and is not reasonably calculated to lead to

the discovery of admissible evidence.  Without waiving said

objection states as follows: With regard to the issue pleaded

in the plaintiff's complaint, I was not working at the time of

the incident.

2.    What is the procedure that any officer must follow when removing and

replacing an inmate from and into a cell in detail?

RESPONSE:  A standard escort by an officer on duty would involve the

opening/closing of the cell trap door, appropriately cuff the

inmate through the trap door, inmate is requested to turn away

from the door, signal/radio to tower to open specific cell door,

if appropriate place leg restraints and escort inmate to

destination.

3.     Is it some ones [sic] responsibility to check if or make sure that enemies are

not placed in the same cell?  If so, who was that person for the C-1 and C-2

unit in 2003?

RESPONSE:  The person making such assignment varies.  POD staff on

duty normally assigns POD cells.  At the time the assignment

is made, the officer on duty would consider all the available

information pertinent to the assignment process, including

known enemy status.

4.     Do you have any personal relationship with anyone in the district attorney's

office?  If so, who and how so?

RESPONSE: No.

5.     When Omar Marrero returned to the C-2 unit on or about August of 2003

after being jumped by his own LaFamilia gang brothers, who did the

investigation and what did they find out, was there a report written and who

was notified of the findings?

RESPONSE:  Objection - the information sought is not relevant to the

subject matter of the pending action and is not reasonably

calculated to lead to the discovery of admissible evidence.

Without waiving said objection, I do not know.

2

6.    What was discovered from said investigation?

RESPONSE:  Objection - the information sought is not relevant to the

subject matter of the pending action and is not reasonably

calculated to lead to the discovery of admissible evidence.

Without waiving said objection, I do not know.

Signed under the penalties of perjury this *21* day of July, 2006.


*John P Cadigan*
John Cadigan

**AS TO OBJECTIONS:**

*Kevin D. Withers*
Kevin D. Withers, Esquire

*Kevin D. Withers* certifies that copies of the foregoing document was served on Anthony
Garvin to S.B.C.C. P. O. Box 8000, Shirley, MA 01464 by first class mail on 7/26/2006.

CERTIFICATE OF SERVICE

3

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
NO.05-30102-MAP

ANTHONY GARVIN
PLAINTIFF

V.

HAMPDEN COUNTY SHERIFF'S DEPARTMENT, SHERIFF MICHAEL J. ASHE, JR.,
HAMPDEN COUNTY COMMISSIONERS, COMMONWEALTH OF MASSACHUSETTS,
SUPT. BASIL TSGARIS, DEPUTY CHIEF OF SECURITY KENNEY,
MAJOR (FIRST NAME UNKNOWN) WELDON, LT. (FIRST NAME UNKNOWN)
KORMAN, LT. JUAN RAMOS, LT. (FIRST NAME UNKNOWN) CADIGAN,
OFFICER WILLIAM MULDROW, OFFICER VICTOR KELLY AND
THE UNKNOWN OFFICER IN THE TOWER
DEFENDANTS

**DEFENDANT COMMONWEALTH OF MASSACHUSETTS' ANSWERS TO
PLAINTIFF'S FIRST SET OF INTERROGATORIES**

1.     Define the duties and responsibilities of each defendant.

A.     Objection. Defendants object to providing this information because plaintiff
has requested information that could threaten the safety, health and security
of staff and other inmates.  Without waiving said objection states as follows:
     Michael J. Ashe, Jr. is Sheriff of Hampden County
     Basil Tsagaris is Assistant Superintendent
     John Kenney is Deputy Chief of Security
     Edward Weldon is Assistant Superintendent in charge of classification
     Thomas Korman is a Lieutenant
     Juan Ramos is a Captain
     John Cadigan is a Captain
     William Muldrow is a Correctional Officer
     Victor Kelly is a Correctional Officer

2.     Who is in charge of cell assignment at the C-tower?

A.     After classification assigns a pod, the pod officers on duty assign the cell.

3.     On June 2nd, 2003, did officer Muldrow radio to the control tower and order
the unknown officer in the tower to open the cell door of Timothy Zanetti?

A.     To the best of the Commonwealth's knowledge and based on the information
provided by Officer Muldrow, yes he radioed he control tower.

4.     Where was officer Muldrow when said cell was opened?

A.    To the best of the Commonwealth's knowledge and based on the information provided by Officer Muldrow he was cuffing an inmate in front of his cell.

5.    Were there any other officers in front of the door when it was opened? If so, who?

A.    To the best of the Commonwealth's knowledge and based on the information provided by Officer Muldrow there were no other officers in front of the door.

6.    Did officer Muldrow and officer Kelly know that the plaintiff was on administrative protective custody?

A.    To the best of the Commonwealth's knowledge and based on the information provided by Officers Muldrow and Kelly, they knew the plaintiff was on administrative protective custody.

7.    Whoelse [sic] knew of the plaintiff's status? And how did they know?

A.    Other than Officers Muldrow and Kelly, the Commonwealth can not say who else, if any one, knew of plaintiff's status.  Information on the plaintiff's status is available on the computer system.

8.    Did anyone report this attack to medical? If so, who, when; If not, why?

A.    According to the Incident Report and Medical Records, Health Services was called.  The Commonwealth does not know who contacted Health Services.

9.    Did the plaintiff receive medical treatment in regard to the attack? If yes, state when, where, and by whom; If hot, state why not.

A.    According to the Medical Records, Plaintiff was seen at the facility by Michael Hall on June 2, 2003.

10.   Was the attack video taped? If so who has it? If not, state why.

A.    A camera photographed the incident and the images were stored digitally. However the images are no longer in possession of Hampden County Correctional Center due to a computer crash.

11.   What is the defendant, the-unknown officer in the tower's name?

A.    Tim Allen.

2

12.    Why has the unknown officer in the tower not answered the complaint?

A.    The Commonwealth has been advised by counsel that the complaint has not been amended nor served on the officer.

13.    Has the unknown officer in the tower ever worked in the C-2 unit between May 27,2003 and June 2nd, 2003? If so, when?

A.    Yes, May 31, 2003 and June 1, 2003.

14.    Did anyone question inmate Zanetti as to his motive for the attack? If so, who, when; and what was discovered if anything?; and was it documented? If not, why not?

A.    There was an investigation and inmate Zanetti was questioned by a Disciplinary board panel as a result of his inmate rule violation.

15.    Did the plaintiff request any actions to be taken due to said attack? If so what and when as well as who it was requested of?

A.    The plaintiff filed an Inmate Request dated June 3, 2003 requesting an appointment with an eye doctor.

16.    What, if anything was done about this attack on the plaintiff? When and by whom.

A.    Inmate Zanetti was moved to a different POD by Pod Staff and in house discipline was given.

17.    Was the institution aware of any threats or the likelyhood [sic] of danger the plaintiff faced? If so, who was aware?

A.    The Commonwealth was not aware of any specific threats prior to the assault. Given the circumstances of the crime that the plaintiff was accused, we took precautionary measures to protect the plaintiff, other inmates and staff.

18.    Was the institution aware of Omar Marrero's affiliation to the lafamilia [six] gang? If so, when did they become aware; and in said circumstancies [sic], who is notified of such a status?

A.    Yes. This affiliation was suspected on or about February 18, 2003 but not confirmed until October 20, 2003.

19.    Was anyone at the Hampden county house of correction involved in

contacking the state police, or the district attorney's office, for the soul purpose of assisting Omar Marrero in becoming a commonwealth witness against the plaintiff? If so, who ,when was the call made; and from what number and extension was the call made?

A.    Not that the Commonwealth is aware of.

20.    Did Lt. Juan Ramos notify the district attorney's office of any other potential witnesses against the plaintiff, and or in any other criminal matter? If so, who were said potential witnesses, and from where did he place said call to the district attorney? What is the phone number and extention [sic] of said phone?

A.    To the best of the Commonwealth's knowledge and based on the information provided by Lt. Ramos, he did not notify the district attorney's office.

21.    Did LT. Juan Ramos tell the plaintiff's private investigator, Nicholas Cockoros, that inmate Timothy Zanetti was no longer at the Hampden county house of correction, and that Mr.Zanetti did not want to speak to anyone on April 2nd of 2004

A.    To the best of the Commonwealth's knowledge and based on the information provided by Lt. Ramos, he did not make such statements to the plaintiff's private investigator.

22.    Was Springfield police officer Michael White under mental observation and, or suicide watch while housed in the C-2 unit? If so, when, why and in what cell(s) was he housed in? And from what date was he in said cell(s)?

A.    Objection.   The information sought is protected by the phsycian-patient privilege.

23.    Was anyone aware of the fact that Omar Marrero was a Commonwealth witness prior to being placed in the plaintiff's cell?  If so, who and what did he/she know?

A.    Defendant Commonwealth of Massachusetts objects to this request in so far as it seeks information about the knowledge of individuals outside the Hampden County Correctional Center on the grounds that such information is not relevant to the issues raised in this case.   Without waiving such objection, To the best of the Commonwealth's knowledge, no information concerning Mr. Marrero's status as a witness or potential witness was known to anyone at the facility.

4

24.    How many times was Omar Marrero in any of the segregation units? And why was he there each time?

A.    Objection. The information sought constitutes "evaluative information" under the C.O.R.I. statute. M.G.L. c. 6 § 167 exempts from disclosure, "evaluative information" defined as: "'Evaluative information', records, data, or reports concerning individuals charged with crime and compiled by criminal justice agencies which appraise mental condition, physical condition, extent of social adjustment, rehabilitative progress and the like, and which are primarily used in connection with bail, pre-trial or post-trial release proceedings, sentencing, correctional and rehabilitative planning, probation or parole."

25.    When Omar Marrero returned to the C-2 unit in, or around september of 2003, why was he placed there?

A.    Objection, the information sought constitutes "evaluative information" under the C.O.R.I. statute. M.G.L. c. 6 § 167 exempts from disclosure, "evaluative information" defined as: "'Evaluative information', records, data, or reports concerning individuals charged with crime and compiled by criminal justice agencies which appraise mental condition, physical condition, extent of social adjustment, rehabilitative progress and the like, and which are primarily used in connection with bail, pre-trial or post-trial release proceedings, sentencing, correctional and rehabilitative planning, probation or parole."

26.    Upon Inmate Marrero's return to C-2 this time in question did anyone learn of Mr.Marrero's alleged Commonwealth witness status? If so, who and what did they learn?

A.    Defendant Commonwealth of Massachusetts objects to this request in so far as it seeks information about the knowledge of individuals outside the Hampden County Correctional Center on the grounds that such information is not relevant to the issues raised in this case. Without waiving such objection, To the best of the Commonwealth's knowledge, no information concerning Mr. Marrero's status as a witness or potential witness was known to anyone at the facility.

27.    Did officer Kelly enter an enemey [sic] status between Omar Marrero and the plaintiff on october 28, 2003? If so why?; and If not this date, did he do so on any date? and why?

A.    To the best of the Commonwealth's knowledge and based on the information provided on October 21, 2003 an entry of "keep separate from Omar Marrero" was entered by Officer Kelly.

5

Signed under the penalties of perjury this 23rd day of June, 2006.

The Defendant,
Commonwealth of Massachusetts

By John F. Kenney
Deputy Chief of Security

**AS TO OBJECTIONS:**

Kevin D. Withers, Esquire

Certificate of Service

Kevin D. Withers certifies that copies of the foregoing document was served on Anthony Garvin to S.B.C.C. P. O. Box 8000, Shirley, MA 01464 by first class mail on 6/26/2006.

6

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
NO.05-30102-MAP

---

ANTHONY GARVIN
PLAINTIFF
V.
HAMPDEN COUNTY SHERIFF'S DEPARTMENT, SHERIFF MICHAEL J. ASHE, JR.,
HAMPDEN COUNTY COMMISSIONERS, COMMONWEALTH OF MASSACHUSETTS,
SUPT. BASIL TSGARIS, DEPUTY CHIEF OF SECURITY KENNEY,
MAJOR (FIRST NAME UNKNOWN) WELDON, LT. (FIRST NAME UNKNOWN)
KORMAN, LT. JUAN RAMOS, LT. (FIRST NAME UNKNOWN) CADIGAN,
OFFICER WILLIAM MULDROW, OFFICER VICTOR KELLY AND
THE UNKNOWN OFFICER IN THE TOWER
DEFENDANTS

---

DEFENDANT COMMONWEALTH OF MASSACHUSETTS' ANSWERS
TO PLAINTIFF'S SUPPLEMENTAL SET OF INTERROGATORIES

### *GENERAL OBJECTION*

Defendant, Commonwealth of Massachusetts objects Plaintiff's Supplemental

Set of Interrogatories as it is not directed to a named defendant pursuant to the court's

order dated June 21, 2006.   "Any and all District attorneys from both the Hampden

county and Holyoke district attorneys' offices" are not named defendants.  They are

not a party to this action.  They are separately elected public officers.

Signed under the penalties of perjury this **26** day of July, 2006.

The Defendant,
Commonwealth of Massachusetts

By Michael J. Ashe, Jr.
Sheriff of Hampden County

**AS TO OBJECTIONS:**

Kevin D. Withers, Esquire

CERTIFICATE OF SERVICE

_____ certifies that copies of the foregoing document was served on Anthony
Garvin to S.B.C.C. P. O. Box 8000, Shirley, MA 01464 by first class mail on 7/26/2006.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
NO.05-30102-MAP
_____

ANTHONY GARVIN
PLAINTIFF
V.
HAMPDEN COUNTY SHERIFF'S DEPARTMENT, SHERIFF MICHAEL J. ASHE, JR.,
HAMPDEN COUNTY COMMISSIONERS, COMMONWEALTH OF MASSACHUSETTS,
SUPT. BASIL TSGARIS, DEPUTY CHIEF OF SECURITY KENNEY,
MAJOR (FIRST NAME UNKNOWN) WELDON, LT. (FIRST NAME UNKNOWN)
KORMAN, LT. JUAN RAMOS, LT. (FIRST NAME UNKNOWN) CADIGAN,
OFFICER WILLIAM MULDROW, OFFICER VICTOR KELLY AND
THE UNKNOWN OFFICER IN THE TOWER
DEFENDANTS
_____

DEFENDANT VICTOR KELLY'S ANSWERS TO PLAINTIFF'S
FIRST SET OF INTERROGATORIES

1.    Define the duties and responsibilities of each defendant.

A.    Objection.  Defendants object to producing this documentation  because
      plaintiff has requested information that could threaten the safety, health and
      security of staff and other inmates.  Without waiving said objection states as
      follows:
            Michael J. Ashe, Jr. is Sheriff of Hampden County
            Basil Tsagaris is Assistant Superintendent
            John Kenney is Deputy Chief of Security
            Edward Weldon is Assistant Superintendent in charge of classification
            Thomas Korman is a Lieutenant
            Juan Ramos is a Captain
            John Cadigan is a Captain
            William Muldrow is a Correctional Officer
            Victor Kelly is a Correctional Officer

2.    Who is in charge of cell assignment at the C-tower?

A.    After classification assigns a pod, the pod officers on duty assign the cell.

3.    On June 2nd, 2003, did officer Muldrow radio to the control tower and order
      the unknown officer in the tower to open the cell door of Timothy Zanetti?

A.    I don't know.  See answers of Officer Muldrow

4.    Where was officer Muldrow when said cell was opened?

A.    I don't know I was on the top tier.  See answers of Officer Muldrow.

5.    Were there any other officers in front of the door when it was opened? If so, who?

A.    I don't know I was on the top tier.  See answers of Officer Muldrow.

6.    Did officer Muldrow and officer Kelly know that the plaintiff was on administrative protective custody?

A.    I knew the plaintiff was on administrative protective custody.  See Officer Muldrow's answers.

7.    Whoelse [sic] knew of the plaintiff's status? And how did they know?

A.    I don't know.

8.    Did anyone report this attack to medical? If so, who, when; If not, why?

A.    Yes. According to the Incident Report and Medical Records, Health Services was called.

9.    Did the plaintiff receive medical treatment in regard to the attack? If yes, state when, where, and by whom; If hot, state why not.

A.    Yes.  According to the Medical Records, Plaintiff was seen by Michael Hall on June 2, 2003.

10.    Was the attack video taped? If so who has it? If not, state why.

A.    I don't know.

11.    What is the defendant, the-unknown officer in the tower's name?

A.    Tim Allen.

12.    Why has the unknown officer in the tower not answered the complaint?

A.    I don't know.

13.    Has the unknown officer in the tower ever worked in the C-2 unit between May 27,2003 and June 2nd, 2003? If so, when?

2

A.   I don't know.

14.   Did anyone question inmate Zanetti as to his motive for the attack? If so, who, when; and what was discovered if anything?; and was it documented? If not, why not?

A.   I do not know.

15.   Did the plaintiff request any actions to be taken due to said attack? If so what and when as well as who it was requested of?

A.   I do not know.

16.   What, if anything was done about this attack on the plaintiff? When and by whom.

A.   I do not know.

17.   Was the institution aware of any threats or the likelyhood [sic] of danger the plaintiff faced? If so, who was aware?

A.   I was not aware of any threats until I heard a conversation between Mr. Garvin and Mr. Zanetti.

18.   Was the institution aware of Omar Marrero's affiliation to the lafamilia gang? If so, when did they become aware; and in said circumstancies [sic], who is notified of such a status?

A.   I was not.

19.   Was anyone at the Hampden county house of correction involved in contacking the state police, or the district attorney's office, for the soul purpose of assisting Omar Marrero in becoming a commonwealth witness against the plaintiff? If so, who ,when was the call made; and from what number and extension was the call made?

A.   Not to my knowledge.

20.   Did Lt. Juan Ramos notify the district attorney's office of any other potential witnesses against the plaintiff, and or in any other criminal matter? If so, who were said potential witnesses, and from where did he place said call to the district attorney? What is the phone number and extention [sic] of said phone?

3

A.     I do not know. See Lt. Ramos' Answers to Interrogatories.

21.    Did LT. Juan Ramos tell the plaintiff's private investigator, Nicholas Cockoros, that inmate Timothy Zanetti was no longer at the Hampden county house of correction, and that Mr.Zanetti did not want to speak to anyone on April 2nd of 2004

A.     I do not know. See Lt. Ramos' Answers to Interrogatories.

22.    Was Springfield police officer Michael White under mental observation and, or suicide watch while housed in the C-2 unit? If so, when, why and in what cell(s) was he housed in? And from what date was he in said cell(s)?

A.     Objection. The information sought is protected by the phsycian-patient privilege.

23.    Was anyone aware of the fact that Omar Marrero was a Commonwealth witness prior to being placed in the plaintiff's cell? If so, who and what did he/she know?

A.     Not to my knowledge.

24.    How many times was Omar Marrero in any of the segregation units? And why was he there each time?

A.     Objection. The information sought constitutes "evaluative information" under the C.O.R.I. statute. M.G.L. c. 6 § 167 exempts from disclosure, "evaluative information" defined as: "'Evaluative information', records, data, or reports concerning individuals charged with crime and compiled by criminal justice agencies which appraise mental condition, physical condition, extent of social adjustment, rehabilitative progress and the like, and which are primarily used in connection with bail, pre-trial or post-trial release proceedings, sentencing, correctional and rehabilitative planning, probation or parole."

25.    When Omar Marrero returned to the C-2 unit in, or around september of 2003, why was he placed there?

A.     Objection. The information sought constitutes "evaluative information" under the C.O.R.I. statute. M.G.L. c. 6 § 167 exempts from disclosure, "evaluative information" defined as: "'Evaluative information', records, data, or reports concerning individuals charged with crime and compiled by criminal justice agencies which appraise mental condition, physical condition, extent of social adjustment, rehabilitative progress and the like,

4

and which are primarily used in connection with bail, pre-trial or post-trial release proceedings, sentencing, correctional and rehabilitative planning, probation or parole."

26. Upon Inmate Marrero's return to C-2 this time in question did anyone learn of Mr. Marrero's alleged Commonwealth witness status? If so, who and what did they learn?

A. Not to my knowledge.

27. Did officer Kelly enter an enemey [sic] status between Omar Marrero and the plaintiff on october 28, 2003? If so why?; and If not this date, did he do so on any date? and why?

A. I entered on the system to keep Omar Marrero and Anthony Garvin separate on October 21. 2003. I did this because I had hear Mr. Marrero and Mr. Garvin talking one cell to another.

Signed under the penalties of perjury this 16 day of May, 2006.

By: _Victor Kelly_
Victor Kelly

**AS TO OBJECTIONS:**

Edward J. McDonough, Jr., Esquire

Certificate of Service

certifies that copies of the foregoing document was served on Anthony Garvin to S.B.C.C. P. O. Box 8000, Shirley, MA 01464 by first class mail on 5/ 16/2006.

5

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
NO.05-30102-MAP

_____

ANTHONY GARVIN
PLAINTIFF
V.
HAMPDEN COUNTY SHERIFF'S DEPARTMENT,
SHERIFF MICHAEL J. ASHE, JR.,
HAMPDEN COUNTY COMMISSIONERS,
COMMONWEALTH OF MASSACHUSETTS,
SUPT. BASIL TSGARIS,
DEPUTY CHIEF OF SECURITY KENNEY,
MAJOR (FIRST NAME UNKNOWN) WELDON,
LT. (FIRST NAME UNKNOWN) KORMAN,
LT. JUAN RAMOS,
LT. (FIRST NAME UNKNOWN) CADIGAN,
OFFICER WILLIAM MULDROW,
OFFICER VICTOR KELLY AND
THE UNKNOWN OFFICER IN THE TOWER
DEFENDANTS

_____

DEFENDANT JOHN KENNEY'S ANSWERS
TO PLAINTIFF'S SUPPLEMENTAL SET OF INTERROGATORIES

1.    What are your full and in detail daily duties and responsibilities at the

Hampden county House of correction and in regard to the C-1 and C-2 unit?

RESPONSE:  Defendants object to providing this information because

plaintiff has requested information that could threaten the

safety, health and security of staff and other inmates.   The

information requested is not relevant to the issue pleaded in

the pending action and is not reasonably calculated to lead to

the discovery of admissible evidence.  Without waiving said

objection states as follows: I am Deputy Chief of Security,

Hampden County Correctional Center.  My duties involve

general supervision for the overall day-to-day security of the

facility, including but not limited to C1 and C-2.

2.     What is the procedure that any officer must follow when removing and replacing an inmate from and into a cell in detail?

        RESPONSE: A standard escort by an officer on duty would involve the opening/closing of the cell trap door, appropriately cuff the inmate through the trap door, inmate is requested to turn away from the door, signal/radio to tower to open specific cell door, if appropriate place leg restraints and escort inmate to destination.

3.     Is it some ones [sic] responsibility to check if or make sure that enemies are not placed in the same cell? If so, who was that person for the C-1 and C-2 unit in 2003?

        RESPONSE: The person making such assignment varies. POD staff on duty normally assigns POD cells. At the time the assignment is made, the officer on duty would consider all the available information pertinent to the assignment process, including known enemy status.

4.     Do you have any personal relationship with anyone in the district attorney's office? If so, who and how so?

        RESPONSE: Objection - the question is unduly vague and ambiguous with respect to the meaning of the term "personal relationship" and the information sought is not relevant to the subject matter of the pending action and is not reasonably calculated to lead to the discovery of admissible evidence. Without waiving said

2

objection, in my capacity as Deputy Chief of Security at the Hampden County Correctional Center I am familiar with many people in the District Attorney's office.

5.    When Omar Marrero returned to the C-2 unit on or about August of 2003 after being jumped by his own LaFamilia gang brothers, who did the investigation and what did they find out, was there a report written and who was notified of the findings?

RESPONSE:  Objection - the information sought is not relevant to the subject matter of the pending action and is not reasonably calculated to lead to the discovery of admissible evidence. Without waiving said objection, the Unit Disciplinary Board is responsible for any investigations. The reports are kept in house.

6.    What was discovered from said investigation?

RESPONSE:  Objection - the information sought is not relevant to the subject matter of the pending action and is not reasonably calculated to lead to the discovery of admissible evidence.

7.    Can the video of the incident in question be retrieved dispite the "Computer Crash incident"?

RESPONSE:  No.

8.    If you do not know can you find out, if so, please do and tell me?

RESPONSE:  The video of the incident and all other information involved in the computer crash cannot be retrieved.

3

Signed under the penalties of perjury this 19th day of July, 2006.

John Kenney

**AS TO OBJECTIONS:**

Kevin D. Withers, Esquire

CERTIFICATE OF SERVICE

Kevin D. Withers certifies that copies of the foregoing document was served on Anthony Garvin to S.B.C.C. P. O. Box 8000, Shirley, MA 01464 by first class mail on 7/20/2006.

4

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
No.05-30102-MAP

---

ANTHONY GARVIN
PLAINTIFF
V.
HAMPDEN COUNTY SHERIFF'S DEPARTMENT,
SHERIFF MICHAEL J. ASHE, JR.,
HAMPDEN COUNTY COMMISSIONERS,
COMMONWEALTH OF MASSACHUSETTS,
SUPT. BASIL TSGARIS,
DEPUTY CHIEF OF SECURITY KENNEY,
MAJOR (FIRST NAME UNKNOWN) WELDON,
LT. (FIRST NAME UNKNOWN) KORMAN,
LT. JUAN RAMOS,
LT. (FIRST NAME UNKNOWN) CADIGAN,
OFFICER WILLIAM MULDROW,
OFFICER VICTOR KELLY AND
THE UNKNOWN OFFICER IN THE TOWER
DEFENDANTS

---

DEFENDANT VICTOR KELLY'S ANSWERS
TO PLAINTIFF'S SUPPLEMENTAL SET OF INTERROGATORIES

1.    What are your full and in detail daily duties and responsibilities at the

Hampden county House of correction and in regard to the C-1 and C-2 unit?

RESPONSE:  Defendants object to providing this information because

plaintiff has requested information that could threaten the

safety, health and security of staff and other inmates.   The

information requested is not relevant to the issue pleaded in

the pending action and is not reasonably calculated to lead to

the discovery of admissible evidence.  Without waiving said

objection states as follows:

With regard to the issues pleaded in the plaintiff's complaint,

my duties include but are not limited to escorting inmates for

recreation time and showers and as needed, making half hour security checks of the PODs, and general contact with the inmates.

2.    What is the procedure that any officer must follow when removing and replacing an inmate from and into a cell in detail?

RESPONSE:  A standard escort by an officer on duty would involve the opening/closing of the cell trap door, appropriately cuff the inmate through the trap door, inmate is requested to turn away from the door, signal/radio to tower to open specific cell door, if appropriate place leg restraints and escort inmate to destination.

3.    Is it some ones [sic] responsibility to check if or make sure that enemies are not placed in the same cell?  If so, who was that person for the C-1 and C-2 unit in 2003?

RESPONSE:  The person making such assignment varies.  POD staff on duty normally assigns POD cells.  At the time the assignment is made, the officer on duty would consider all the available information pertinent to the assignment process, including known enemy status.

4.    Do you have any personal relationship with anyone in the district attorney's office?  If so, who and how so?

RESPONSE:  No.

5.    When Omar Marrero returned to the C-2 unit on or about August of 2003 after being jumped by his own LaFamilia gang brothers, who did the

2

investigation and what did they find out, was there a report written and who was notified of the findings?

RESPONSE:  Objection - the information sought is not relevant to the subject matter of the pending action and is not reasonably calculated to lead to the discovery of admissible evidence. Without waiving said objection, I do not know.

6.  What was discovered from said investigation?

RESPONSE:  Objection - the information sought is not relevant to the subject matter of the pending action and is not reasonably calculated to lead to the discovery of admissible evidence. Without waiving said objection, I do not know.

7.  What conversation did you hear between Mr. Garvin and Mr. Zanetti, when did you hear said conversation, what was said and why has there been no report disclosed?

RESPONSE:  Objection - the question is unduly vague and ambiguous with respect to the meaning of the term "said conversation". Without waiving said objection, I did not hear any conversation.

8.  What did you hear Mr. Garvin and Mr. Marrero saying to one another that you thought so important, that you issued an enemy status or notice to keep separate, and why hasn't this report or notice been disclosed, and if you wrote no report, why not?

RESPONSE:  I observed Mr. Garvin and Mr. Marrero arguing at an elevated level. I could not hear what was being said I just observed the

3

argument.

Signed under the penalties of perjury this *2 1* day of July, 2006.

_____
Victor Kelly

**AS TO OBJECTIONS:**

_____
Kevin D. Withers, Esquire

CERTIFICATE OF SERVICE

_____ certifies that copies of the foregoing document was served on Anthony Garvin to S.B.C.C. P. O. Box 8000, Shirley, MA 01464 by first class mail on 7/26/2006.

4

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
NO.05-30102-MAP

———————————————

ANTHONY GARVIN
PLAINTIFF
V.
HAMPDEN COUNTY SHERIFF'S DEPARTMENT, SHERIFF MICHAEL J. ASHE, JR.,
HAMPDEN COUNTY COMMISSIONERS, COMMONWEALTH OF MASSACHUSETTS,
SUPT. BASIL TSGARIS, DEPUTY CHIEF OF SECURITY KENNEY,
MAJOR (FIRST NAME UNKNOWN) WELDON, LT. (FIRST NAME UNKNOWN)
KORMAN, LT. JUAN RAMOS, LT. (FIRST NAME UNKNOWN) CADIGAN,
OFFICER WILLIAM MULDROW, OFFICER VICTOR KELLY AND
THE UNKNOWN OFFICER IN THE TOWER
DEFENDANTS

———————————————

DEFENDANT JOHN KENNEY'S ANSWERS TO PLAINTIFF'S
FIRST SET OF INTERROGATORIES

1.    Define the duties and responsibilities of each defendant.

A.    Objection. Defendants object to providing this information because plaintiff
      has requested information that could threaten the safety, health and security
      of staff and other inmates.  Without waiving said objection states as follows:
              Michael J. Ashe, Jr. is Sheriff of Hampden County
              Basil Tsagaris is Assistant Superintendent
              John Kenney is Deputy Chief of Security
              Edward Weldon is Assistant Superintendent in charge of classification
              Thomas Korman is a Lieutenant
              Juan Ramos is a Captain
              John Cadigan is a Captain
              William Muldrow is a Correctional Officer
              Victor Kelly is a Correctional Officer

2.    Who is in charge of cell assignment at the C-tower?

A.    After classification assigns a pod, the pod officers on duty assign the cell.

3.    On June 2nd, 2003, did officer Muldrow radio to the control tower and order
      the unknown officer in the tower to open the cell door of Timothy Zanetti?

A.    See Officer Muldrow's Answers to Interrogatories.

4.    Where was officer Muldrow when said cell was opened?

A.     See Officer Muldrow's answers to interrogatories.

5.     Were there any other officers in front of the door when it was opened? If so, who?

A.     See Officer Muldrow's answers to interrogatories.

6.     Did officer Muldrow and officer Kelly know that the plaintiff was on administrative protective custody?

A.     I do not know.  See Answers of Officer Muldrow and Officer Kelly.

7.     Whoelse [sic] knew of the plaintiff's status? And how did they know?

A.     Information on the plaintiff's status is available on the computer system.

8.     Did anyone report this attack to medical? If so, who, when; If not, why?

A.     According to the Incident Report and Medical Records, Health Services was called.  I do not know who contacted Health Services.

9.     Did the plaintiff receive medical treatment in regard to the attack? If yes, state when, where, and by whom; If hot, state why not.

A.     According to the Medical Records, Plaintiff was seen by Michael Hall on June 2, 2003.

10.    Was the attack video taped? If so who has it? If not, state why.

A.     Yes.  However the video tape is no longer in possession of Hampden County Correctional Center due to a computer crash.

11.    What is the defendant, the-unknown officer in the tower's name?

A.     Tim Allen.

12.    Why has the unknown officer in the tower not answered the complaint?

A.     I have been advised by counsel that the complaint has not amended nor served on the officer.

13.    Has the unknown officer in the tower ever worked in the C-2 unit between May 27,2003 and June 2nd, 2003? If so, when?

A.    Yes, May 31, 2003 and June 1, 2003.

14.   Did anyone question inmate Zanetti as to his motive for the attack? If so, who, when; and what was discovered if anything?; and was it documented? If not, why not?

A.    There was an investigation and inmate Zanetti was questioned by a Disciplinary board panel as a result of his inmate rule violation.

15.   Did the plaintiff request any actions to be taken due to said attack? If so what and when as well as who it was requested of?

A.    The plaintiff filed an Inmate Request dated June 3, 2003 requesting an appointment with an eye doctor.

16.   What, if anything was done about this attack on the plaintiff? When and by whom.

A.    Inmate Zanetti was moved to a different POD by Pod Staff and in house discipline was given.

17.   Was the institution aware of any threats or the likelyhood [sic] of danger the plaintiff faced? If so, who was aware?

A.    I am aware of no specific threats. Given the circumstances of the crime that the plaintiff was accused, we took precautionary measures to protect the plaintiff, other inmates and staff.

18.   Was the institution aware of Omar Marrero's affiliation to the lafamilia gang? If so, when did they become aware; and in said circumstancies [sic], who is notified of such a status?

A.    Yes.  On or about February 18, 2003 but not confirmed until October 20, 2003.

19.   Was anyone at the Hampden county house of correction involved in contacking the state police, or the district attorney's office, for the soul purpose of assisting Omar Marrero in becoming a commonwealth witness against the plaintiff? If so, who ,when was the call made; and from what number and extension was the call made?

A.    Not that I am aware of.

20.   Did Lt. Juan Ramos notify the district attorney's office of any other potential

3

witnesses against the plaintiff, and or in any other criminal matter? If so, who were said potential witnesses, and from where did he place said call to the district attorney? What is the phone number and extention [sic] of said phone?

A.    See answers of Lt. Ramos.

21.    Did LT. Juan Ramos tell the plaintiff's private investigator, Nicholas Cockoros, that inmate Timothy Zanetti was no longer at the Hampden county house of correction, and that Mr.Zanetti did not want to speak to anyone on April 2nd of 2004

A.    See answers of Lt. Ramos.

22.    Was Springfield police officer Michael White under mental observation and, or suicide watch while housed in the C-2 unit? If so, when, why and in what cell(s) was he housed in? And from what date was he in said cell(s)?

A.    Objection.   The information sought is protected by the phsycian-patient privilege.

23.    Was anyone aware of the fact that Omar Marrero was a Commonwealth witness prior to being placed in the plaintiff's cell?  If so, who and what did he/she know?

A.    Not to my knowledge.

24.    How many times was Omar Marrero in any of the segregation units? And why was he there each time?

A.    Objection.   The information sought constitutes "evaluative information" under the C.O.R.I. statute.  M.G.L. c. 6 § 167 exempts from disclosure, "evaluative information" defined as: "'Evaluative information', records, data, or reports concerning individuals charged with crime and compiled by criminal justice agencies which appraise mental condition, physical condition, extent of social adjustment, rehabilitative progress and the like, and which are primarily used in connection with bail, pre-trial or post-trial release proceedings, sentencing, correctional and rehabilitative planning, probation or parole."

25.    When Omar Marrero returned to the C-2 unit in, or around september of 2003, why was he placed there?

A.    Objection, the information sought constitutes "evaluative information" under

4

the C.O.R.I. statute. M.G.L. c. 6 § 167 exempts from disclosure, "evaluative information" defined as: "'Evaluative information', records, data, or reports concerning individuals charged with crime and compiled by criminal justice agencies which appraise mental condition, physical condition, extent of social adjustment, rehabilitative progress and the like, and which are primarily used in connection with bail, pre-trial or post-trial release proceedings, sentencing, correctional and rehabilitative planning, probation or parole."

26.     Upon Inmate Marrero's return to C-2 this time in question did anyone learn of Mr. Marrero's alleged Commonwealth witness status? If so, who and what did they learn?

A.      Not to my knowledge.

27.     Did officer Kelly enter an enemey [sic] status between Omar Marrero and the plaintiff on october 28, 2003? If so why?; and If not this date, did he do so on any date? and why?

A.      On October 21, 2003 an entry of "keep separate from Omar Marrero" was entered but I do not know by whom.

Signed under the penalties of perjury this 17th day of May, 2006.

_____
John P. Kenney
Deputy Chief of Security

**AS TO OBJECTIONS:**

_____
Edward J. McDonough, Jr., Esquire

                                Certificate of Service
_____ certifies that copies of the foregoing document was served on Anthony Garvin to S.B.C.C. P. O. Box 8000, Shirley, MA 01464 by first class mail on 5/17/2006.

5

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
NO.05-30102-MAP

———————————

ANTHONY GARVIN
PLAINTIFF
V.
HAMPDEN COUNTY SHERIFF'S DEPARTMENT, SHERIFF MICHAEL J. ASHE, JR.,
HAMPDEN COUNTY COMMISSIONERS, COMMONWEALTH OF MASSACHUSETTS,
SUPT. BASIL TSGARIS, DEPUTY CHIEF OF SECURITY KENNEY,
MAJOR (FIRST NAME UNKNOWN) WELDON, LT. (FIRST NAME UNKNOWN)
KORMAN, LT. JUAN RAMOS, LT. (FIRST NAME UNKNOWN) CADIGAN,
OFFICER WILLIAM MULDROW, OFFICER VICTOR KELLY AND
THE UNKNOWN OFFICER IN THE TOWER
DEFENDANTS

———————————

DEFENDANT THOMAS KORMAN'S ANSWERS TO PLAINTIFF'S
FIRST SET OF INTERROGATORIES

1.    Define the duties and responsibilities of each defendant.

A.    Objection.  Defendants object to producing this documentation  because
      plaintiff has requested information that could threaten the safety, health and
      security of staff and other inmates.  Without waiving said objection states as
      follows:
             Michael J. Ashe, Jr. is Sheriff of Hampden County
             Basil Tsagaris is Assistant Superintendent
             John Kenney is Deputy Chief of Security
             Edward Weldon is Assistant Superintendent in charge of classification
             Thomas Korman is a Lieutenant
             Juan Ramos is a Captain
             John Cadigan is a Captain
             William Muldrow is a Correctional Officer
             Victor Kelly is a Correctional Officer

2.    Who is in charge of cell assignment at the C-tower?

A.    After classification assigns a pod, the pod officers on duty assign the cell.

3.    On June 2nd, 2003, did officer Muldrow radio to the control tower and order
      the unknown officer in the tower to open the cell door of Timothy Zanetti?

A.    I do not know see Officer Muldrow's answers to Interrogatories.

4.    Where was officer Muldrow when said cell was opened?

A.    I do not know see Officer Muldrow's answers to Interrogatories.

5.    Were there any other officers in front of the door when it was opened? If so, who?

A.    I do not know.

6.    Did officer Muldrow and officer Kelly know that the plaintiff was on administrative protective custody?

A.    I do not know.  See Answers of Officer Muldrow and Officer Kelly.

7.    Whoelse [sic] knew of the plaintiff's status? And how did they know?

A.    I do not know.

8.    Did anyone report this attack to medical? If so, who, when; If not, why?

A.    I do not know but according to the Incident Report and Medical Records, Health Services was called.

9.    Did the plaintiff receive medical treatment in regard to the attack? If yes, state when, where, and by whom; If hot, state why not.

A.    I do not know but according to the Medical Records, Plaintiff was seen by Michael Hall on June 2, 2003.

10.   Was the attack video taped? If so who has it? If not, state why.

A.    I do not know.

11.   What is the defendant, the-unknown officer in the tower's name?

A.    I do not know.

12.   Why has the unknown officer in the tower not answered the complaint?

A.    I do not know.

13.   Has the unknown officer in the tower ever worked in the C-2 unit between May 27,2003 and June 2nd, 2003? If so, when?

A.    I do not know.

2

14. Did anyone question inmate Zanetti as to his motive for the attack? If so, who, when; and what was discovered if anything?; and was it documented? If not, why not?

A. I do not know - I was not involved in the investigation.

15. Did the plaintiff request any actions to be taken due to said attack? If so what and when as well as who it was requested of?

A. I do not know - I was not involved in the investigation.

16. What, if anything was done about this attack on the plaintiff? When and by whom.

A. I do not know - I was not involved in the investigation.

17. Was the institution aware of any threats or the likelyhood [sic] of danger the plaintiff faced? If so, who was aware?

A. I do not know.

18. Was the institution aware of Omar Marrero's affiliation to the lafamilia gang? If so, when did they become aware; and in said circumstancies [sic], who is notified of such a status?

A. I believe so but I do not know for sure.

19. Was anyone at the Hampden county house of correction involved in contacking the state police, or the district attorney's office, for the soul purpose of assisting Omar Marrero in becoming a commonwealth witness against the plaintiff? If so, who ,when was the call made; and from what number and extension was the call made?

A. Not to my knowledge.

20. Did Lt. Juan Ramos notify the district attorney's office of any other potential witnesses against the plaintiff, and or in any other criminal matter? If so, who were said potential witnesses, and from where did he place said call to the district attorney? What is the phone number and extention [sic] of said phone?

A. See Lt. Ramos' Answers to Interrogatories.

21. Did LT. Juan Ramos tell the plaintiff's private investigator, Nicholas

3

Cockoros, that inmate Timothy Zanetti was no longer at the Hampden county house of correction, and that Mr.Zanetti did not want to speak to anyone on April 2nd of 2004

A.   See Lt. Ramos' Answers to Interrogatories.

22.   Was Springfield police officer Michael White under mental observation and, or suicide watch while housed in the C-2 unit? If so, when, why and in what cell(s) was he housed in? And from what date was he in said cell(s)?

A.   Objection.   The information sought is protected by the phsycian-patient privilege.

23.   Was anyone aware of the fact that Omar Marrero was a Commonwealth witness prior to being placed in the plaintiff's cell?  If so, who and what did he/she know?

A.   Not to my knowledge.

24.   How many times was Omar Marrero in any of the segregation units? And why was he there each time?

A.   Objection.   The information sought constitutes "evaluative information" under the C.O.R.I. statute.  M.G.L. c. 6 § 167 exempts from disclosure, "evaluative information" defined as: "'Evaluative information', records, data, or reports concerning individuals charged with crime and compiled by criminal justice agencies which appraise mental condition, physical condition, extent of social adjustment, rehabilitative progress and the like, and which are primarily used in connection with bail, pre-trial or post-trial release proceedings, sentencing, correctional and rehabilitative planning, probation or parole."

25.   When Omar Marrero returned to the C-2 unit in, or around september of 2003, why was he placed there?

A.   Objection.   The information sought constitutes "evaluative information" under the C.O.R.I. statute.  M.G.L. c. 6 § 167 exempts from disclosure, "evaluative information" defined as: "'Evaluative information', records, data, or reports concerning individuals charged with crime and compiled by criminal justice agencies which appraise mental condition, physical condition, extent of social adjustment, rehabilitative progress and the like, and which are primarily used in connection with bail, pre-trial or post-trial release proceedings, sentencing, correctional and rehabilitative planning, probation or parole."

4

26.     Upon Inmate Marrero's return to C-2 this time in question did anyone learn of Mr.Marrero's alleged Commonwealth witness status? If so, who and what did they learn?

A.      Not to my knowledge.

27.     Did officer Kelly enter an enemey [sic] status between Omar Marrero and the plaintiff on october 28, 2003? If so why?; and If not this date, did he do so on any date? and why?

A.      I do not know.

        Signed under the penalties of perjury this 17th day of May, 2006.


                                    By:  _Thomas P Korman_____  5-16-06
                                            Thomas Korman

**AS TO OBJECTIONS:**

_Edward J. McDonough, Jr., Esquire_
Edward J. McDonough, Jr., Esquire


                                    Certificate of Service

_signature_ certifies that copies of the foregoing document was served on Anthony Garvin to S.B.C.C. P. O. Box 8000, Shirley, MA 01464 by first class mail on 5/17/2006.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
NO.05-30102-MAP

———————————

ANTHONY GARVIN
PLAINTIFF
V.
HAMPDEN COUNTY SHERIFF'S DEPARTMENT, SHERIFF MICHAEL J. ASHE, JR.,
HAMPDEN COUNTY COMMISSIONERS, COMMONWEALTH OF MASSACHUSETTS,
SUPT. BASIL TSGARIS, DEPUTY CHIEF OF SECURITY KENNEY,
MAJOR (FIRST NAME UNKNOWN) WELDON, LT. (FIRST NAME UNKNOWN)
KORMAN, LT. JUAN RAMOS, LT. (FIRST NAME UNKNOWN) CADIGAN,
OFFICER WILLIAM MULDROW, OFFICER VICTOR KELLY AND
THE UNKNOWN OFFICER IN THE TOWER
DEFENDANTS

———————————

DEFENDANT THOMAS KORMAN 'S ANSWERS
TO PLAINTIFF'S SUPPLEMENTAL SET OF INTERROGATORIES

1.    What are your full and in detail daily duties and responsibilities at the

Hampden county House of correction and in regard to the C-1 and C-2 unit?

RESPONSE:  Defendants object to providing this information because

plaintiff has requested information that could threaten the

safety, health and security of staff and other inmates.   The

information requested is not relevant to the issue pleaded in

the pending action and is not reasonably calculated to lead to

the discovery of admissible evidence.  Without waiving said

objection states as follows:

With regard to the issue pleaded in the plaintiff's complaint,

as a lieutenant I would be responsible for the general

supervision of the unit.  I would make security checks and

respond to any incidents or emergencies.

2.    What is the procedure that any officer must follow when removing and

replacing an inmate from and into a cell in detail?

RESPONSE: A standard escort by an officer on duty would involve the opening/closing of the cell trap door, appropriately cuff the inmate through the trap door, inmate is requested to turn away from the door, signal/radio to tower to open specific cell door, if appropriate place leg restraints and escort inmate to destination.

3. Is it some ones [sic] responsibility to check if or make sure that enemies are not placed in the same cell? If so, who was that person for the C-1 and C-2 unit in 2003?

RESPONSE: The person making such assignment varies. POD staff on duty normally assigns POD cells. At the time the assignment is made, the officer on duty would consider all the available information pertinent to the assignment process, including known enemy status.

4. Do you have any personal relationship with anyone in the district attorney's office? If so, who and how so?

RESPONSE: No.

5. When Omar Marrero returned to the C-2 unit on or about August of 2003 after being jumped by his own LaFamilia gang brothers, who did the investigation and what did they find out, was there a report written and who was notified of the findings?

RESPONSE: Objection - the information sought is not relevant to the subject matter of the pending action and is not reasonably

2

calculated to lead to the discovery of admissible evidence.

Without waiving said objection, I do not know.

6.    What was discovered from said investigation?

RESPONSE:  Objection - the information sought is not relevant to the

subject matter of the pending action and is not reasonably

calculated to lead to the discovery of admissible evidence.

Without waiving said objection, I do not know.

7.    Were you ever investigated or disciplined for assaulting an inmate?

RESPONSE:  No.

8.    If so, when, what inmate and what was the out come [sic] in detail?

RESPONSE: Not applicable.

Signed under the penalties of perjury this 25th day of July, 2006.


_Thomas P. Korman_
Thomas Korman


**AS TO OBJECTIONS:**

_Kevin D. Withers_
Kevin D. Withers, Esquire

CERTIFICATE OF SERVICE

_Kevin D. Withers_ certifies that copies of the foregoing document was served on Anthony Garvin to S.B.C.C. P. O. Box 8000, Shirley, MA 01464 by first class mail on 7/26/2006.

3

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
NO.05-30102-MAP

_____

ANTHONY GARVIN
PLAINTIFF
V.
HAMPDEN COUNTY SHERIFF'S DEPARTMENT, SHERIFF MICHAEL J. ASHE, JR.,
HAMPDEN COUNTY COMMISSIONERS, COMMONWEALTH OF MASSACHUSETTS,
SUPT. BASIL TSGARIS, DEPUTY CHIEF OF SECURITY KENNEY,
MAJOR (FIRST NAME UNKNOWN) WELDON, LT. (FIRST NAME UNKNOWN)
KORMAN, LT. JUAN RAMOS, LT. (FIRST NAME UNKNOWN) CADIGAN,
OFFICER WILLIAM MULDROW, OFFICER VICTOR KELLY AND
THE UNKNOWN OFFICER IN THE TOWER
DEFENDANTS

_____

DEFENDANT WILLIAM MULDROW'S ANSWERS TO PLAINTIFF'S
FIRST SET OF INTERROGATORIES

1.    Define the duties and responsibilities of each defendant.

A.    Objection.  Defendants object to producing this documentation  because
      plaintiff has requested information that could threaten the safety, health and
      security of staff and other inmates.  Without waiving said objection states as
      follows:
            Michael J. Ashe, Jr. is Sheriff of Hampden County
            Basil Tsagaris is Assistant Superintendent
            John Kenney is Deputy Chief of Security
            Edward Weldon is Assistant Superintendent in charge of classification
            Thomas Korman is a Lieutenant
            Juan Ramos is a Captain
            John Cadigan is a Captain
            William Muldrow is a Correctional Officer
            Victor Kelly is a Correctional Officer

2.    Who is in charge of cell assignment at the C-tower?

A.    After classification assigns a pod, the pod officers on duty assign the cell.

3.    On June 2nd, 2003, did officer Muldrow radio to the control tower and order
      the unknown officer in the tower to open the cell door of Timothy Zanetti?

A.    Yes.

4.    Where was officer Muldrow when said cell was opened?

A.    I was cuffing an inmate in front of his cell.

5.    Were there any other officers in front of the door when it was opened? If so, who?

A.    No.

6.    Did officer Muldrow and officer Kelly know that the plaintiff was on administrative protective custody?

A.    I knew the plaintiff was on administrative protective custody.   See Officer Kelly's answers.

7.    Whoelse [sic] knew of the plaintiff's status? And how did they know?

A.    I don't know.

8.    Did anyone report this attack to medical? If so, who, when; If not, why?

A.    Yes but I do not know who called for medical.

9.    Did the plaintiff receive medical treatment in regard to the attack? If yes, state when, where, and by whom; If hot, state why not.

A.    Yes.   Medical responded to the POD and both inmates were checked. According to the Medical Records, Plaintiff was seen by Michael Hall on June 2, 2003.

10.   Was the attack video taped? If so who has it? If not, state why.

A.    I don't know.

11.   What is the defendant, the-unknown officer in the tower's name?

A.    Tim Allen.

12.   Why has the unknown officer in the tower not answered the complaint?

A.    I do not know.

13.   Has the unknown officer in the tower ever worked in the C-2 unit between May 27,2003 and June 2nd, 2003? If so, when?

2

A.    I do not know.

14.    Did anyone question inmate Zanetti as to his motive for the attack? If so, who, when; and what was discovered if anything?; and was it documented? If not, why not?

A.    I do not know. I did not.

15.    Did the plaintiff request any actions to be taken due to said attack? If so what and when as well as who it was requested of?

A.    I do not know but I believe he filed a grievance.

16.    What, if anything was done about this attack on the plaintiff? When and by whom.

A.    Mr. Zanetti was moved to another POD.

17.    Was the institution aware of any threats or the likelyhood [sic] of danger the plaintiff faced? If so, who was aware?

A.    I do not know.

18.    Was the institution aware of Omar Marrero's affiliation to the lafamilia gang? If so, when did they become aware; and in said circumstancies [sic], who is notified of such a status?

A.    I do not know.

19.    Was anyone at the Hampden county house of correction involved in contacking the state police, or the district attorney's office, for the soul purpose of assisting Omar Marrero in becoming a commonwealth witness against the plaintiff? If so, who ,when was the call made; and from what number and extension was the call made?

A.    Not to my knowledge.

20.    Did Lt. Juan Ramos notify the district attorney's office of any other potential witnesses against the plaintiff, and or in any other criminal matter? If so, who were said potential witnesses, and from where did he place said call to the district attorney? What is the phone number and extention [sic] of said phone?

A.    I do not know. See Lt. Ramos' Answers to Interrogatories.

21.    Did LT. Juan Ramos tell the plaintiff's private investigator, Nicholas Cockoros, that inmate Timothy Zanetti was no longer at the Hampden county house of correction, and that Mr.Zanetti did not want to speak to anyone on April 2nd of 2004

A.    I do not know.  See Lt. Ramos' Answers to Interrogatories.

22.    Was Springfield police officer Michael White under mental observation and, or suicide watch while housed in the C-2 unit? If so, when, why and in what cell(s) was he housed in? And from what date was he in said cell(s)?

A.    Objection.  The information sought is protected by the phsycian-patient privilege.

23.    Was anyone aware of the fact that Omar Marrero was a Commonwealth witness prior to being placed in the plaintiff's cell?  If so, who and what did he/she know?

A.    I was not aware.

24.    How many times was Omar Marrero in any of the segregation units? And why was he there each time?

A.    Objection.  The information sought constitutes "evaluative information" under the C.O.R.I. statute.  M.G.L. c. 6 § 167 exempts from disclosure, "evaluative information" defined as: "'Evaluative information', records, data, or reports concerning individuals charged with crime and compiled by criminal justice agencies which appraise mental condition, physical condition, extent of social adjustment, rehabilitative progress and the like, and which are primarily used in connection with bail, pre-trial or post-trial release proceedings, sentencing, correctional and rehabilitative planning, probation or parole."

25.    When Omar Marrero returned to the C-2 unit in, or around september of 2003, why was he placed there?

A.    Objection.  The information sought constitutes "evaluative information" under the C.O.R.I. statute.  M.G.L. c. 6 § 167 exempts from disclosure, "evaluative information" defined as: "'Evaluative information', records, data, or reports concerning individuals charged with crime and compiled by criminal justice agencies which appraise mental condition, physical condition, extent of social adjustment, rehabilitative progress and the like, and which are primarily used in connection with bail, pre-trial or post-trial release proceedings, sentencing, correctional and rehabilitative planning,

4

probation or parole."

26.    Upon Inmate Marrero's return to C-2 this time in question did anyone learn of Mr.Marrero's alleged Commonwealth witness status? If so, who and what did they learn?

A.    I did not know this.

27.    Did officer Kelly enter an enemey [sic] status between Omar Marrero and the plaintiff on october 28, 2003? If so why?; and If not this date, did he do so on any date? and why?

A.    I don't know.  See Officer Kelly's Answers to Interrogatories.

Signed under the penalties of perjury this  *16*  day of May, 2006.

By:  _Cpl William J Muldrew #764_
         William Muldrow

**AS TO OBJECTIONS:**

_[signature]_
Edward J. McDonough, Jr., Esquire

Certificate of Service

_[signature]_ certifies that copies of the foregoing document was served on Anthony Garvin to S.B.C.C. P. O. Box 8000, Shirley, MA 01464 by first class mail on 5/17/2006.

5

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
No.05-30102-MAP

---

ANTHONY GARVIN
PLAINTIFF
V.

HAMPDEN COUNTY SHERIFF'S DEPARTMENT, SHERIFF MICHAEL J. ASHE, JR.,
HAMPDEN COUNTY COMMISSIONERS, COMMONWEALTH OF MASSACHUSETTS,
SUPT. BASIL TSGARIS, DEPUTY CHIEF OF SECURITY KENNEY,
MAJOR (FIRST NAME UNKNOWN) WELDON, LT. (FIRST NAME UNKNOWN)
KORMAN, LT. JUAN RAMOS, LT. (FIRST NAME UNKNOWN) CADIGAN,
OFFICER WILLIAM MULDROW, OFFICER VICTOR KELLY AND
THE UNKNOWN OFFICER IN THE TOWER
DEFENDANTS

---

DEFENDANT WILLIAM MULDROW'S ANSWERS
TO PLAINTIFF'S SUPPLEMENTAL SET OF INTERROGATORIES

1.   What are your full and in detail daily duties and responsibilities at the

Hampden county House of correction and in regard to the C-1 and C-2 unit?

RESPONSE:  Defendants object to providing this information because

plaintiff has requested information that could threaten the

safety, health and security of staff and other inmates.   The

information requested is not relevant to the issue pleaded in

the pending action and is not reasonably calculated to lead to

the discovery of admissible evidence.  Without waiving said

objection states as follows:  With regard to the issue pleaded

in the plaintiff's complaint, I am a Correctional officer at

Hampden County Correctional Center.  My duties include but

not limited to escorting inmates for recreation time and

showers and as needed, half hour security checks of the PODs

and general contact with the inmates.

2.    What is the procedure that any officer must follow when removing and replacing an inmate from and into a cell in detail?

RESPONSE:  A standard escort by an officer on duty would involve the opening/closing of the cell trap door, appropriately cuff the inmate through the trap door, inmate is requested to turn away from the door, signal/radio to tower to open specific cell door, if appropriate place leg restraints and escort inmate to destination.

3.    Is it some ones [sic] responsibility to check if or make sure that enemies are not placed in the same cell?  If so, who was that person for the C-1 and C-2 unit in 2003?

RESPONSE:  The person making such assignment varies.  POD staff on duty normally assigns POD cells.  At the time the assignment is made, the officer on duty would consider all the available information pertinent to the assignment process, including known enemy status.

4.    Do you have any personal relationship with anyone in the district attorney's office?  If so, who and how so?

RESPONSE: No.

5.    When Omar Marrero returned to the C-2 unit on or about August of 2003 after being jumped by his own LaFamilia gang brothers, who did the investigation and what did they find out, was there a report written and who was notified of the findings?

RESPONSE:  Objection - the information sought is not relevant to the subject matter of the pending action and is not reasonably

2

1 of 3

calculated to lead to the discovery of admissible evidence.

Without waiving said objection, I do not know.

6.    What was discovered from said investigation?

RESPONSE:  Objection - the information sought is not relevant to the

subject matter of the pending action and is not reasonably

calculated to lead to the discovery of admissible evidence.

Without waiving said objection, I do not know.

Signed under the penalties of perjury this 2\ day of July, 2006.


William Muldrow

**AS TO OBJECTIONS:**

Kevin D. Withers, Esquire

CERTIFICATE OF SERVICE

certifies that copies of the foregoing document was served on Anthony
Garvin to S.B.C.C. P. O. Box 8000, Shirley, MA 01464 by first class mail on 7/26/2006.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
No.05-30102-MAP

_____

ANTHONY GARVIN
PLAINTIFF
V.
HAMPDEN COUNTY SHERIFF'S DEPARTMENT, SHERIFF MICHAEL J. ASHE, JR.,
HAMPDEN COUNTY COMMISSIONERS, COMMONWEALTH OF MASSACHUSETTS,
SUPT. BASIL TSGARIS, DEPUTY CHIEF OF SECURITY KENNEY,
MAJOR (FIRST NAME UNKNOWN) WELDON, LT. (FIRST NAME UNKNOWN)
KORMAN, LT. JUAN RAMOS, LT. (FIRST NAME UNKNOWN) CADIGAN,
OFFICER WILLIAM MULDROW, OFFICER VICTOR KELLY AND
THE UNKNOWN OFFICER IN THE TOWER
DEFENDANTS

_____

DEFENDANT JUAN RAMOS' ANSWERS TO PLAINTIFF'S
FIRST SET OF INTERROGATORIES

1.    Define the duties and responsibilities of each defendant.

A.    Objection.  Defendants object to producing this documentation  because
      plaintiff has requested information that could threaten the safety, health and
      security of staff and other inmates.  Without waiving said objection states as
      follows:
              Michael J. Ashe, Jr. is Sheriff of Hampden County
              Basil Tsagaris is Assistant Superintendent
              John Kenney is Deputy Chief of Security
              Edward Weldon is Assistant Superintendent in charge of classification
              Thomas Korman is a Lieutenant
              Juan Ramos is a Captain
              John Cadigan is a Captain
              William Muldrow is a Correctional Officer
              Victor Kelly is a Correctional Officer

2.    Who is in charge of cell assignment at the C-tower?

A.    After classification assigns a pod, the pod officers on duty assign the cell.

3.    On June 2nd, 2003, did officer Muldrow radio to the control tower and order
      the unknown officer in the tower to open the cell door of Timothy Zanetti?

A.    I don't know.  See Officer Muldrow's answers to interrogatories.

4.    Where was officer Muldrow when said cell was opened?

A.    I don't know.  See Officer Muldrow's answers to interrogatories.

5.    Were there any other officers in front of the door when it was opened? If so, who?

A.    I don't know.  See Officer Muldrow's answers to interrogatories.

6.    Did officer Muldrow and officer Kelly know that the plaintiff was on administrative protective custody?

A.    I do not know.  See answers of Officer Muldrow and Officer Kelly.

7.    Whoelse [sic] knew of the plaintiff's status? And how did they know?

A.    I believe the C-Tower supervisors may have known and the staff could possibly have known if they checked the computer records.

8.    Did anyone report this attack to medical? If so, who, when; If not, why?

A.    According to the Incident Report and Medical Records, Health Services was called.

9.    Did the plaintiff receive medical treatment in regard to the attack? If yes, state when, where, and by whom; If hot, state why not.

A.    According to the Medical Records, Plaintiff was seen by Michael Hall on June 2, 2003.

10.    Was the attack video taped? If so who has it? If not, state why.

A.    I don't know.

11.    What is the defendant, the-unknown officer in the tower's name?

A.    I don't know.

12.    Why has the unknown officer in the tower not answered the complaint?

A.    I don't know.

13.    Has the unknown officer in the tower ever worked in the C-2 unit between May 27,2003 and June 2nd, 2003? If so, when?

A.    I don't know.

14.    Did anyone question inmate Zanetti as to his motive for the attack? If so, who, when; and what was discovered if anything?; and was it documented? If not, why not?

A.    I do not know. I was not involved in the incident.

15.    Did the plaintiff request any actions to be taken due to said attack? If so what and when as well as who it was requested of?

A.    I do not know.

16.    What, if anything was done about this attack on the plaintiff? When and by whom.

A.    I do not know.

17.    Was the institution aware of any threats or the likelyhood [sic] of danger the plaintiff faced? If so, who was aware?

A.    I was not aware of any actual threats, but he was placed on protective custody - Administrative due to the plaintiff's high profile case.

18.    Was the institution aware of Omar Marrero's affiliation to the lafamilia gang? If so, when did they become aware; and in said circumstancies [sic], who is notified of such a status?

A.    I was aware that in the past Omar Marrero had some affiliations to the Lafamilia gang.

19.    Was anyone at the Hampden county house of correction involved in contacking the state police, or the district attorney's office, for the soul purpose of assisting Omar Marrero in becoming a commonwealth witness against the plaintiff? If so, who ,when was the call made; and from what number and extension was the call made?

A.    I did not contact anyone.

20.    Did Lt. Juan Ramos notify the district attorney's office of any other potential witnesses against the plaintiff, and or in any other criminal matter? If so, who were said potential witnesses, and from where did he place said call to the district attorney? What is the phone number and extention [sic] of said phone?

A.    No.

21.    Did LT. Juan Ramos tell the plaintiff's private investigator, Nicholas
       Cockoros, that inmate Timothy Zanetti was no longer at the Hampden county
       house of correction, and that Mr.Zanetti did not want to speak to anyone on
       April 2nd of 2004

A.    No.

22.    Was Springfield police officer Michael White under mental observation and,
       or suicide watch while housed in the C-2 unit? If so, when, why and in what
       cell(s) was he housed in? And from what date was he in said cell(s)?

A.    Objection.  The information sought is protected by the phsycian-patient
       privilege.

23.    Was anyone aware of the fact that Omar Marrero was a Commonwealth
       witness prior to being placed in the plaintiff's cell?  If so, who and what did
       he/she know?

A.    I had no knowledge of Omar Marrero being a witness for anyone.

24.    How many times was Omar Marrero in any of the segregation units? And
       why was he there each time?

A.    Objection.  The information sought constitutes "evaluative information"
       under the C.O.R.I. statute.  M.G.L. c. 6 § 167 exempts from disclosure,
       "evaluative information" defined as: "'Evaluative information', records, data,
       or reports concerning individuals charged with crime and compiled by
       criminal justice agencies which appraise mental condition, physical
       condition, extent of social adjustment, rehabilitative progress and the like,
       and which are primarily used in connection with bail, pre-trial or post-trial
       release proceedings, sentencing, correctional and rehabilitative planning,
       probation or parole."

25.    When Omar Marrero returned to the C-2 unit in, or around september of
       2003, why was he placed there?

A.    Objection.  The information sought constitutes "evaluative information"
       under the C.O.R.I. statute.  M.G.L. c. 6 § 167 exempts from disclosure,
       "evaluative information" defined as: "'Evaluative information', records, data,
       or reports concerning individuals charged with crime and compiled by
       criminal justice agencies which appraise mental condition, physical

4

condition, extent of social adjustment, rehabilitative progress and the like, and which are primarily used in connection with bail, pre-trial or post-trial release proceedings, sentencing, correctional and rehabilitative planning, probation or parole."

26.    Upon Inmate Marrero's return to C-2 this time in question did anyone learn of Mr. Marrero's alleged Commonwealth witness status? If so, who and what did they learn?

A.    Not to my knowledge.

27.    Did officer Kelly enter an enemey [sic] status between Omar Marrero and the plaintiff on october 28, 2003? If so why?; and If not this date, did he do so on any date? and why?

A.    I do not know.  However, someone entered on the computer to keep Omar Marrero and Anthony Garvin separate on October 21, 2003.

Signed under the penalties of perjury this 17th day of May, 2006.

By: _____ 5/16/06
        Juan Ramos

**AS TO OBJECTIONS:**

_____
Edward J. McDonough, Jr., Esquire

Certificate of Service

_____certifies that copies of the foregoing document was served on Anthony Garvin to S.B.C.C. P. O. Box 8000, Shirley, MA 01464 by first class mail on 5/17/2006.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
NO.05-30102-MAP

ANTHONY GARVIN
PLAINTIFF

V.

HAMPDEN COUNTY SHERIFF'S DEPARTMENT, SHERIFF MICHAEL J. ASHE, JR.,
HAMPDEN COUNTY COMMISSIONERS, COMMONWEALTH OF MASSACHUSETTS,
SUPT. BASIL TSGARIS, DEPUTY CHIEF OF SECURITY KENNEY,
MAJOR (FIRST NAME UNKNOWN) WELDON, LT. (FIRST NAME UNKNOWN)
KORMAN, LT. JUAN RAMOS, LT. (FIRST NAME UNKNOWN) CADIGAN,
OFFICER WILLIAM MULDROW, OFFICER VICTOR KELLY AND
THE UNKNOWN OFFICER IN THE TOWER
DEFENDANTS

DEFENDANT JUAN RAMOS' ANSWERS
TO PLAINTIFF'S SUPPLEMENTAL SET OF INTERROGATORIES

1.    What are your full and in detail daily duties and responsibilities at the

       Hampden county House of correction and in regard to the C-1 and C-2 unit?

       RESPONSE:  Defendants object to providing this information because

                          plaintiff has requested information that could threaten the

                          safety, health and security of staff and other inmates.   The

                          information requested is not relevant to the issue pleaded in

                          the pending action and is not reasonably calculated to lead to

                          the discovery of admissible evidence.  Without waiving said

                          objection states as follows: I have no daily duties in regard to

                          C-1 and C-2 units.

2.    What is the procedure that any officer must follow when removing and

       replacing an inmate from and into a cell in detail?

       RESPONSE:  A standard escort by an officer on duty would involve the

                          opening/closing of the cell trap door, appropriately cuff the

inmate through the trap door, inmate is requested to turn away from the door, signal/radio to tower to open specific cell door, if appropriate place leg restraints and escort inmate to destination.

3.     Is it some ones [sic] responsibility to check if or make sure that enemies are not placed in the same cell? If so, who was that person for the C-1 and C-2 unit in 2003?

RESPONSE:   The person making such assignment varies.  POD staff on duty normally assigns POD cells.  At the time the assignment is made, the officer on duty would consider all the available information pertinent to the assignment process, including known enemy status.

4.     Do you have any personal relationship with anyone in the district attorney's office? If so, who and how so?

RESPONSE:  No.

5.     When Omar Marrero returned to the C-2 unit on or about August of 2003 after being jumped by his own LaFamilia gang brothers, who did the investigation and what did they find out, was there a report written and who was notified of the findings?

RESPONSE:  Objection - the information sought is not relevant to the subject matter of the pending action and is not reasonably calculated to lead to the discovery of admissible evidence. Without waiving said objection, the Unit Disciplinary Board initiates and conducts the investigation and hearing.

2

6.    What was discovered from said investigation?

RESPONSE:    Objection - the information sought is not relevant to the subject matter of the pending action and is not reasonably calculated to lead to the discovery of admissible evidence. Without waiving said objection, I do not know the outcome of the investigation.

7.    In 2003 you wer [sic] the C-unit/Tower supervisor, did you do daily cell checks/rounds and was it your job to make sure that enemies are not housed in the same cell, if not whose job was it?

RESPONSE    I was not the Unit Supervisor in C-unit/Tower.

8.    When did you first become aware that Mr. Garvin and Mr. Marrero were in the same cell, and did you have a problem with it?

RESPONSE:    No.

9.    Isn't it true, that every week a class board slip is given to staff members in the unit giving them notice of each inmates' weekly status in the C-1 and 2 unites, which is kept in a book?

RESPONSE:    A weekly Classification Board Meeting is held to discuss inmate status. The unit secretary keeps notes and a record is made with respect to each inmate considered, with a copy given to the staff to be given to each inmate concerning that inmate's status.

10.    In 2002 the day after the shooting of Felipe Santiago, you wrote a report to your superior defendant John Kenney, alleging information that you had received from a confidential informant, stating that the shooter's family, who

3

lived in Canon Circle was in danger due to retaliation plots. You notified

local authorities as well in your opinion was Mr. Garvin in any danger from

Lafmilia or the Latin Kings, or did this information present any issues to be

taken into consideration when and if Mr. Garvin ever were to be housed at

the H.C.H.C, if so, or if not what threats existed and why or why not?

RESPONSE:   Plaintiff entered Hampden County Correctional Center in

Administrative Protective Custody because of possible risk

posed to him due to his suspected involvement in the

shooting.

Signed under the penalties of perjury this $20$ day of July, 2006.

Juan Ramos

**AS TO OBJECTIONS:**

_____

Kevin D. Withers, Esquire

CERTIFICATE OF SERVICE
_____ certifies that copies of the foregoing document was served on Anthony
Garvin to S.B.C.C. P. O. Box 8000, Shirley, MA 01464 by first class mail on 7/26/2006.

4

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
NO.05-30102-MAP

ANTHONY GARVIN
PLAINTIFF
V.
HAMPDEN COUNTY SHERIFF'S DEPARTMENT, SHERIFF MICHAEL J. ASHE, JR.,
HAMPDEN COUNTY COMMISSIONERS, COMMONWEALTH OF MASSACHUSETTS,
SUPT. BASIL TSGARIS, DEPUTY CHIEF OF SECURITY KENNEY,
MAJOR (FIRST NAME UNKNOWN) WELDON, LT. (FIRST NAME UNKNOWN)
KORMAN, LT. JUAN RAMOS, LT. (FIRST NAME UNKNOWN) CADIGAN,
OFFICER WILLIAM MULDROW, OFFICER VICTOR KELLY AND
THE UNKNOWN OFFICER IN THE TOWER
DEFENDANTS

DEFENDANT BASIL TSAGARIS' ANSWERS TO PLAINTIFF'S
FIRST SET OF INTERROGATORIES

1.    Define the duties and responsibilities of each defendant.

A.    Objection.  Defendants object to producing this documentation  because
      plaintiff has requested information that could threaten the safety, health and
      security of staff and other inmates.  Without waiving said objection states as
      follows:
            Michael J. Ashe, Jr. is Sheriff of Hampden County
            Basil Tsagaris is Assistant Superintendent
            John Kenney is Deputy Chief of Security
            Edward Weldon is Assistant Superintendent in charge of classification
            Thomas Korman is a Lieutenant
            Juan Ramos is a Captain
            John Cadigan is a Captain
            William Muldrow is a Correctional Officer
            Victor Kelly is a Correctional Officer

2.    Who is in charge of cell assignment at the C-tower?

A.    The ~~pod officers~~ on duty assign the cells.

3.    On June 2nd, 2003, did officer Muldrow radio to the control tower and order
      the unknown officer in the tower to open the cell door of Timothy Zanetti?

A.    I do not know.  I was not there.  See answers of Correctional Officer
      Muldrow.

4.    Where was officer Muldrow when said cell was opened?

A.    I do not know.  I was not there.  See answers of Correctional Officer
      Muldrow.

5.    Were there any other officers in front of the door when it was opened? If so,
      who?

A.    I do not know.  I was not there.  See answers of Correctional Officer
      Muldrow.

6.    Did officer Muldrow and officer Kelly know that the plaintiff was on
      administrative protective custody?

A.    I do not know.  See Answers of Officer Muldrow and Officer Kelly.

7.    Whoelse [sic] knew of the plaintiff's status? And how did they know?

A.    I do not know.

8.    Did anyone report this attack to medical? If so, who, when; If not, why?

A.    According to the Incident Report and Medical Records, Health Services was
      contacted.

9.    Did the plaintiff receive medical treatment in regard to the attack? If yes, state
      when, where, and by whom; If hot, state why not.

A.    According to the Medical Records, Plaintiff was seen by Michael Hall of
      Health Services on June 2, 2003.

10.   Was the attack video taped? If so who has it? If not, state why.

A.    I do not know.

11.   What is the defendant, the-unknown officer in the tower's name?

A.    Tim Allen.

12.   Why has the unknown officer in the tower not answered the complaint?

A.    I do not know.

13.   Has the unknown officer in the tower ever worked in the C-2 unit between

May 27,2003 and June 2nd, 2003? If so, when?

A.    I do not know.

14.    Did anyone question inmate Zanetti as to his motive for the attack? If so, who, when; and what was discovered if anything?; and was it documented? If not, why not?

A.    I do not know.

15.    Did the plaintiff request any actions to be taken due to said attack? If so what and when as well as who it was requested of?

A.    I do not know but Inmate Grievance of dated June 9, 2003, states "When I spoke to Lt Cadigan and ask what was being done & that I wanted to press charges due to the fact I was hand cuffed & shackled He told me 'as far as he were concerned I ingaged that inmate' which were not true I was on rec"

16.    What, if anything was done about this attack on the plaintiff?  When and by whom.

A.    Plaintiff was seen by medical and an incident report was written by Correctional Officer Muldrow.

17.    Was the institution aware of any threats or the likelyhood [sic] of danger the plaintiff faced?  If so, who was aware?

A.    I do not know. See Capt. Ramos' Answers to Interrogatories.

18.    Was the institution aware of Omar Marrero's affiliation to the lafamilia gang? If so, when did they become aware; and in said circumstancies [sic], who is notified of such a status?

A.    I do not know.  See Capt. Ramos' Answers to Interrogatories.

19.    Was anyone at the Hampden county house of correction involved in contacking the state police, or the district attorney's office, for the soul purpose of assisting Omar Marrero in becoming a commonwealth witness against the plaintiff? If so, who ,when was the call made; and from what number and extension was the call made?

A.    Not to my knowledge.

20.    Did Lt. Juan Ramos notify the district attorney's office of any other potential

witnesses against the plaintiff, and or in any other criminal matter? If so, who were said potential witnesses, and from where did he place said call to the district attorney? What is the phone number and extention [sic] of said phone?

A.     See Lt. Ramos' Answers to Interrogatories.

21.     Did LT. Juan Ramos tell the plaintiff's private investigator, Nicholas Cockoros, that inmate Timothy Zanetti was no longer at the Hampden county house of correction, and that Mr.Zanetti did not want to speak to anyone on April 2nd of 2004

A.     See Lt. Ramos' Answers to Interrogatories.

22.     Was Springfield police officer Michael White under mental observation and, or suicide watch while housed in the C-2 unit? If so, when, why and in what cell(s) was he housed in? And from what date was he in said cell(s)?

A.     Objection. The information sought is protected by the physician-patient privilege and constitutes "evaluative information" under the C.O.R.I. statute.

23.     Was anyone aware of the fact that Omar Marrero was a Commonwealth witness prior to being placed in the plaintiff's cell? If so, who and what did he/she know?

A.     Not to my knowledge.

24.     How many times was Omar Marrero in any of the segregation units? And why was he there each time?

A.     Objection. The information sought constitutes "evaluative information" under the C.O.R.I. statute. M.G.L. c. 6 § 167 exempts from disclosure, "evaluative information" defined as: "'Evaluative information', records, data, or reports concerning individuals charged with crime and compiled by criminal justice agencies which appraise mental condition, physical condition, extent of social adjustment, rehabilitative progress and the like, and which are primarily used in connection with bail, pre-trial or post-trial release proceedings, sentencing, correctional and rehabilitative planning, probation or parole."

25.     When Omar Marrero returned to the C-2 unit in, or around september of 2003, why was he placed there?

A.     Objection. The information sought constitutes "evaluative information"

4

under the C.O.R.I. statute. M.G.L. c. 6 § 167 exempts from disclosure, "evaluative information" defined as: "'Evaluative information', records, data, or reports concerning individuals charged with crime and compiled by criminal justice agencies which appraise mental condition, physical condition, extent of social adjustment, rehabilitative progress and the like, and which are primarily used in connection with bail, pre-trial or post-trial release proceedings, sentencing, correctional and rehabilitative planning, probation or parole."

26.    Upon Inmate Marrero's return to C-2 this time in question did anyone learn of Mr.Marrero's alleged Commonwealth witness status? If so, who and what did they learn?

A.    Not to my knowledge.

27.    Did officer Kelly enter an enemey [sic] status between Omar Marrero and the plaintiff on october 28, 2003? If so why?; and If not this date, did he do so on any date? and why?

A.    See Correctional Officer Kelly's Answers to Interrogatories.

Signed under the penalties of perjury this 15th day of May, 2006.

By: _Basil Tsag_ _____

Basil Tsagaris

**AS TO OBJECTIONS:**

_Edward J McDonough Jr_

Edward J. McDonough, Jr., Esquire

Certificate of Service

_Edward J McDonough_ certifies that copies of the foregoing document was served on Anthony Garvin to S.B.C.C. P. O. Box 8000, Shirley, MA 01464 by first class mail on 5/15/2006.

5

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

No.05-30102-MAP

---

ANTHONY GARVIN
PLAINTIFF
V.
HAMPDEN COUNTY SHERIFF'S DEPARTMENT,
SHERIFF MICHAEL J. ASHE, JR.,
HAMPDEN COUNTY COMMISSIONERS,
COMMONWEALTH OF MASSACHUSETTS,
SUPT. BASIL TSGARIS,
DEPUTY CHIEF OF SECURITY KENNEY,
MAJOR (FIRST NAME UNKNOWN) WELDON,
LT. (FIRST NAME UNKNOWN) KORMAN,
LT. JUAN RAMOS,
LT. (FIRST NAME UNKNOWN) CADIGAN,
OFFICER WILLIAM MULDROW,
OFFICER VICTOR KELLY AND
THE UNKNOWN OFFICER IN THE TOWER
DEFENDANTS

---

DEFENDANT BASIL TSAGARIS' ANSWERS
TO PLAINTIFF'S SUPPLEMENTAL SET OF INTERROGATORIES

1.    What are your full and in detail daily duties and responsibilities at the

Hampden county House of correction and in regard to the C-1 and C-2 unit?

RESPONSE: Defendants object to providing this information because

plaintiff has requested information that could threaten the

safety, health and security of staff and other inmates.   The

information requested is not relevant to the issue pleaded in

the pending action and is not reasonably calculated to lead to

the discovery of admissible evidence.  Without waiving said

objection states as follows: I am an Assistant Superintendent

and my duties are mainly administrative in nature.

2.    What is the procedure that any officer must follow when removing and replacing an inmate from and into a cell in detail?

RESPONSE:  A standard escort by an officer on duty would involve the opening/closing of the cell trap door, appropriately cuff the inmate through the trap door, inmate is requested to turn away from the door, signal/radio to tower to open specific cell door, if appropriate place leg restraints and escort inmate to destination.

3.    Is it some ones [sic] responsibility to check if or make sure that enemies are not placed in the same cell?  If so, who was that person for the C-1 and C-2 unit in 2003?

RESPONSE:  The person making such assignment varies.  POD staff on duty normally assigns POD cells.  At the time the assignment is made, the officer on duty would consider all the available information pertinent to the assignment process, including known enemy status.

4.    Do you have any personal relationship with anyone in the district attorney's office?  If so, who and how so?

RESPONSE: No.

5.    When Omar Marrero returned to the C-2 unit on or about August of 2003 after being jumped by his own LaFamilia gang brothers, who did the investigation and what did they find out, was there a report written and who was notified of the findings?

2

RESPONSE: Objection - the information sought is not relevant to the subject matter of the pending action and is not reasonably calculated to lead to the discovery of admissible evidence.

6.    What was discovered from said investigation?

RESPONSE: Objection - the information sought is not relevant to the subject matter of the pending action and is not reasonably calculated to lead to the discovery of admissible evidence. Without waiving said objection, I do not know.

7.    Have you ever gotten complaints and or grievances from the plaintiff concerning C/O assaults on inmates, legal mail tampering and 5th amendment rights to due process violations concerning disciplinary hearings, if so, what and what was the out come of the matter?

RESPONSE: Objection - the information sought is not relevant to the subject matter of the pending action and is not reasonably calculated to lead to the discovery of admissible evidence.

8.    Whose job is it at the Hampden County House of Correction to investigate and if necessary discipline any officer or anyone from administration for Federal, state and or department violations of Rules, Laws, Policies and or Procedures?

RESPONSE: Objection - the information sought is not relevant to the subject matter of the pending action and is not reasonably calculated to lead to the discovery of admissible evidence.

3

Signed under the penalties of perjury this *19th* day of July, 2006.

*Basil Tsagaris*
Basil Tsagaris

**AS TO OBJECTIONS:**

*Kevin D. Withers*
Kevin D. Withers, Esquire

CERTIFICATE OF SERVICE

*Kevin Withers* certifies that copies of the foregoing document was served on Anthony Garvin to S.B.C.C. P. O. Box 8000, Shirley, MA 01464 by first class mail on 7/26/2006.

4

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
NO.05-30102-MAP

ANTHONY GARVIN
PLAINTIFF
V.
HAMPDEN COUNTY SHERIFF'S DEPARTMENT, SHERIFF MICHAEL J. ASHE, JR.,
HAMPDEN COUNTY COMMISSIONERS, COMMONWEALTH OF MASSACHUSETTS,
SUPT. BASIL TSGARIS, DEPUTY CHIEF OF SECURITY KENNEY,
MAJOR (FIRST NAME UNKNOWN) WELDON, LT. (FIRST NAME UNKNOWN)
KORMAN, LT. JUAN RAMOS, LT. (FIRST NAME UNKNOWN) CADIGAN,
OFFICER WILLIAM MULDROW, OFFICER VICTOR KELLY AND
THE UNKNOWN OFFICER IN THE TOWER
DEFENDANTS

DEFENDANT EDWARD WELDON'S ANSWERS TO PLAINTIFF'S
FIRST SET OF INTERROGATORIES

1.    Define the duties and responsibilities of each defendant.

A.    Objection.  Defendants object to producing this documentation  because
      plaintiff has requested information that could threaten the safety, health and
      security of staff and other inmates.  Without waiving said objection states as
      follows:
          Michael J. Ashe, Jr. is Sheriff of Hampden County
          Basil Tsagaris is Assistant Superintendent
          John Kenney is Deputy Chief of Security
          Edward Weldon is Assistant Superintendent in charge of classification
          Thomas Korman is a Lieutenant
          Juan Ramos is a Captain
          John Cadigan is a Captain
          William Muldrow is a Correctional Officer
          Victor Kelly is a Correctional Officer

2.    Who is in charge of cell assignment at the C-tower?

A.    After classification assigns a pod, the pod officers on duty assign the cell.

3.    On June 2nd, 2003, did officer Muldrow radio to the control tower and order
      the unknown officer in the tower to open the cell door of Timothy Zanetti?

A.    I don't know.  See Officer Muldrow's answers to interrogatories.

4.    Where was officer Muldrow when said cell was opened?

A.    I don't know. See Officer Muldrow's answers to interrogatories.

5.    Were there any other officers in front of the door when it was opened? If so, who?

A.    I don't know. See Officer Muldrow's answers to interrogatories.

6.    Did officer Muldrow and officer Kelly know that the plaintiff was on administrative protective custody?

A.    I do not know. See Answers of Officer Muldrow and Officer Kelly.

7.    Whoelse [sic] knew of the plaintiff's status? And how did they know?

A.    I do not know. This information would be available on the computer system.

8.    Did anyone report this attack to medical? If so, who, when; If not, why?

A.    According to the Incident Report and Medical Records, Health Services was called.

9.    Did the plaintiff receive medical treatment in regard to the attack? If yes, state when, where, and by whom; If hot, state why not.

A.    According to the Medical Records, Plaintiff was seen by Michael Hall on June 2, 2003.

10.    Was the attack video taped? If so who has it? If not, state why.

A.    I do not know.

11.    What is the defendant, the-unknown officer in the tower's name?

A.    Tim Allen

12.    Why has the unknown officer in the tower not answered the complaint?

A.    I do not know.

13.    Has the unknown officer in the tower ever worked in the C-2 unit between May 27,2003 and June 2nd, 2003? If so, when?

A.    I do not know. See John Kenney's Answers to Interrogatories.

2

14. Did anyone question inmate Zanetti as to his motive for the attack? If so, who, when; and what was discovered if anything?; and was it documented? If not, why not?

A. I do not know. I was not involved in any investigation.

15. Did the plaintiff request any actions to be taken due to said attack? If so what and when as well as who it was requested of?

A. I do not know. See John Kenney's Answers to Interrogatories.

16. What, if anything was done about this attack on the plaintiff? When and by whom.

A. I do not know. See John Kenney's Answers to Interrogatories.

17. Was the institution aware of any threats or the likelyhood [sic] of danger the plaintiff faced? If so, who was aware?

A. I do not know.

18. Was the institution aware of Omar Marrero's affiliation to the lafamilia gang? If so, when did they become aware; and in said circumstancies [sic], who is notified of such a status?

A. I do not know. See Juan Ramos' Answers to Interrogatories.

19. Was anyone at the Hampden county house of correction involved in contacking the state police, or the district attorney's office, for the soul purpose of assisting Omar Marrero in becoming a commonwealth witness against the plaintiff? If so, who ,when was the call made; and from what number and extension was the call made?

A. Not to my knowledge.

20. Did Lt. Juan Ramos notify the district attorney's office of any other potential witnesses against the plaintiff, and or in any other criminal matter? If so, who were said potential witnesses, and from where did he place said call to the district attorney? What is the phone number and extention [sic] of said phone?

A. See Lt. Ramos' Answers to Interrogatories.

21.    Did LT. Juan Ramos tell the plaintiff's private investigator, Nicholas Cockoros, that inmate Timothy Zanetti was no longer at the Hampden county house of correction, and that Mr.Zanetti did not want to speak to anyone on April 2nd of 2004

A.    See Lt. Ramos' Answers to Interrogatories.

22.    Was Springfield police officer Michael White under mental observation and, or suicide watch while housed in the C-2 unit? If so, when, why and in what cell(s) was he housed in? And from what date was he in said cell(s)?

A.    Objection. The information sought is protected by the phsycian-patient privilege.

23.    Was anyone aware of the fact that Omar Marrero was a Commonwealth witness prior to being placed in the plaintiff's cell? If so, who and what did he/she know?

A.    Not to my knowledge.

24.    How many times was Omar Marrero in any of the segregation units? And why was he there each time?

A.    Objection. The information sought constitutes "evaluative information" under the C.O.R.I. statute. M.G.L. c. 6 § 167 exempts from disclosure, "evaluative information" defined as: "'Evaluative information', records, data, or reports concerning individuals charged with crime and compiled by criminal justice agencies which appraise mental condition, physical condition, extent of social adjustment, rehabilitative progress and the like, and which are primarily used in connection with bail, pre-trial or post-trial release proceedings, sentencing, correctional and rehabilitative planning, probation or parole."

25.    When Omar Marrero returned to the C-2 unit in, or around september of 2003, why was he placed there?

A.    Objection. The information sought constitutes "evaluative information" under the C.O.R.I. statute. M.G.L. c. 6 § 167 exempts from disclosure, "evaluative information" defined as: "'Evaluative information', records, data, or reports concerning individuals charged with crime and compiled by criminal justice agencies which appraise mental condition, physical condition, extent of social adjustment, rehabilitative progress and the like, and which are primarily used in connection with bail, pre-trial or post-trial release proceedings, sentencing, correctional and rehabilitative planning,

4

probation or parole."

26.    Upon Inmate Marrero's return to C-2 this time in question did anyone learn of Mr.Marrero's alleged Commonwealth witness status? If so, who and what did they learn?

A.    Not to my knowledge.

27.    Did officer Kelly enter an enemey [sic] status between Omar Marrero and the plaintiff on october 28, 2003? If so why?; and If not this date, did he do so on any date? and why?

A.    See Officer Kelly's Answers to Interrogatories.

Signed under the penalties of perjury this *15th* day of May, 2006.

By:    *Edward Weldon*
                  Edward Weldon

**AS TO OBJECTIONS:**

Edward J. McDonough, Jr., Esquire

Certificate of Service

certifies that copies of the foregoing document was served on Anthony Garvin to S.B.C.C. P. O. Box 8000, Shirley, MA 01464 by first class mail on 5/19/06

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
No.05-30102-MAP

---

ANTHONY GARVIN
PLAINTIFF
V.

HAMPDEN COUNTY SHERIFF'S DEPARTMENT, SHERIFF MICHAEL J. ASHE, JR.,
HAMPDEN COUNTY COMMISSIONERS, COMMONWEALTH OF MASSACHUSETTS,
SUPT. BASIL TSGARIS, DEPUTY CHIEF OF SECURITY KENNEY,
MAJOR (FIRST NAME UNKNOWN) WELDON, LT. (FIRST NAME UNKNOWN)
KORMAN, LT. JUAN RAMOS, LT. (FIRST NAME UNKNOWN) CADIGAN,
OFFICER WILLIAM MULDROW, OFFICER VICTOR KELLY AND
THE UNKNOWN OFFICER IN THE TOWER
DEFENDANTS

---

DEFENDANTS' RESPONSE TO PLAINTIFF'S
REQUEST FOR PRODUCTION OF DOCUMENTS

1.    Any and all policies and procedures that establish the responsibilities of all
      the defendants, correctional officers, supervisory officers and medical staff.

Response:    Defendants object to producing this documentation because plaintiff
             has requested information that could threaten the safety, health and
             security of staff and other inmates.

2.    A copy of the log book containing the names and signatures of all employees
      who entered the C-2 segregation unit of the Hampden county house of
      correction (HCHC) between May 27th of 2003 to June 2nd of 2003 and
      between september 10 of 2003 to october 28th of 2003.

Response:    Defendants object to producing this documentation because plaintiff
             has requested information that could threaten the safety, health and
             security of staff and other inmates.

3.    Any and all written, investigative and special reports or enemey status
      notification filed by any of the defendants, or their agents or employees,
      regarding the attack the plaintiff suffered and the obtaining Omar Marrero as
      a coomonwealth [sic] witness and the actions leading up to the obtaining Mr.
      Marrero as a commonwealth witness against the plaintiff.

Response:    Copies of all Incident Reports, Grievances Forms and Inmate Request
             Forms relating to the allegations in plaintiff's Complaint have been

provided as Exhibit 1.

4.  Number three (3) above includes investigative reports, notes or documentation on file or in the possession of the Commonwealth of Massachusetts.

Response:    See response to Request 3.

5.  Copies of each defendants work related disciplinary records, including any and all hearings and suspensions or transfer of work assignment that occured [sic] in the aftermath of the assault on the plaintiff and the obtaining of Omar Marrero as a government witness against the plaintiff.

Response:    Objection.  This request calls for the production of items that are irrelevant and constitutes an unwarranted invasion of privacy under the Public Records Statute (G.l. C. 4, §7).  Without waiving the objection there are no such records.

6.  Copies of any written reports, notes and related documentaion [sic] forwarded to or from the Prosecutor's office regarding the assault on the plaintiff and the obtaining of Omar Marrero as a government witness.

Response:    Defendants are unaware of any such documents.

7.  The names of, numbers of and present location of all inmates who were housed in C-2 at the HCHC from May 27, 2003 to June 2, 2003 and September 10, 2003 to the 28th of October of 2003.

Response:    Objection.  Plaintiff has requested documents which constitute protected information under the C.O.R.I. statute. (M.G.L. c. 6 § 167)

8.  Copies of all administrative remedy forms, grievance forms, complaints, letters or memos submitted by the plaintiff, while he was housed at HCHC.

Response:    Copies of all Incident Reports, Grievances Forms and Inmate Request Forms relating to the allegations in plaintiff's Complaint have been provided as Exhibit 1.

9.  Copies of all administrative remedy forms, grievances, complaints, letters or memos pertaining to the releasing of information to inmates by officer (first name unknown) Mishu regarding other inmates personal information and charges. Said officer may be amended to said complaint under count two.

2

Response:    The defendants have produced copies of all Incident Reports, Grievances Forms and Inmate Request Forms relating to the allegations in plaintiff's Complaint have been provided as Exhibit 1. Defendants object to producing any grievances, complaints, or other documentation filed by others and received by the defendants because plaintiff has requested information that could threaten the safety, health and security of staff and other inmates.

10.    Any and all classification reports, incident reports and enemey [sic] status notices where the plaintiff, Omar Marrero, Michael White and Timothy Zanetti's names are mentioned from January 2, 2003 to April, 2004, including but not limited to computer printouts, daily log books and monthly and weekly classification reports and findings.

Response:    Copies of all Incident Reports, Grievances Forms and Inmate Request Forms relating to the allegations in plaintiff's Complaint have been provided as Exhibit 1.    Defendants object to producing any grievances, complaints, or other documentation filed by others and received by the defendants because    plaintiff has requested information that could threaten the safety, health and security of staff and other inmates.

11.    Any and all legal visiting records of Omar Marrero, Timothy Zanetti and Michael White from January, 2003 to April, 2004, including but not limited to where the visit was held and who if any HCHC employees were present at said visits. Dates and times visits were held included.

Response:    Objection.  Plaintiff has requested documents which constitute are protected information under the C.O.R.I. statute. (M.G.L. c. 6 § 167)

12.    Copies of any written or verbal statements made by Omar Marrero and Michael White to any of the defendants. Including any notes created by any of the defendants regarding the plaintiff.

Response:    Defendants are unaware of any such documents.

13.    Copies of any and all written or verbal statements given by Omar Marrero regarding any of the cases regarding Commonwealth v. Omar Marrero, including any and all inconsistant [sic] statements and wishes for lieniency in exchange for his cooperation.

Response:    Objection.   Plaintiff has requested documents which constitute protected information under the C.O.R.I. statute. (M.G.L. c. 6 § 167)

14.      Copies of any and all plea agreement, promises, rewards, favors and inducements that any of the defendants may have promised Mr. Marrero and or gave Mr. Marrero, pertaining to the plaintiff and pertaining to any of the cases under Commonwealth V. Omar Marrero.

Response:      Objection. Plaintiff has requested documents which constitute protected information under the C.O.R.I. statute. (M.G.L. c. 6 § 167)

The Defendants

By their attorney
Edward J. McDonough, Jr., Esq.
Egan, Flanagan and Cohen, P.C.
67 Market Street - Post Office Box 9035
Springfield, MA 01102
(413) 737-0260; Fax: (413) 737-0121
BBO# 331590

_____ certifies that copies of the foregoing document was served on Anthony Garvin to S.B.C.C. P. O. Box 8000, Shirley, MA 01464 by first class mail on 2/8/2006.

4

8-27-03

To Basil

Sorry to bother you, but I have a problem with the way C towel has handle an aligation which I've been acused of Asulting marty the Counselor with a "paper towel" which is a lie. My problem is the incodent that did occur took place on saturday 8-22-03 I was punished amidiately. I was never given a clasification hearing so I could tell my side, which was told to me by a Capt that the hearing is my right of due process and I should write to you so that I can have these diciplinary sanctions removed! I was supose to go to Population My daughters birth day is sept 11 and this day is also my aniversary all of which marty knows because I had just asked for a special visit, and me a him have had problems before! please look into my situation of the violation of dueprocess please this is the second time that they have done this to me the last time the incodent report stuck but I didn't know to notify you. Thank you for your time.

P.S. This is his (marty) attempt to keep me down heare in C-2

Anthony Garvin
133065

Hampden County House of Correction    ATTACHMENT "A"

~~DEPARTMENT OF CORRECTION~~
INMATE GRIEVANCE FORM
FORWARD TO THE INSTITUTIONAL GRIEVANCE COORDINATOR (IGC)

SECTION "A"

NAME: Anthony Garvin        Happened at
INSTITUTION: Hampden County H.C.

NUMBER: W83481    HOUSING UNIT: L-2/12    Currantly B C C
DATE OF INCIDENT: Oct, 2003

COMPLAINT: See Attached Page For Issue At hand.
On Failure to Protect And Neglegence

(ATTACH ADDITIONAL PAGE IF NECESSARY)

REMEDY
REQUESTED: Payment of One hundred million dollars $100,000,000.

INMATE SIGNATURE: Anthony Garvin        DATE: 6-29-4

STAFF RECIPIENT: _____    DATE: _____

DATE RECEIVED: _____

SECTION "B"

ASSIGNED GRIEVANCE NUMBER: _____

DECISION RENDERED:    _____ APPROVED
                      _____ DENIED

SUMMARY OF FINDINGS:

_____
_____
_____    See Response
_____

IGC SIGNATURE: _____    DATE: _____
(DENIED GRIEVANCES MAY BE APPEALED TO THE SUPERINTENDENT WITH 10 DAYS OF IGC'S DECISION.)
SECTION "C".
INMATE GRIEVANCE RECEIPT

INMATE NAME: _____    INSTITUTION: _____

NUMBER: _____    DATE RECEIVED: _____

SIGNATURE (IGC): _____    TITLE: _____

01/05/01

491 - 13

GRIEVANCE, on Failure to protect
6-28-4

while in Protective Custody, due to my Case and
gang activity threats, After An Attack Already. A Known
Gang member/Government Agent by the Facility was placed
In my Cell amongst my legal mail, documents and
CASE Reports. He inturn Read my Information a 2
times when I was out of the Cell And Fabricated
A Statement and Contacted the District attorneys
office through An Employee of the County House of
Correction of Hampden County.

it is testimony play a key roll in my Case the
Hampden County is not Protecting Protective Custody
Inmates Properly. I now have a natural life
sentence. And Im Requesting you Pay me

100 million dollars $100,000,000.00 From your
Facility

Your alleged grievance was not
filed in a timely manner as
per our policy as contained
in the Inmate Handbook.
Review of the record demon-
strates that there is
not on apparent violation
of our policy.
R.G.          2/19/04

Sincerely

Anthony Garvin
Anthony Garvin
W83481
County #133065

Hampden County House of Correction ATTACHMENT "C"

~~RECEIVING INSTITUTION~~

**INSTITUTION APPEAL FORM**
**FORWARD TO THE INSTITUTIONAL SUPERINTENDENT**

## SECTION A

NAME: Anthony Garvin                    INSTITUTION: Hampden County HC

Happened At
Currantly SBCC

NUMBER: W83481     HOUSING UNIT: L-2/12     DATE OF INCIDENT: Oct 2003

APPEAL: On Complaint of Failure to Protect and
Neglegence (See complaint attached on inmate in cell,
No Response to my Grievance

(ATTACH ADDITIONAL PAGE IF NECESSARY)

REMEDY
REQUESTED: Payment of one hundred million dollar $100,000,000.⁰⁰

INMATE SIGNATURE: Anthony Garvin          DATE: 7-18-17

STAFF RECIPIENT:_____          DATE:_____

DATE RECEIVED:_____

-------------------------------

## SECTION B

ASSIGNED GRIEVANCE NUMBER:_____

ASSIGNED INSTITUTION APPEAL NUMBER:_____

DECISION RENDERED:          ___ APPROVED
                            ___ DENIED

SUMMARY OF FINDINGS:

See FSJ16-R

SUPERINTENDENT'S
SIGNATURE:_____          DATE:_____

## SECTION C

### INMATE APPEAL RECEIPT

INMATE NAME:_____          INSTITUTION:_____

NUMBER:_____     DATE RECEIVED:_____

RECEIPTING STAFF:_____          TITLE:_____

01/05/01                                        491 - 14

Hampden County Jail and House of Correction

# INCIDENT REPORT FORM

(1) Information Only _____

Inmate's Name _Anthony Garvin_

(3) Person Number _133065_

(4) Inmate's Housing Assignment at Time of Occurrence _____ _____

(5) Date of Occurrence _____ Time _ccurrence_____

(6) Date Report is Completed _____ Time _eport is Completed_____

(7) Incident Description (include staff and inmates involved, what occurred, where it occurred, when it occurred, how it occurred, and if known, why it occurred).

IN REFERENCE TO A GRIEVANCE WRITTEN BY FORMER INMATE ANTHONY GARVIN, AT NO TIME DID THE HAMPDEN COUNTY SHERIFFS DEPARTMENT TAKE PART IN PLACING A GOVERNMENT AGENT IN THE SAME CELL WITH ANTHONY GARVIN.

Immediate Action Taken:

Sworn To Under The Pains and Penalties of Perjury.

(9) Reporting Employees Signature _____ Date _7/19/04_

Employees Identification Number _201_ Time _1100 AM_

The following section is to be completed by the Supervisor.

(10) Is disciplinary action requested?    Yes_____    No____

(11) Miranda Warning    Yes_____    No____

(12) Supervisor's Signature _____ Date _7/19/04_

Supervisor's Identification Number _222_ Time _11:01 A._

Central Records- White    Department Director- Green    Special Operations- Yellow
Reporting Employee- Pink    Copy to _____ -Goldenrod

OC-0037 (5Part)

Hampden County                Incident Report                3.1 23.6

Hampden County House of correction

~~DEPARTMENT OF CORRECTION~~

INMATE GRIEVANCE FORM

FORWARD TO THE INSTITUTIONAL GRIEVANCE COORDINATOR (IGC)

SECTION "A"

NAME: Anthony Garvin     INSTITUTION: Hampden County H.C.

Happened At Cvranthy At SBCC

NUMBER: W83481   HOUSING UNIT: L-2 12     DATE OF INCIDENT: 6-2-3

COMPLAINT: Please See Attached Complaint on
Back of Failure to Protect And Neglegence

(ATTACH ADDITIONAL PAGE IF NECESSARY)

REMEDY
REQUESTED: Five hundre thousand $500,000.00

INMATE SIGNATURE: Anthony Garvin     DATE: 7-4-4

STAFF RECIPIENT:     DATE:

DATE RECEIVED:

SECTION "B"

ASSIGNED GRIEVANCE NUMBER:

DECISION RENDERED: ____ APPROVED
                   ____ DENIED

SUMMARY OF FINDINGS:

See asp 13-1

IGC SIGNATURE:     DATE:
(DENIED GRIEVANCES MAY BE APPEALED TO THE SUPERINTENDENT WITH 10 DAYS OF IGC'S DECISION.)

SECTION "C"

INMATE GRIEVANCE RECEIPT

INMATE NAME:     INSTITUTION:

NUMBER:     DATE RECEIVED:

SIGNATURE (IGC):     TITLE:

01/05/01

491 - 13

Failure to protect

6-28-4

While at your Facility (Hampden County House of Correction) while in
-2 A Gang unit and on protective Custody, I was attacked
by Another Inmate a Gang member while I was on Recreation
In a subday room that should've been locked while I was
Handcuffed and shackled. After I Requested to be moved
From the Facility due to my Enemy Status. It was denied an
I was told I was in no danger and that where I was
I was safe by Major welding.

On 62-3 while doing showers officer william
muldrow #0764 Radioed to the pod tower to open Inmate
Timothy zanetti's cell A known Gang member of a Gang
said to have Connections in a attempted Retaliation
lot on my family. This was so he could put william
Torres back in the Cell From a shower He also Filed
A False Report (partially) He Release mr Torres to
Restrain Inmate zanetti. The Officers on duty that
day was officer muldrow, Victor kelly, And another who's
Identity I do not remember LT korman was the Supervisor
That day. The Facility trained these officers and
Should've Informed them of my status I Sustained
Two knots to the back of my head. And a Cut lip
which never healed Properly. I'm seeking damages
From your Facility in the amount of $500,000 ⁰⁰
make me an offer                    Five hundred thousand

Yi i alleged grievance was not filed in a timely manner, as per our policy a
cd ained in the Inmate Handbook. Review of the Anthony Garvin 63 Gr
Record shows that employees comported themselves
cording to over polir County # 133 plus                Anthony Garvin   7/19/04

Hampden County House of Correction ATTACHMENT "C"

~~DEPARTMENT OF CORRECTION~~

## INSTITUTION APPEAL FORM
### FORWARD TO THE INSTITUTIONAL SUPERINTENDENT

**SECTION A**

NAME: _Anthony Garvin_   INSTITUTION: _Happened at Hampden County H.C. Currantly at SBCC_

NUMBER: _W83481_   HOUSING UNIT: _L-2/12_   DATE OF INCIDENT: _6-2-3_

APPEAL: _On Complaint of Failure to protect and Neglegence (See Complant attached on inmate Attack. Ive Received no Response to my Grievance_

(ATTACH ADDITIONAL PAGE IF NECESSARY)

REMEDY
REQUESTED: _Five Hundred thousand dollars $500,000.00_

INMATE SIGNATURE: _Anthony Gar_   DATE: _7-10-4_

STAFF RECIPIENT: _____   DATE: _____

DATE RECEIVED: _____

----------

**SECTION B**

ASSIGNED GRIEVANCE NUMBER: _____

ASSIGNED INSTITUTION APPEAL NUMBER: _____

DECISION RENDERED:    ___ APPROVED
                      ___ DENIED

SUMMARY OF FINDINGS:

_See Resp "1_

SUPERINTENDENT'S
SIGNATURE: _____   DATE: _____

**SECTION C**

### INMATE APPEAL RECEIPT

INMATE NAME: _____   INSTITUTION: _____

NUMBER: _____   DATE RECEIVED: _____

RECEIPTING STAFF: _____   TITLE: _____

Hampden County Jail and House of Correction

# INCIDENT REPORT FORM

Cell #15

(2) Inmate's Name _Timothy Zanetti , Anthony Garvin_

cell # 4

(1) Information Only

(3) Person Number _130587_    _133065_

(4) Inmate's Housing Assignment at Time of Occurrence _C2_

(5) Date of Occurrence _6-2-03_    Time of Occurrence _9:30am_

(6) Date Report is Completed _6-2-03_    Time Report is Completed _10:38 pm_

(7) Incident Description (include staff and inmates involved, what occurred, where it occurred, when it occurred, how it occurred, and if known, why it occurred)

On 6-2-03 at about 9:30am inmate timothy Zanetti ran out of cell #15 behind his roommate inmate Robert Santiago while doing the showers. Then he attack inmate Anthony Garvin in the sunday room 1 while inmate Garvin was on rec time. Zanetti was throwing punches at Garvin, who Garvin was trying to move away from the punches. Myself and officer Victor Kelly restrained inmate Zanetti laide him on the ground and Cuffed and shackled him, we put him back in cell #15. Pod secure Supervisor arrive

(8) Immediate Action Taken:

Both Inmates were seen By medical

Inmate Zanetti moves To c-1 #9 By spec ops Remaining no priis

Sworn To Under The Pains and Penalties of Perjury.

(9) Reporting Employees Signature _William Muldur_    Date _6-2-03_

Employees Identification Number _0764_    Time _10:38 am_

The following section is to be completed by the Supervisor.

(10) Is disciplinary action requested?    Yes _✓_    No _____

(11) Miranda Warning    Yes _____    No _____

(12) Supervisor's Signature _____    Date _6-2-03_

Supervisor's Identification Number _115_    Time _10:41 A_

Central Records- White    Department Director- Green    Special Operations- Yellow
Reporting Employee- Pink    Copy to _____    -Goldenrod

CHOC-0037 (5Part)

Hampden County

Hampden County Jail and House of Correction

# INCIDENT REPORT FORM

(1) Information Only

(2) Inmate's Name Cell #15 Timothy Zanetti , Anthony Garvin Cell #4

(3) Person Number 130587 133065

(4) Inmate's Housing Assignment at Time of Occurrence C2

(5) Date of Occurrence 6-2-03 Time of Occurrence 9:30 Am

(6) Date Report is Completed 6-2-03 Time Report is Completed 10:3 Pm

(7) Incident Description (include staff and inmates involved, what occurred, where it occurred, when it occurred, how it occurred, and if known, why it occurred).

On 6-2-03 at about 9:30 Am inmate timothy Zanetti ran out of cell #15 behind his roommate inmate Robert Santiago while doing the showers. then he attack inmate Anthony Garvin in the subday room 1 while inmate Garvin was on Rec time. Zanetti was throwing punches at Garvin, who Garvin was trine to move away from the punches. Myself and officer Victor Kelly restrained inmate Zanetti laide him on the ground and Cuffed and shackled him an put him back in cell #15. Pod secure Supervisor arrived

(8) Immediate Action Taken:

Both Inmates were soen By medical

Inmate Zanetti moves TU C-1 #9 By Spec Ops. Remaining no privs

Sworn To Under The Pains and Penalties of Perjury.

(9) Reporting Employees Signature William Meldin Date 6-2-03

Employees Identification Number 0764 Time 10:38 m

The following section is to be completed by the Supervisor.

(10) Is disciplinary action requested? Yes ✓ No

(11) Miranda Warning Yes No

(12) Supervisor's Signature Date 6-2-03

Supervisor's Identification Number 115 Time 10:41 A

Central Records- White      Department Director- Green      Special Operations- Yellow
Reporting Employee- Pink      Copy to_____-Goldenrod

HCHOC-0037 (5Part)

Hampden County                    Incident Report                    3

3.1.23.6

HAMPDEN COUNTY SHERIFF'S DEPARTMENT
AND CORRECTIONAL CENTER

2A

INMATE REQUEST

JUN - 5 2003

To: _Medical_

From: ANTHONY GARVIN     Person # 133065
Inmate Name

Date 6-3-03     POD C-2     Cell 4

Request I WAS hit iN the eye My
eye has Not stoped throbing iN My
head SiNce I want to see aN
eye doctor ThaNk you

Inmates Signature: Anthony Garvin

Received by: _____

STAFF RESPONSE:

Approved ☐   Denied ☐   (state reason)

Recieved your note of 6/3/03
today! Reviewing chart
shows you were seen by
eye doctor 6/10/03

Employee Name/Title _P. Pinnacke RN_     Date 6/12/03

WHITE - Unit File        YELLOW - Inmate        PINK - Kept by Inmate

HCHOC-0021 (3-Part) (9-4-92) (7-96) (167)

4

Hampden County Jail and House of Correction

## INCIDENT REPORT FORM

(1) Information Only _____

(2) Inmate's Name   ANTHONY GARVIN

(3) Inmate's Person Number   133065

(4) Inmate's Housing Assignment at Time of Occurrence   C2-004

(5) Date of Occurrence   06/03-06/15 2003      Time of Occurrence _____

(6) Date Report is Completed   06/27/2003      Time Report is Completed _____

(7) Incident Description (include staff and inmates involved, what occurred, where it occurred, when it occurred, how it occurred, and if known, why it occurred).

THIS INCIDENT REPORT IS WRITTEN IN RESPONSE TO AN INMATE GRIEVANVE WRITTEN BY ANTHONY GARVIN # 133065.ON SUNDAY 06/15/2003 I MET WITH P.CAPT FERIOLI TO DISCUSS INMATE GARVIN'S STATUS.

ISSUES 1 : INMATE GARVIN'S CLAIM TO INFORM ME THAT HE WANTED TO PRESS CHARGES AGAINST INMATE ZANETTI.AT NO TIME DURING THE ABOVE STATED PERIOD DID INMATE GARVIN INFORM ME THAT HE WANTED TO PRESS CHARGES AGAINST INMATE ZANETTI.AFTER MY CONVERSATION WITH P.CAPT FERIOLI ON SUNDAY 06/15/2003 I MET WITH SGT D.WOODS AND INFORMED HIM OF INMATE GARVIN'S REQUEST.

ISSUES 2. AT NO TIME DID INMATE GARVIN INFORM ME OF SPECIFIC THREATS AGAINST HIM,INMATE GARVIN IS CURRENTLY PROTECTIVE CUSTODY ADMINISTRATIVE AND REVIEWED WEEKLY BY CENTRAL CLASSIFICATION BOARD.

ISSUES 3 INMATE GARVIN'S PARTICIPATION IN INCIDENT WITH INMATE ZANNETTI,DURING A CONVERSATION WITH INMATE GARVIN HE STATED TO ME THAT HE WAS ON HIS RECREATION PERIOD IN C2 SUBDAYROOM 1,INMATE ZANETTI RAN OUT OF HIS CELL WHILE HIS ROOMMATE WAS BEING ESCORTED TO AN APPOINTMENT.INMATE GARVIN OBSERVED ZANETTI LEAVE HIS CELL AND (GARVIN)EXITED THE SUBDAY ROOM AND CONFRONTED ZANETTI IN THE CENTER OF THE DAYROOM FLOOR.

(8) Immediate Action Taken:

Sworn To Under The Pains and Penalties of Perjury.

**(9) Reporting Employees Signature** _[signature]_    **Date** 06/27/2003

**Employees Identification Number** 0179    **Time** _[handwritten]_

**The following section (10,11,12) is to be completed by a supervisor.**

**(10) Is disciplinary action requested?    Yes ☐ No ☐    (11) Miranda Warning    Yes ☐ No ☐**

**(12) Supervisor's Signature** _[signature]_    **Date** 6/30/03

**Supervisor's Identification Number** _[handwritten]_ 272    **Time** 12:35pm

**HAMPDEN COUNTY SHERIFF'S DEPARTMENT
AND CORRECTIONAL CENTER**

<u>INMATE REQUEST</u>

To: CLASSIFICATION Review Board
whom ever it should CONCERN

From: Anthony Garvin          Person # 133065
          Inmate Name

Date 6-9-03      POD C-2      Cell 4

Request I UNDERSTAND That D Pod
IS FOR PROTECTIVE Custody
I would Really LIKE to be their!
Not!, iN seg that WASN'T What I Wanted
I did Nothing to Violate, so why the
PuNishMENT

Inmates Signature: Anthony Garvin

Received by: Vil

STAFF RESPONSE:      Review Central Class

Approved ☐  Denied ☐
                    (state reason)
Mr Garvin,
        You are pre-trial. We are not
punish you, we are protecting you
on safety issues. Your charges do
not lend themselves to D4, D2.
                    ADS Weldon

Employee Name/Title ADS Weldon    Date 6/12/03

WHITE - Unit File      YELLOW - Inmate      PINK - Kept by Inmate

HCHOC-0021 (3-Part) (9-4-92) (7-96) (167)

8

# HAMPDEN COUNTY SHERIFF'S DEPARTMENT
## AND CORRECTIONAL CENTER

### INMATE REQUEST

To: _LT GALLAGHER_

From: _Anthony Garvin_          Person # _133065_
          Inmate Name

Date _6-9-03_    POD _C2_          Cell _4_

Request _I want to Be MOVED to_
_where I Requested to be placed_
_IN the First Place protective_
_custody Not Seg I Believe p/c_
_is in D tower Not C_

Inmates Signature: _Anthony Garvin_

Received by: _CMNulde_

---

STAFF RESPONSE:

Approved ☐    Denied ☐    (state reason)

_Per other slip_
_Same date_

Employee Name/Title _____          Date _____

WHITE · Unit File          YELLOW · Inmate          PINK · Kept by Inmate

HCHOC-0021 (3-Part) (9-4-92) (7-96) (167)

9

HAMPDEN COUNTY SHERIFF'S DEPARTMENT AND CORRECTIONAL CENTER
GRIEVANCE FORM

NAME: Anthony Garvin    POD & CELL C-2 cell 4 PERSON # 133065

****Did you try to informally resolve your problem with a staff person?    Circle: (YES)

If yes is your answer, list the name of the staff person you talked to LT CADIGAN

NATURE OF COMPLAINT (be brief and specific): I WAS Attack By AN SRG
INMATE ON 6-2-03 When I spoke to LT Cadigan
And Ask what was Being Done & That I wanted to press
Charges due to the Fact I was hand cuffed & shackled
He told Me "AS FAR AS he were concerned I ingaged
that inmate" which were not true I was on Rec
The inmate Got out of his cell some how this is
ONE of the inmates that I had tried to inform LT Cadigan
had Threatened to kill me previously to the incodent
& he said "I would get A lot of that

Signature Anthony Garvin    Date 6-9-03

INMATES DO NOT WRITE BELOW THIS LINE

Date Grievance Received_____

STAFF RESPONSE

Please respond in writing, sending the original copy to the Unit Grievance Coordinator:_____

Reviewt

Appvc priots Actro

taken by staff - thre
see a grievson fun
requesifon

STAFF SIGNATURE/I.D. #    DATE 6/30/03

ORIGINAL: CENTRAL RECORDS    -    PHOTOCOPY: TO CASE FILE    30

HCHOC-0085 (#20 Wht) 5-20-97

# HAMPDEN COUNTY SHERIFF'S DEPARTMENT AND CORRECTIONAL CENTER
## GRIEVANCE FORM

NAME: Anthony Garvin                    POD & CELL C-2 Cell 4 PERSON # 133065

* Did you try to informally resolve your problem with a staff person?    Circle: (YES) NO

If yes is your answer, list the name of the staff person you talked to Sgt Sherod .

NATURE OF COMPLAINT (be brief and specific): ON 6-12-03 I Asked the C/o's on duty to call a white Shirt because I had some issues to Address. They told Me NO, ONE of them C/o BARthellete Came to my Cell After Sgt Sherod talk to Me And Continued to Antagonize Me Reading my Rap sheet saying "I was a punk Nigger & I'm Not so tuff without a gun." My wife was Came to see Me And when they Came to get Me C/o Rhodes denyed Me my Visit Because I held my tray until they got the Sgt to see Me & also because I told the Sgt they were Constantly eating inmate trays when ever they were on duty.

Signature Anthony Garvin                    Date 6-13-03

---

### INMATES DO NOT WRITE BELOW THIS LINE

Date Grievance Received 6-13-03

#### STAFF RESPONSE

Please respond in writing, sending the original copy to the Unit Grievance Coordinator:

REVIEWED - NO FURTHER ACTION

STAFF SIGNATURE/I.D. # P. Capt Ferriol                    DATE 6/16/03

ORIGINAL:  CENTRAL RECORDS                    PHOTOCOPY:  TO CASE FILE

31

HCHOC-0085 (#20 Wht) 5-20-97

**HAMPDEN COUNTY SHERIFF'S DEPARTMENT
AND CORRECTIONAL CENTER**

<u>INMATE REQUEST</u>

To: Unit Classification/Whom ever it concern

From: Anthony Garvin          Person # 133065
         Inmate Name

Date 6-24-03    POD C-2         Cell 4

Request LT Green said when I was Ready
I could Leave. I do not Feel that
I will have problems in population any
More I want to go to population
          Please   I placed My self Here

Inmate's Signature: Anthony Garvin

Received by: _____

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

STAFF RESPONSE:

Approved ☐   Denied ☐   (state reason)

Reviewed at Central Class

Incident 18th

STAY No priv's

Employee Name/Title ADS Welton    Date 6/26/03

WHITE · Unit File          YELLOW · Inmate          PINK · Kept by Inmate

HCHOC-0021 (3-Part) (9-4-92) (7-96) (167)

# HAMPDEN COUNTY SHERIFF'S DEPARTMENT
## AND CORRECTIONAL CENTER

### INMATE REQUEST

To: Classification / Lt. Cadigan

From: Anthony Garvin / Person # 133065
Inmate Name

Date 9-28-03 POD C-2 Cell 13

Request The 3rd I recieved my last ticket it clears on Friday The 3rd I want to be removed from C-2 And Released to Population Anywhere.

Inmates Signature: Anthony Garvin

Received by: C/O Mulder

........................................................

STAFF RESPONSE:

Approved ☐   Denied ☑   (state reason)

Mr Garvin you were envolved in an incident in Medical on 9/29/03 You classifect is reviewed weekly by Central Classifect Board

Employee Name/Title _____ Date _____

WHITE - Unit File        YELLOW - Inmate        PINK - Kept by Inmate

HCHOC-0021 (3-Part) (9-4-92) (7-96) (167)

## HAMPDEN COUNTY SHERIFF'S DEPARTMENT
## AND CORRECTIONAL CENTER

### INMATE REQUEST

(5)

To: _Head OF Security keNNy_

From: _AnthoNY GARVIN_  Person # _133065_
Inmate Name

Date _11-9-03_ POD _C-2_ Cell _14_

Request _CAN you tell Me where do I stand with you CONCERNING me leaving C-2 I'm Ready to go I've been here Going on 6 Months_

Inmates Signature: _Anthony Garvin_

Received by: _Caum_

_Sent To CLASS/_

STAFF RESPONSE: _LT. Cadigan 11/14/03_

Approved ☐   Denied ☐   (state reason) _mark_

_Your classical stat is review weekly by central Classify_

Employee Name/Title _LT McCady_   Date _11/14/03_

WHITE - Unit File        YELLOW - Inmate        PINK - Kept by Inmate

HCHOC-0021 (3-Part) (9-4-92) (7-96) (167)

# HAMPDEN COUNTY SHERIFF'S DEPARTMENT
## AND CORRECTIONAL CENTER

NoT                    LT CAdigan

INMATE REQUEST

To: HEAD OF SECURITY KENNY

From: ANThoNY GARViN          Person # 133065
_____ Inmate Name

Date 11-15-03      POD C-2      Cell 14

Request This is the second Request Asking
the SAME Question! The First LT CAdigan
took. Where do I stand with you
As FAR As going to population is
Concerned I've been in C-2 For 6 Months Almost

Inmates Signature: Anthony Garvin

Received by: _____

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

STAFF RESPONSE:

Approved ☐     Denied ☐     (state reason)

Your STATUS As A SPECiAL
MANAGEMENT INMATE IS CONTROLLED
By The CENTRAL CLASSificATiON
BoARd of which I am A MEMBER

Employee Name/Title John Kg A.S.     Date 11-17-03

WHITE - Unit File          YELLOW - Inmate          PINK - Kept by Inmate

HCHOC-0021 (3-Part) (9-4-92) (7-96) (167)