UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

No. 05-30102-MAP

---

ANTHONY GARVIN
PLAINTIFF
V.
HAMPDEN COUNTY SHERIFF'S DEPARTMENT,
SHERIFF MICHAEL J. ASHE, JR.,
HAMPDEN COUNTY COMMISSIONERS,
COMMONWEALTH OF MASSACHUSETTS,
SUPT. BASIL TSGARIS,
DEPUTY CHIEF OF SECURITY KENNEY,
MAJOR (FIRST NAME UNKNOWN) WELDON,
LT. (FIRST NAME UNKNOWN) KORMAN,
LT. JUAN RAMOS,
LT. (FIRST NAME UNKNOWN) CADIGAN,
OFFICER WILLIAM MULDROW,
OFFICER VICTOR KELLY AND
THE UNKNOWN OFFICER IN THE TOWER
DEFENDANTS

---

### DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ORDER OF CONTEMPT.

Now come the defendants in the above-entitled action and oppose Plaintiff's Motion for Order of Contempt. As reasons therefore, defendants state as follows:

This is a case in which plaintiff makes numerous claims arising out of two incidents that occurred while plaintiff was incarcerated at the Hampden County Correctional Center in 2003. The first incident involves an assault on plaintiff by an inmate named Timothy Zanetti on or about June 2, 2003. Plaintiff claims defendants' negligence caused his injuries relating to this altercation. The second incident involves the assignment of another inmate, Omar Marrero, as plaintiff's cell mate during the period from about September 17, 2003 to about September 30, 2003.

Plaintiff claims that Mr. Marrero obtained information about plaintiff during this time and later testified untruthfully against the plaintiff during the plaintiff's trial which resulted in plaintiff's conviction on a first degree murder charge. Plaintiff claims defendants intentionally placed Mr. Marrero as his cell mate to spy on him.

Defendants have each answered numerous interrogatories and they have responded to Plaintiff's many requests for production of documents. All documents available to the defendants or in their control have be produced to the plaintiff.

1. Document Request Number 1:

   Plaintiff had requested:

   Any and all policies and procedures that establish the responsibilities of all the defendants, correctional officers, supervisory officers and medical staff.

   Defendant objected:

   Defendants object to producing this documentation because plaintiff has requested information that could threaten the safety, health and security of staff and other inmates.

   Plaintiff sought to compel a response and the court denied his request for such an order. It did give plaintiff the opportunity to submit a more narrow request. Plaintiff has taken his broad request and broken it down into five separate requests. Defendant has responded with documents in its possession that are responsive to the revised requests insofar as they may be relevant to the issues raised in this case. See Exhibit A attached hereto. There is no existing order to defendant to respond further to the revised requests. Accordingly, no sanctions and no order of contempt should issue here.

2.      Document Request numbers 4, 6, and 12:

Request No. 4:
Number three (3) above [any and all written, investigative and special reports or enemy status notification filed by any of the defendants, or their agents or employees, regarding the attack the plaintiff suffered and the obtaining Omar Marrero as a coomonwealth (sic) witness and the actions leading up to the obtaining Mr. Marrero as a commonwealth witness against the plaintiff] includes investigative reports, notes or documentation on file or in the possession of the Commonwealth of Massachusetts.

Request No. 6
Copies of any written reports, notes and related documentaion (sic) forwarded to or from the Prosecutor's office regarding the assault on the Plaintiff and the obtaining of Omar Marrero as a government witness.

Request No. 12
Copies of any written or verbal statements made by Omar Marrero or Michael White to any of the defendants, including any notes created by the defendants regarding the plaintiff.

Request No. 14
Copies of any and all plea agreements, promises, rewards, favors and inducements that any of the defendants may have promised Mr. Marrero and or gave Mr. Marrero, pertaining to the plaintiff and pertaining to any of the cases under Commonwealth v. Omar Marrero.

In response to plaintiff's requests 3, 4, 6, and 12, Defendants produced the relevant and responsive documents available to them. The Court's order of October 19, 2006 states "Request Nos. 3, 4, 6 and 12 are ALLOWED as follows: Defendants, in response to plaintiff's arguments, shall review their files to determine if there are any other documents which need to be produced which are in their possession or control." and "Request No. 14 is ALLOWED as to these Defendants only."

Defendants have made diligent searches of their records and all documents in their possession or control have been previously produced to the plaintiff. With

respect to any inducements given to Mr. Marraero to testify against the plaintiff, Defendants have no responsive material in their own possession or control. Defendants have consistently denied plaintiff's unsupported allegation that they did anything with respect to Mr. Marrero testifying against the plaintiff. Moreover, requests have been made of behalf of the defendants in this case to Elizabeth D. Scheibel, Esq., District Attorney of Franklin and Hampshire Counties and William M. Bennett, Esq., District Attorney of Hampden County for any material that they may have that is responsive to these requests. As previously reported to the plaintiff and the court, the District Attorney's Office of Franklin and Hampshire Counties has no responsive documents. Upon further inquiry, defendants have learned that the Hampden District Attorney's office did not understand their original request, but, that they are now reviewing their files for the correct responsive information, if any exists. Defendants expect to be able to respond further with respect to that inquiry soon. In fact, however, to the extent any such material exists, Defendants believe that the plaintiff already has it.

During the course of multiple pleadings as well as the status conferences in the present case, plaintiff has admitted that the same arguments made in this case concerning Mr. Marrero were made unsuccessfully at plaintiff's criminal trial seeking to preclude Mr. Marrero's testimony. That case is reportedly on appeal. Insofar as the District Attorneys' Office has material concerning agreements or inducements offered to Mr. Marrero in connection with his testimony against plaintiff, that material would have already been produced to plaintiff as mandatory discovery in the

criminal case. None of that materials is in the control of the Sheriff or the other individual defendants in this case. Again, the individual defendants in this case have consistently denied that they placed Mr. Marrero into plaintiffs cell to gather evidence against plaintiff or that they "obtained" Mr. Marrero as a witness against plaintiff.

In these circumstances, defendants contend that they have substantially complied with the court's orders concerning discovery and no sanctions or order of contempt should issue with regard to these matters.

3. Request Number 8:
Copies of all administrative remedy forms, grievance forms, complaints, letters or memos submitted by the plaintiff while he was housed at HCHC.

As with the original Request No. 1, Defendants have previously produced the material they were able to locate in their possession or control that is responsive to this request. Plaintiff is dissatisfied with defendants' response and apparently believes there are or should be additional material in the possession of the defendants regarding complaints by plaintiff and/or others alleging that defendant Korman assaulted an inmate. Numerous searches have been made at the Hampden County Correctional Center regarding any and all documents regarding Mr. Garvin and all responsive documents that have been located in the defendants' possession have been produced to Mr. Garvin.

In so far as the plaintiff is claiming that other detainees at the facility may have submitted complaints or grievances against defendant Korman, that material would not be responsive to plaintiff's original request and none of the material

regarding such complaints has any relevance to the issues raised in this case.

4.      Interrogatory Number 5
When Omar Marrero returned to the C-2 unit on or about August of 2003 after being jumped by his own LaFamilia gang brothers, who did the investigation and what did they find out, was there a report written and who was notified of the findings?

The court's order of October 19, 2006 states "ALLOWED as to Defendant Ashe only." Sheriff Ashe has answered the interrogatory by stating that Barbara Vanvalkenburg found Mr. Marrero in his cell after apparently being involved in an altercation. Ms. Vanvalkenburg questioned Mr. Marrero and Mr. Marrero told her that his people think he is snitching on his codefendant. Ms. Vanvalkenburg prepared an incident report which has been provided to the plaintiff in two responses to requests for documents. Plaintiff is now apparently seeking material relating to subsequent disciplinary or other action that was taken with respect to those who assaulted Mr. Marrero. Again, this goes beyond the scope of his original request and seeks information that is not relevant to the issues raised in this case. Defendant Ashe has responded to the original request. Accordingly, no sanctions or order of contempt should issue with regard to this matter.

APPLICABLE STANDARDS FOR SANCTIONS AND ORDERS OF CONTEMPT

Federal Rule of Civil Procedure 37 (b)(2) provides that "if a party ... fails to obey an order to provide or permit discovery ... the court in which the action is pending may make such orders in regard to failure as are just, ...." The Rule provides for sanctions against a parties that are "unjustifiably resisting discovery." Advisory

6

Committee Note to 1970 Amendments to Rule 37, 48 F.R.D. 538. In exercising its discretion in the imposition of sanctions, a trial court must consider the particular facts of the case before it. The criteria for a district court to consider include

(1) the willfulness or bad faith of the non-complying party;

(2) the prejudice to the opposing party resulting from the violation;

(3) whether the procedural history indicates protracted inaction or deliberate delay; and

(4) the disregard of earlier warnings of the consequences of misconduct."

Velazquez-Rivera v. Sea-Land Service, Inc., 920 F.2d 1072, 1076 (1st Cir. 1990).

CONCLUSION

There is no order to form the basis for the imposition of any sanctions or order of contempt with respect to plaintiff's revised requests number 1. With respect to the other requests at issue, Defendant's contend they have responded to the specific requests with the material and information in their control. To the extent plaintiff is dissatisfied with those responses or now wants additional information or material that goes beyond the requests, that dissatisfaction or desire is not a basis for the imposition of sanctions. In terms of the criteria for imposition of sanctions there is no sufficient basis shown by plaintiff to justify sanctions. There is no showing of bad faith or willfulness on the part of defendants. Most of the material sought has little if any relevance to the issues in this case and accordingly any failure to produce required materials by defendants, which defendant denies doing, has not lead to

prejudice of plaintiff's position. There is no procedural history of protracted inaction or deliberate delay and there has been no disregard of earlier warnings in this case.

WHEREFORE, the defendants request that the Plaintiff's Motion for Order of Contempt of Court and the Imposition of Sanctions be denied.

>The Defendants,
>By their Attorney:
>
>/s/ Kevin D. Withers
>Edward J. McDonough, Jr.
>Kevin D. Withers, Esq., BBO# 531660
>Egan, Flanagan and Cohen, P.C.
>67 Market Street - Post Office Box 9035
>Springfield, MA 01102
>(413) 737-0260; Fax: (413) 737-0121

Certificate of Service

/s/ Kevin D. Withers certifies that copies of the foregoing document was served on Anthony Garvin to S.B.C.C. P. O. Box 8000, Shirley, MA 01464 by first class mail on 2/01/2007.

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

NO. 05-30102-MAP

---

ANTHONY GARVIN
PLAINTIFF
V.
HAMPDEN COUNTY SHERIFF'S DEPARTMENT,
SHERIFF MICHAEL J. ASHE, JR.,
HAMPDEN COUNTY COMMISSIONERS,
COMMONWEALTH OF MASSACHUSETTS,
SUPT. BASIL TSGARIS, DEPUTY CHIEF OF SECURITY KENNEY,
MAJOR (FIRST NAME UNKNOWN) WELDON, LT. (FIRST NAME UNKNOWN)
KORMAN, LT. JUAN RAMOS, LT. (FIRST NAME UNKNOWN) CADIGAN,
OFFICER WILLIAM MULDROW, OFFICER VICTOR KELLY AND
THE UNKNOWN OFFICER IN THE TOWER
DEFENDANTS

---

DEFENDANTS' SUPPLEMENTAL RESPONSE TO PLAINTIFF'S
REQUEST FOR PRODUCTION OF DOCUMENTS

In response to Plaintiff's Narrowed Document Requests, the Defendants respond as follows:

1.  (a)  Copies of Policy and Procedure that defines the duty of anyone who is removing an inmate, or placing an inmate in and out of a cell holding two inmates in a Special Management Unit.

Response:  There is no specific written policy or procedure that defines the duty of anyone who is removing an inmate, or placing an inmate in and out of a cell holding two inmates in a Special Management Unit. However the following general Policies and Procedures are attached:

Special Management Orientation Units 3.4.1:
Procedure A (Special Management) Section 12 subsections B and D,
Procedure H (Showers/Shave-Special Management Units) section 2
Procedure P (Exercise Outside of Cell) section 1
Procedure U (Inmate Movement Out of POD) sections 1, 2 and 3

Inmate Personal Hygiene 4.4.6



                    Procedure J (Showers/Special Management Security Risk Inmates) Section 2.

(b)     Copies of Policy and Procedure that defines and outlines any precausionary [sic] measures to be taken when housing two inmates into one cell in a Special Management Unit.

Response:     There is no specific written policy or procedure that defines and outlines any precautionary measures to be taken when housing two inmates in one cell in a Special Management Unit. However, the following general Policies and Procedures Special Management Orientation Units are attached:
Procedure B (POD Observation and Supervision) sections 2 and 3.

(c)     Copies of policy and procedure concerning the amount of inmates to be placed/housed in each cell in the Special Management Unit and any applications for waiver of said policies and, or procedures, if one was filed.

Response:     There is no specific written policy or procedure concerning the amount of inmates to be placed/housed in each cell in Special Management Unit.

(d)     Copies of Policies and Procedures that defines the Unit Supervisor's daily duties when he enters the Special Management Unit.

Response:     OBJECTION. This request is overly broad and it is not material or relevant to the issues raised in this case which arise out of an altercation between plaintiff and another inmate and an allegation that plaintiff's cell mate accessing plaintiff's personal correspondence and notes. To the extent that any such policy or procedure has any minimal relevance, production of the responsive material would be unduly burdensome in light of the need to maintain security of operations at the facility.

(e)     Copies of Policy and Procedure which defines any obligatory observations to be made by the unit shift Commanders, Chief of Security, Supervisor and Unit Officers, when entering the Special Management Unit.

Response:     OBJECTION. This request is overly broad and it is not material or relevant to the issues raised in this case which arise out of an altercation between plaintiff and another inmate and an allegation that

plaintiff's cell mate accessing plaintiff's personal correspondence and notes. To the extent that any such policy or procedure has any minimal relevance, production of the responsive material would be unduly burdensome in light of the need to maintain security of operations at the facility.

(f) Copies of Policies and Procedures which defines any Mandatory actions to be taken upon certain observations regarding the safety of inmates in the Special Management Unit.

Response: OBJECTION. This request is overly broad and it is not material or relevant to the issues raised in this case which arise out of an altercation between plaintiff and another inmate and an allegation that plaintiff's cell mate accessing plaintiff's personal correspondence and notes. To the extent that any such policy or procedure has any minimal relevance, production of the responsive material would be unduly burdensome in light of the need to maintain security of operations at the facility. Without waiving this objection as it may apply to other material, defendants respond further as follows: the following general Policies and Procedures Special Management Orientation Units are attached:
Procedure A (Special Management) Section 12 subsection A
Procedure B (POD Observation and Supervision) Sections 3 and 6

The Defendants

*/s/ Kevin D. Withers*

By their attorney
Kevin D. Withers, Esq.
Egan, Flanagan and Cohen, P.C.
67 Market Street - Post Office Box 9035
Springfield, MA 01102
(413) 737-0260; Fax: (413) 737-0121
BBO# 531660

*/s/ Kevin D. Withers* certifies that copies of the foregoing document was served on Anthony Garvin to S.B.C.C. P. O. Box 8000, Shirley, MA 01464 by first class mail on 1/29/2007.

3

REDACTED

12. The Pod Floor Officer, in conjunction with the Special Operations Unit, applies restraints to inmates only when necessary for the following reasons: (See Use of Restraints 3.1.8).

   A. To prevent self-injury, injury to others, or property damage

   B. As a normal or extraordinary precaution during inmate normal movement within the facility or during transportation.

   D. For staff and inmate safety and security in pods C-1, C-2 and C-9, or as determined by Classification.

REDACTED

REDACTED

REDACTED

PROCEDURE H:    Showers/Shave (Special Management Units)

2.  The Pod Floor Officer handcuffs inmates, in C-1, C-2, and C-9 or as dictated by the Classification Board prior to showering, to prevent self-injury, injury to others, or property damage. Inmates are handcuffed utilizing the pass-through in the cell door, and in the lockable shower door.

Hampden County Sheriff's Department

REDACTED

REDACTED

REDACTED

PROCEDURE P:    Exercise Outside Of Cell

Revised by A.S. Tsagaris          3.4.1 Special Management Orientation Units          Page 17 of 29

**Hampden County Sheriff's Department**

1.  The Pod Floor Officer regulates and/or limits the number of inmates allowed out of their cells to exercise depending upon classification, safety and security factors. Inmates in C-1, C-2 and C-9 are placed in restraints for staff and inmate safety and security considerations, or as dictated by classification.

REDACTED

REDACTED

REDACTED

PROCEDURE R:    Visits

# Hampden County Sheriff's Department

REDACTED

REDACTED

REDACTED

PROCEDURE U:   Inmate Movement Out Of Pod

1.  The Pod Floor Officer determines when an inmate needs an escorted move out of the Pod.

## Hampden County Sheriff's Department

2.  The Pod Floor Officer contacts an Inner Perimeter Security, (I.P.S.) Officer via telephone or radio, and specifies the time, reason if necessary, and place for the escorted inmate move and the destination.  (See <u>Inmate Movement 3.1.6</u>)

3.  The I.P.S. Officer reports to the specified area and takes charge of the inmate, utilizing restraints in C-1, C-2 and C-9 or as determined by classification.

REDACTED

REDACTED

REDACTED

---

REDACTED

PROCEDURE J:   Showers/Special Management Security Risk Inmates

REDACTED

2. Based upon Schedule, (in C1, C2 & C9) when a special management/disciplinary status inmate wants to shower, the inmate extends both hands through the cell door pass through, and the Pod Floor Officer applies handcuffs. (See 3.1.8 Use of Restraints)

REDACTED

REDACTED

REDACTED

PROCEDURE B:    Pod Observation And Supervision

REDACTED

2.  The Pod Floor Officer has primary responsibility for directing the inmate's activities during the shift. The Pod Floor Officer utilizes direct supervision within the Pod.

3.  The Pod Floor Officer and/or Control Officer maintains an enhanced security-conscious attitude, taking all necessary security and safety measures when supervising the Special Management inmate.

REDACTED

6.   The Pod Floor Officer ensures that all inmates in the Pod immediately return to their cells during any disturbances, or any other times the Pod Floor Officer, or the Pod Control Officer, via the Public Address system, announces a "lock down".