UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CIVIL ACTION NO. 05-30102-MAP

ANTHONY GARVIN
PLAINTIFF
V.
HAMPDEN COUNTY SHERIFF'S DEPARTMENT,
SHERIFF MICHAEL J. ASHE, JR.,
HAMPDEN COUNTY COMMISSIONERS,
COMMONWEALTH OF MASSACHUSETTS,
SUPT. BASIL TSGARIS,
DEPUTY CHIEF OF SECURITY KENNEY,
MAJOR (FIRST NAME UNKNOWN) WELDON,
LT. (FIRST NAME UNKNOWN) KORMAN,
LT. JUAN RAMOS,
LT. (FIRST NAME UNKNOWN) CADIGAN,
OFFICER WILLIAM MULDROW,
OFFICER VICTOR KELLY AND
THE UNKNOWN OFFICER IN THE TOWER
DEFENDANTS

---

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
[DOCUMENT 75, PLAINTIFF'S "2D NOTICE TO COURT IN CONJUNCTION WITH PLAINTIFF'S
MOTION FOR ORDER OF CONTEMPT AND IMPOSITION OF SANCTION"]

---

Now come the Defendants in this case, by their attorney, and they submit this Opposition

to Plaintiff's Document 75, treated per Order of the Court on April 13, 2007 as a Motion to

Compel. As Defendants understand Plaintiff's "Motion," Plaintiff is seeking to compel further

response to his Requests for Production Number 13 and 14, as supplemented (i.e. amended) by

the Plaintiff. These requests seek documents concerning statements made to one Omar Marrero

promising rewards or inducements for him to provide information in connection with criminal

cases in which he had been charged (No.13) and copies of plea agreements or other rewards that

had been given to Mr. Marrero (No. 14) in connection with his own case or his co-defendant's cases.

These requests were the subject of a previously filed Motion to Compel by the Plaintiff [Document 44]. In response to that Motion the Court denied the request as it related to Request Number 13 on the grounds that it was overbroad and the Plaintiff had failed to demonstrate a substantial need for the material in the context of this case. With respect to Request Number 14, the Court allowed it "with respect to these Defendants only." (See Court's Order dated October 19, 2006.) The individual Defendants named in this case had no information concerning these matters. However, as agreed at a subsequent hearing in Court, Defendants counsel sought information from the Hampden and Hampshire District Attorney's Offices concerning these matters. (See Court Order dated February 7, 2007.) Initially, the Hampshire District Attorney's Office reported having no such material and the Hampden District Attorney's Office was searching for responsive material. Defendants' counsel in this case made further inquiries to both District Attorney's Offices. Subsequently, the Hampden District Attorney's Office reported that it did have responsive material and that material, written statements by Mr. Marrero and also by one Michael White, were produced to Plaintiff as counsel had agreed to do. (See Exhibit A produced herewith, Defendants' Supplemental Response to Plaintiff's Request for Production of Documents which was served to Plaintiff on April 4, 2007.) The District Attorney's Office also reported that it had the Assistant District Attorney's own notes concerning oral statements by the witnesses which it objected to producing. This too was reported to Plaintiff along with the Assistant District Attorney's statement that the notes simply repeated the allegations made in the written statements. The Hampshire District Attorney's Office has stated it has no responsive material.

The statements by Mr. Marrero demonstrated that he obtained the information subsequently used at Plaintiff's criminal trial before making contact or any deal with the police or prosecutors. In fact, Mr. Marrero's statement explicitly acknowledges that as of the time he wrote the statement "no promises on my own case" have been made. Mr. Marrero's initial approach to the police and prosecutors is shown to have been made in November, 2003. This is after he and Plaintiff had been removed from the same cell at the jail which occurred prior to October 23, 2003. These documents clearly rebut the Plaintiff's claim that Mr. Marrero was already an agent of the Commonwealth when he and Plaintiff were housed in the same cell. Moreover, the District Attorney's Office states that this material was provided to Plaintiff's criminal-case attorney in connection with that case demonstrating that despite Plaintiff's repeated claims of his critical need for discovery of this material, in fact, he had it before this civil case was even filed.

Defendants contend that they have complied with their obligations to produce documents in this case and that the Motion to Compel should be denied.


Plaintiff is unsatisfied by these responses and implies that there is other material that should be produced. In support of this position, he makes allegations that Mr. Marrero made statements against his co-defendants and produces a partial copy of his trial transcript containing an argument made by his counsel to the trial judge. That transcript does not support Plaintiff's argument. It shows by the time of Plaintiff's trial the government had agreed to give him some consideration in exchange for his testimony, but, there is no evidence in the transcript that there was any written agreement. Insofar as Plaintiff argues that this transcript shows there were written agreements or statements relating to Mr. Marrero providing evidence against his co-

defendants, that argument is also unsupported by the transcript.  The argument made by

Plaintiff's defense attorney in the criminal case is that he should be allowed to ask Mr. Marrero

questions suggesting that Mr. Marrero had been assaulted by gang members because "they" [the

gang members] believed he was a "snitch."  Again, this does not show there are documents

available to the defendants which Defendants have not produced.  Moreover, any such material

would be irrelevant to the material issue in this case which is whether Mr. Marrero had been

engaged as an agent of the state to obtain information against Plaintiff during or before the short

time they shared a cell.  Nothing in the documents relied on by Plaintiff support that position

which is rebutted by Mr. Marrero's own written statement.  (Plaintiff has been given an

opportunity to depose Mr. Marrero, but, that proceeding has not yet taken place.)

In support of his Motion, Plaintiff also makes conclusory arguments that Defendants'

Response was late, evasive and incomplete, that its recitation of Request 13 altered what Plaintiff

had actually requested, and that the District Attorney's refusal to produce his own notes of his

conversation with Mr. Marrero did not comply with Federal Rule of Civil Procedure 26(b)(5).

The Court should not allow the Motion on the basis of these arguments.

With respect to the District Attorney's own notes, Plaintiff contends that the objection

does not comport with the rule because the nature of the withheld material was not described

sufficiently to permit Plaintiff to assess the validity of the objection.  In fact, the contents of the

notes are specifically described by Assistant District Attorney Orenstein as "information [that] is

otherwise contained in the statements of the witnesses."  Given that Plaintiff's criminal case is on

appeal, Plaintiff should not be permitted to use this civil case to obtain information he is not

entitled to obtain in the criminal case itself, particularly where a copy of Mr. Marrero's signed

statement, which the notes describe, has been produced.  In the circumstances, production of

ADA Orenstein's notes is unnecessary and thus unduly burdensome.

With respect to Plaintiff's argument that Defendant's recitation of Request 13 in its

response "alters" what Plaintiff actually requested, the alteration, to the extent any exists, is

meaningless and does not warrant allowance of Plaintiff's Motion.  Plaintiff's original request

sought "[c]opies of any and all verbal and written statements ...."  As stated in Defendants'

Response, Request 13 is given as "[c]opies of any and all statements ...."  Oral statements made

by Mr. Marrero can only be produced in response to the Plaintiff's request to the extent that they

were written or recorded in some fashion.  These are the materials which Defendants sought

from the District Attorney's offices and produced.  To the best of Defendants knowledge and

belief, there are no other such documents in the possession or control of Defendants which are

responsive to the requests.

For all of the above reasons, Defendant asks that the Court deny Plaintiff's Motion.

<div style="margin-left: 40%;">

The Defendants
By their attorneys:

s/ KEVIN D. WITHERS /

Kevin D. Withers, BBO #531660
Edward J. McDonough, Jr., BBO # 331590
EGAN, FLANAGAN & COHEN, P.C.
67 Market Street, P.O.Box 9035
Springfield MA 01102-9035
TEL:  (413) 737-0260
FAX: (413) 737-0121

</div>

I hereby certify that a copy of this document was served on the Plaintiff by mailing it first
class mail, postage prepaid on this 28th day of April, 2007.

<div style="margin-left: 40%;">

s/ KEVIN D. WITHERS /

</div>

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

NO.05-30102-MAP

———————————————

ANTHONY GARVIN
PLAINTIFF
V.
HAMPDEN COUNTY SHERIFF'S DEPARTMENT,
SHERIFF MICHAEL J. ASHE, JR.,
HAMPDEN COUNTY COMMISSIONERS,
COMMONWEALTH OF MASSACHUSETTS,
SUPT. BASIL TSGARIS, DEPUTY CHIEF OF SECURITY KENNEY,
MAJOR (FIRST NAME UNKNOWN) WELDON, LT. (FIRST NAME UNKNOWN)
KORMAN, LT. JUAN RAMOS, LT. (FIRST NAME UNKNOWN) CADIGAN,
OFFICER WILLIAM MULDROW, OFFICER VICTOR KELLY AND
THE UNKNOWN OFFICER IN THE TOWER
DEFENDANTS

———————————————

DEFENDANTS' SUPPLEMENTAL RESPONSE TO PLAINTIFF' S
REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to the order of this court dated December 4, 2006, the Defendants respond as follows:

12.    Copies of any written or verbal statements made by Omar Marrero and Michael White to any of the defendants. Including any notes created by any of the defendants regarding the plaintiff.

13.    Copies of any and all statements where there are promises, rewards or inducements incorporated, inconsistant statements and, or any written or verbal requests for leniency in exchange for his cooperation in the matter of Commonwealth v. Omar Marrero and his co-defendants' case as well.

14.    Copies of any and all plea agreement, promises, rewards, favors and inducements that any of the defendants may have promised Mr. Marrero and or gave Mr. Marrero, pertaining to the plaintiff and pertaining to any of the cases under Commonwealth V. Omar Marrero.

Response to all:
    James C. Orenstein, First Assistant District Attorney of the Hampden County



District Attorney's office has provided copies of the attached documents which were all previously provided in discovery to Attorney Greg Schubert, counsel of record in Mr. Garvin's murder case:

(a)    March 29, 2004 letter to Greg T. Schubert, Esq.
(b)    April 2, 2004 letter to Greg T. Schubert, Esq.
(c)    November 14, 2003 letter to Mr. Bennet
(d)    December 30, 2003 statement of Omar Marrero
(e)    June 2, 2003 Incident Report Form
(f)    June 19, 2003 statement of Michael White

Mr. Orenstein has objected to the production of notes in his file of interviews with Michael White or Omar Marrero for the following reasons: "the notes constitute work product; they do not contain exculpatory information; the notes do not constitute statements as defined in Mass.R.Crim.P. Rule 14; the information is otherwise contained in the statements of the witnesses, copies of which are being provided herewith."

Elizabeth Farris, Deputy First Assistant District Attorney, Franklin, Hampden District Attorney's office reports that they are in possession of no such documents.

The Defendants

By their attorney
Kevin D. Withers, Esq.
Egan, Flanagan and Cohen, P.C.
67 Market Street - Post Office Box 9035
Springfield, MA 01102
(413) 737-0260; Fax: (413) 737-0121
BBO# 531660

_____ certifies that copies of the foregoing document was served on Anthony Garvin to S.B.C.C. P. O. Box 8000, Shirley, MA 01464 by first class mail on 4/*4* /2007.

2



**WILLIAM M. BENNETT**
DISTRICT ATTORNEY

COMMONWEALTH OF MASSACHUSETTS
COUNTY OF HAMPDEN
HALL OF JUSTICE

50 STATE STREET
SPRINGFIELD, MASSACHUSETTS 01102-0559

OFFICE OF THE DISTRICT ATTORNEY

SUPERIOR COURT OFFICE
TEL: 413-747-1000
FAX: 413-781-4745

SPRINGFIELD DISTRICT COURT OFFICE
TEL: 413-747-1001
FAX: 413-747-5628

March 29, 2004

Greg T. Schubert, Esq.
1365 Main Street
Springfield, MA 01103

<u>**RE: Commonwealth v. Anthony Garvin**</u>

Dear Attorney Schubert:

    In the past several days, three potential witnesses in the above-captioned matter have provided additional information about statements made by your client. These witnesses have already given written statements that include oral statements of Mr. Garvin. In reviewing these statements recently, the witnesses have added the following:

1.      Omar Marrero. Mr. Marrero said that on one occasion, Mr. Garvin asked him to place a three-way phone call to a girl with whom he stayed before he turned himself in. Marrero refused because it was long distance.

3.      Michael White. While he and Mr. Garvin were talking in the bubbles in the protective custody unit of the jail, Garvin said "his boy sent him to this corner which was a good corner to deal (drugs). The guy wasn't giving it up or letting him deal there."

If you have any questions, please feel free to call.

Very truly yours,

James C. Orenstein
First Assistant District Attorney

Via facsimile and first class mail

April 2, 2004

Greg T. Schubert, Esq.
1365 Main Street
Srpingfield, MA 01103

RE: **Commonwealth v. Anthony Garvin**

Dear Attorney Schubert:

I am writing to enumerate any promises, rewards or inducements made to prospective Commonwealth witnesses in the above-captioned matter:

2.    Omar Marrero. Mr. Marrero was told on December 30, 2003, that should he testify truthfully and cooperate fully that his cooperation would be taken into consideration in the disposition of his cases. He was also moved from the Hampden County House of Correction to separate him from Mr. Garvin.

4.    Michael White. On June 23, 2003, the Commonwealth agreed to a reduction of bail in a case involving allegations of domestic abuse against Mr. White. The Commonwealth agreed to personal recognizance due in part to the assertion by the complainant in that case that she would assert the marital privilege and refuse to testify, and due in part to the fact that Mr. White had given a statement which the Commonwealth did not wish to provide to the defendant while Mr. White was still in custody at the Hampden County House of

Page Two
April 2, 2004

Correction. The Commonwealth eventually entered nolle prosequis on the counts
that could not be proved due to the unavailability of the complainant wife to
testify, but proceeded against Mr. White on the counts that could be proved
without her cooperation, and he was sentenced accordingly. The
Commonwealth's recommendations concerning the disposition of these cases
were without consideration for his cooperation.

If you have any questions, please feel free to call me.

Very truly yours,

James C. Orenstein
First Assistant District Attorney

Via facsimile and first class mail

11-14-03

Dear Mr. Bennet

My name is Oman Marrero and I am being held at Hampden House of Corrections in Ludlow. This letter is in regards to a Murder that Anthony Garven ConFest to me in detail. I am willing to give a statement and testiFy against him. I will only give the Statement at court. All I aske in return is that you move me out of ludlow and get uless time then what they are OFFering me. I am writing this letter to you cause you was the D.A on my case at First. Thank you For your time

Omar

185

## STATEMENT
## SPRINGFIELD POLICE DEPARTMENT

DATE: 12-30-03
TIME: 11:20 A.M.

MY NAME IS OMAR MARRERO. I AM 17 YEARS OLD. MY DATE OF BIRTH IS
01-20-86. I AM CURRENTLY BEING HELD IN THE STONYBROOK
CORRECTIONAL FACILITY IN LUDLOW, MA. I AM THERE AWAITING TRIAL
ON ANOTHER MATTER. I AM HOUSED IN C TOWER POD 2. I HAVE
PREVIOUSLY CONTACTED THE DISTRICT ATTORNEY'S OFFICE BY LETTER
INFORMING HIM THAT I WISH TO GIVE A STATEMENT ON THE ANTHONY
GARVIN CASE.  MY ATTORNEY CAROL GRAY MADE ARRANGEMENTS WITH
A.D.A JAMES ORENSTEIN TO GIVE A WRITTEN STATEMENT  TO THE
SPRINGFIELD POLICE. I AM GIVING THIS STATEMENT TO DETECTIVES
TIMOTHY O'SHEA AND MICHAEL KERVICK IN A.D.A KAREN BELL'S OFFICE,
WHICH IS LOCATED IN THE SUPERIOR COURT AT 50 STATE STREET. MY
ATTORNEY CAROL GRAY IS PRESENT.

I HAVE BEEN MADE NO PROMISES ON MY OWN CASE AND WISH TO GIVE
THIS STATEMENT.

SOMETIME IN APRIL I WAS IN THE HOLE IN THE STONYBROOK JAIL. THIS
IS WHERE YOU ARE PUT FOR DISCIPLINARY SEGREGATION. WHILE I WAS IN
THE HOLE  A BLACK GUY NAME "ANT" WAS THERE TOO. I ALSO REMEMBER
THAT A WHITE GUY I KNOW AS "TEXAS" WAS ALSO THERE. "TEXAS" WAS LA
FAMILIA GANG MEMBER. I KNOW THAT HIS  FIRST NAME IS TIMOTHY. I
DON'T KNOW HIS LAST NAME.  ANYTIME "~~TEXAS~~" WAS GOING TO MEDICAL
OR THE SHOWER HE TOLD "ANT" THAT HE WAS GOING TO GET HIM WHEN
HE PASSED BY HIS CELL. I UNDERSTOOD THAT TO MEAN THAT HE WAS
GOING TO BEAT "ANT" UP. WHEN "TEXAS SAID THIS "ANT" TOLD HIM
"THAT'S WHY I KILLED YOUR BOY".

ONE DAY WHEN "ANT" WAS ON REC "TEXAS'S" ROOMMATE WAS GETTING
LET OUT OF HIS CELL TO TAKE A SHOWER WHEN "TEXAS" RAN OUT OF THE
SAME CELL AND RAN OVER TO THE REC ROOM. THE DOOR WAS OPEN AND
"TEXAS" WENT AFTER "ANT" AND BEAT ON HIM AND GAVE HIM A FAT LIP.
"TEXAS" WAS TRANSFERRED OUT OF THE HOLE AFTER THIS.

IN AUGUST OF 2003 I WENT BACK INTO THE HOLE AGAIN. THIS TIME I WAS
"ANT'S" ROOMMATE. I THEN LEARNED THAT "ANT'S" REAL NAME WAS

186

ANTHONY GARVIN. AFTER ABOUT 2 OR 3 WEEKS OF BEING ROOMMATE'S WITH HIM ANTHONY TOLD ME ABOUT HOW HE KILLED THIS GUY "PUPI". HE TOLD ME THAT HE SHOT THIS GUY IN THE BACK OF THE NECK. ANTHONY TOLD ME THAT HE HAD THIS KID SELLING DRUGS FOR HIM SOMEWHERE ON THE BLOCK THAT "PUPI" WAS ON. "PUPI" TOLD THE KID TO STOP SELLING DRUGS THERE BECAUSE IT WAS THEIR BLOCK AND THE KID WASN'T SELLING FOR THEM. THE KID TOLD "ANT" THIS AND HE GOT MAD. "ANT" SAID THAT HE WAS GOING TO WAIT FOR HIM. HE SAID HE WAITED FOR HIM IN THE BUILDING. HE SAID THAT THERE WAS A LITTLE KID'S PARTY GOING ON UPSTAIRS IN THE BUILDING. HE SAID THAT "PUPI" CAME OUT OF THE PARTY AND WAS TALKING ON THE CELL PHONE DOWNSTAIRS. "ANT" SAID THAT "PUPI" WAS TALKING ON THE CELL PHONE AND HAD HIS BACK TURNED TO HIM. HE SAID HE WENT UP BEHIND "PUPI" AND SHOT HIM.

"ANT" SAID THAT HE LEFT AND WENT HOME AND CALLED THE POLICE BECAUSE HE HEARD THE POLICE WANTED TO QUESTION HIM. HE WENT OVER TO A NEIGHBORS HOUSE AND WATCHED AS THE POLICE CAME TO HIS HOUSE WITH THEIR GUNS DRAWN. HE SAID HE GOT SCARED AND HE LEFT. HE SAID WHEN HE WENT ON THE RUN AND THAT HE WENT TO NEW YORK. HE SAID HE HAD FRIENDS THERE. HE SAID THAT HE THREW THE GUN IN THE RIVER SOMEWHERE IN NEW YORK. WHOEVER HE WENT TO SEE OUT THERE HOOKED HIM UP WITH A GIRL THERE SO HE COULD STAY WITH HER. HE WAS ALSO USING A FAKE NAME OUT THERE. I KNOW THAT HE TRIES TO CALL THE GIRL FROM THE JAIL BUT THERE IS A BLOCK ON HER NUMBER.

HE SAID THAT HE ALSO WENT DOWN SOUTH TOWARDS VIRGINIA BEACH SOMEWHERE. HE SAID THAT HE TURNED HIMSELF IN BECAUSE HE THOUGHT HIS WIFE WAS TELLING THE POLICE WHERE HE WAS AT.

WHILE I WAS STILL IN THE HOLE WITH ANTHONY GARVIN HE TOLD ME THAT HE SAW A GUY NAMED "SNAKE" IN DISTRICT COURT WHILE ANTHONY WAS IN COURT ON A CASE WITH HIS WIFE. HE SAID THAT HE TOLD "SNAKE" THAT HE BETTER NOT TESTIFY AGAINST HIM OR HE WAS GOING TO GIVE HIS PAPERS TO HIS PEOPLES. THIS MEANS TO ME THAT HE WAS GOING TO GIVE SNAKE'S STATEMENT AND HIS GRANDJURY MINUTES OUT TO THEM. ANTHONY SAID THAT "SNAKE" TOLD HIM THAT HE WASN'T GOING TO TESTIFY AGAINST HIM.

ANTHONY ALSO TOLD ME THAT HE TOLD HIS WIFE TO GO SEE A GUY NAMED "GUTY". HE IS A LA FAMILIA GANG MEMBER. HE TOLD HIS WIFE TO TELL HIM NOT TO TESTIFY AGAINST HIM OR HE WAS GOING TO GIVE HIS PAPERS TO ALL OF HIS SUPERIOR GANG MEMBERS. ANTHONY ALSO SAID THAT HE WAS GOING TO PAY "GUTY'S" EX-GIRLFRIEND AND AN UNKNOWN GIRL TO GIVE A STATEMENT TO POLICE SAYING THAT "SNAKE" PULLED OUT A GUN AND "GUTY" AND PUPI TRIED TO ROB ANTHONY AND THAT

187

12/30/0

ANTHONY WRESTLED WITH "SNAKE" FOR THE GUN AND THE GUN WENT OFF SHOOTING "PUPI". ANTHONY'S WIFE TOLD HIM THAT "GUTY" HAD ALREADY LEFT TO PUERTO RICO.

ANTHONY ALSO TOLD ME THAT HIS PRIVATE INVESTIGATOR TOLD HIM THAT AN EX-SPRINGFIELD COP WAS LOCKED UP IN THE HOLE AND THAT HE WAS GOING TO HELP ANTHONY OUT IN COURT. I THINK THE COPS NAME IS MICHAEL WHITE. THE COP SAID THAT LT. RAMOS FROM THE JAIL WAS PUTTING PRESSURE ON HIM AND THE POLICE WERE PUTTING PRESSURE ON HIM TO WRITE THE STATEMENT.

BEFORE THE START OF THIS STATEMENT DETECTIVE O'SHEA SHOWED ME A COLOR ARRAY OF PHOTOS DEPICTING BLACK MALES. I IDENTIFIED A PHOTO AS ANTHONY GARVIN. I PUT A CIRCLE AROUND HIS HEAD AND WROTE HIS NAME ABOVE HIS PICTURE. I THEN SIGNED MY NAME THE DATE AND THE TIME UNDERNEATH HIS PHOTO. THIS IS THE GUY I REFER TO IN THIS STATEMENT AS "ANT" OR ANTHONY. HE IS THE GUY WHO TOLD ME THAT HE SHOT "PUPI".

12/30/03

188

SPRINGFIELD POLICE DEPARTMENT
Photo Array Images Associated with Case Number 02-5685-OF





189

Photo Array Images Associated with Case Number 02-5685-OF



Anthony Garvin



Omar Marrero        12/30/08

11:18 Am





190

Hampden County Jail and House of Correction

# INCIDENT REPORT FORM

Cell #15                                    Cell #4

(1) Information Only _____

(2) Inmate's Name  Timothy Zanetti , Anthony Garvin

(3) Person Number  130 587                133 065

(4) Inmate's Housing Assignment at Time of Occurrence  C2

(5) Date of Occurrence  6-2-03                Time of Occurrence  9:30 AM

(6) Date Report is Completed  6-2-03          Time Report is Completed  10:3 PM

(7) Incident Description (include staff and inmates involved, what occurred, where it occurred, when it occurred, how it occurred, and if known, why it occurred).

On 6-2-03 at about 9:30 AM inmate Timothe Zanetti ran out of cell #15 behind his roommate inmate Robert Santiago while doing the showers, then he attack inmate Anthony Garvin in the subday room 1 while inmate Garvin was on Rec time. Zanetti was throwing punches at Garvin, who Garvin was trying to move away from the punches. Myse and officer Victor Kelly restrained inmate Zanetti laside him on the ground and Cuffed and shackled him an put him back in cell #15. Pod secure Supervisor arrive

(8) Immediate Action Taken:

Both Inmates were seen By medical

Inmate Zanetti moves TO C-1 #9 By spec ops. Remaining No privs

Sworn To Under The Pains and Penalties of Perjury.

(9) Reporting Employees Signature  William Mulder        Date  6-2-03

Employees Identification Number  0764                Time  10:38 AM

The following section is to be completed by the Supervisor.

(10) Is disciplinary action requested?        Yes  ✓    No _____

(11) Miranda Warning                          Yes _____  No _____

(12) Supervisor's Signature  _____        Date  6-2-03

Supervisor's Identification Number  115        Time  10:41 A

Central Records- White          Department Director- Green          Special Operations- Yellow
Reporting Employee- Pink              Copy to_____          -Goldenrod

HCHOC-0037 (5Part)                                                          142

STATEMENT                    6-19-03
                             10:51 A.M.

MY NAME IS MICHAEL WHITE. I AM 28 YEARS OLD AND MY
DATE OF BIRTH IS 10-22-74.
                        I AM CURRENTLY INCARCERATED AT THE
HAMPDEN COUNTY HOUSE OF CORRECTION IN LUDLOW. I AM
GIVING THIS STATEMENT TO DETS. EUGENE J. DEAN AND
TIMOTHY O'SHEA IN LT. JUAN RAMOS OFFICE.

I HAVE BEEN HERE SINCE MAY 14, 2003. I AM CURRENTLY
HOUSED IN DELTA 4, CELL #6. PRIOR TO THAT I WAS IN CHARLIE
2, CELL #2. I HAD ALSO BEEN IN CELL #1 AND CELL #7. I HAVE
BEEN IN THESE CELLS BY MYSELF.

THE FIRST TIME I SAW ANT WAS WHEN HE WAS BROUGHT INTO
C-2. THIS WAS THE DAY AFTER MEMORIAL DAY. EVERYBODY WAS
YELLING THAT HE WAS A PC, MEANING THAT HE MIGHT HAVE
DONE SOMETHING WRONG BUT HE WAS RATTING OUT SOME OF
HIS BOYS SO HE COULD GET LESS TIME. ON MAY 29, 2003 I WAS AT
REC. I WAS IN THE FIRST BUBBLE. A GUY I KNOW AS TEX WAS IN
BUBBLE TWO. TEXAS WAS THERE BEFORE I GOT THERE AND SO
WAS ANT. TEXAS WAS TALKING TO THE CO. HE WAS ASKING TO
TALK TO HIS BOY, MEANING ANT. THE CO WALKED AWAY AND IT
BECAME OBVIOUS TO ME THAT THEY WERE NOT FRIENDS. TEXAS
WALKED UP TO ANT WHO WAS IN CELL #4. TEXAS WAS SAYING
THAT ANT WAS A FUCKING LITTLE BITCH AND THAT HE WAS
GOING TO BEAT HIS ASS. ANT WAS TELLING TEXAS HE WAS A
PUNK AND WANNA BE PUERTO-RICAN. TEXAS ASKED ME IF I
KNEW ANT I TOLD HIM NO. ANT STARTED TALKING TO ME. ANT
SAID TO TEXAS THAT WAS WHY HE KILLED HIS FUCKING BOY
BECAUSE HE TALKED SHIT JUST LIKE YOU. TEXAS GOT HEATED
AND WENT TO THE OTHER SIDE OF THE BUBBLE. I SAID TO ANT
YOU KILLED HIS BOY. ANT MADE A GUN WITH HIS HAND AND
SAID, YO I BUCKED HIM RIGHT IN HIS FUCKING HEAD. TEXAS
CAME BACK OVER AND WALKED AWAY AGAIN. TEXAS SAID IT
WAS HIS BROTHER THAT HE SHOT. I SAID TO ANT, YO YOU
KILLED HIS BROTHER. ANT SAID I JUST TOLD YOU I BUCKED
THAT MOTHERFUCKER IN THE HEAD. HE MADE THE MOTION OF

063

PUTTING HIS HAND TO THE BACK OF HIS HEAD LIKE HE HAD A GUN. THEN ANT TOLD TEXAS HE WASN'T A BITCH LIKE YOU TEXAS BECAUSE HE DIDN'T DIE RIGHT AWAY.

I SAW ANT TWO DAYS LATER IN THE BUBBLE. I ASKED HIM IF HE REALLY KILLED THAT DUDE. HE SAID YEA NIGGER I TOLD YOU I DID. I SAID I COULDN'T IMAGINE THAT. HE SAID YEA THE FIRST TIME I DID THIS I GOT SICK BUT THE SECOND TIME IN NEW YORK I WAS FINE. HE SAID MOTHERFUCKERS OUT HERE NEED TO ~~Take~~ CARE OF BUSINESS. THEY WANT TO ACT LIKE GANGSTERS BUT WON'T TAKE CARE OF BUSINESS LIKE I DO. ANT ALSO SAID THAT HE KILLED DUDE BECAUSE HE WAS IN THE WAY OF HIM MAKING DA MONEY.

ABOUT 2 WEEKS AGO I WAS MOVED FROM THE CHARLIE UNIT TO THE DELTA UNIT. I REMEMBER IT WAS A MONDAY AND I WAS IN THE SHOWER. THEY ALLOW YOU TO SHOWER ON MONDAY, WEDNESDAY, AND FRIDAY. THE TIME WAS ANYWHERE BETWEEN 8:00 TO 10:00 A.M. I WAS TAKING MY SHOWER AND I HEARD A RUCKUS DOWNSTAIRS. THERE WERE INMATES YELLING. I LOOKED OUT THE WINDOW AND SAW 2 GUYS FIGHTING ON THE GROUND. I RECOGNIZED BOTH OF THEM. ONE WAS ANT AND THE OTHER WAS TEXAS. THEY CALL HIM TEXAS BECAUSE HE IS FROM TEXAS. THEY WERE GOING AT IT PRETTY GOOD. THE C.O. CAME OVER AND GRABBED TEXAS. TEXAS DIDN'T HAVE CUFFS ON BUT ANT DID. ANT GOT BACK IN THE CELL AND THEY PUT TEXAS IN HIS CELL. THE SRT TEAM CAME IN TO MOVE TEXAS. THEY FILM THIS. WHILE THEY WERE MOVING TEXAS, TEXAS TOLD ANT THAT THIS WASN'T OVER. THEY MOVED TEXAS TO C1. ANT WAS BITCHING THAT HIS EYE HURT AND STUFF LIKE THAT. ANT LATER WAS TALKING THROUGH THE VENTS THAT HE WAS GOING TO KILL TEXAS AND STARTED CRYING THAT HE LOST HIS WEDDING RING AND THAT HIS WIFE WAS GOING TO SUE THE JAIL. I DON'T REMEMBER IF IT WAS THAT DAY OR THE NEXT BUT ANT WAS BITCHING TO LT. CADIGAN THAT HE WANTED TO GO TO NORTHAMPTON. AFTER THAT I TRIED TO GET A HOLD OF LT. CADIGAN. I WANTED TO LET HIM KNOW WHAT WAS GOING ON. I WROTE A LETTER TO ADA CARMEN PICKNALLY ABOUT WHAT I KNEW. HE IS THE ONLY PERSON I TRUST DOWN THERE. I TOLD MY WIFE ABOUT WHAT HAPPENED. I CAN ONLY MAKE OUTGOING

064

CALLS AND THEY ARE COLLECT. SHE WAS THE GO BETWEEN MY
ATTORNEY, THE DA, AND ME. PICKNALLY TOLD MY WIFE THAT
ORENSTEIN WAS HANDLING THE CASE.

MY WIFE CALLED ORENSTEIN YESTERDAY AND WANTED TO
KNOW WHY I WAS STILL HERE. SHE IS DROPPING THE CHARGES
AGAINST ME. ORENSTEIN MUST HAVE CALLED THE DB BECAUSE
DET. DEAN AND O'SHEA ARE HERE TODAY. WHILE I WAS HERE
DET. DEAN AND O'SHEA SHOWED ME 8 PHOTOS OF MALES. I
POSITIVELY IDENTIFIED A PICTURE OF THE GUY I KNOW AS ANT.
I CIRCLED HIS PICTURE AND SIGNED NY NAME UNDERNEATH AND
NOTED THE TIME AND DATE. I KNOW NOW THAT ANT'S REAL
NAME IS ANTHONY GARVIN.


MICHAEL WHITE                    DET. EUGENE J. DEAN



DET. TIMOTHY O'SHEA


065






066





067

Law Offices Of

# Egan, Flanagan and Cohen, P.C.

67 Market Street
P.O. Box 9035
Springfield, Massachusetts 01102-9035

Phone: (413) 737-0260 • Telefax: (413) 737-0121
Chicopee Office: (413) 594-2114 *by appointment only*
Web site: www.eganflanagan.com

John J. Egan
Theodore C. Brown
Edward J. McDonough, Jr.
Maurice M. Cahillane
Robert L. Quinn
Joseph A. Pacella*
Joseph M. Pacella
Kevin D. Withers
Paula C. Tredeau◊
Richard J. Kos
Joan F. McDonough
Katherine A. Day▯
Jennifer Midura D'Amour*
Katharine Pacella Costello

*Senior Counsel*
 William C. Flanagan*
 Mary E. Boland
 Thomas J. Donoghue

*Of Counsel*
 David G. Cohen

James F. Egan
 (1896-1986)
Edward T. Collins
 (1902-1995)
Charles S. Cohen
 (1931-2004)

*Also admitted in CT
*Also admitted in DC
▯Also admitted in FL
^Also admitted in TX

April 4, 2007

Anthony Garvin
S.B.C.C.
P.O. Box 8000
Shirley, MA 01464

RE:    Garvin v. Ashe et al
       U.S. District Court Civil Action 05-30102-MAP

Dear Mr. Garvin:

Enclosed is Defendants Supplemental Response to Plaintiff's Request for Production fo Documents in the above-referenced matter.

Very truly yours,

Kevin D. Withers, Esq.

KDW:jfs
Enclosure