UNITED STATES DISTRICT COURT
DISRTICT OF MASSACHUSETTS
CIVIL ACTON NUMBER: 05-30102-MAP

_____

ANTHONY GARVIN,
PLAINTIFF

V.

COMMONWEALTH OF MASSACHUSETTS ET.AL.,
DEFENDANTS

_____

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT

The plaintiff hereby submits this memorandum in support of his opposition to Defendants' motion for summary judgement.

### SUMMARY OF PLAINTIFF'S CLAIMS

The plaintiff's complaint presents two counts, which are as follows: 1)That the defendants failed to protect the Plaintiff by; A)unreasonably placing him in a unit with known enemies/threats, B)Failing to follow their own policies, procedures and Codes of Massachusetts Regulations, C)Failing to create policy and procedure, and D)Unreasonably created conditions and a situation that caused injury and 2)That the Defendants failed to protect the Plaintiff's rights under the 8th amendment, 4th amendment, 5th amendment and 14th amendment to the United States Constitution(Cruel and unusual punishment, free from illegal search and seizure, rights to a fair trial); Plaintiff's rights under the Massachusetts Declaration of rights; Rights under Mass General Laws and Codes of Mass Regulations by; A)Unreasonably placing a

known enemey and known snitch/Commowealth witness in
Gravin's cell, B)Failing to protect the Plaintiff from
the later, C)Assisting/conspiring in the circumvention
of said rights, D)Failing to follow their own policy and
procedure as well as Codes of Mass Regulations, and E)
Unreasonably creating/instigating conditions and a
situation that caused injury. While there was no physical
injury, there was mental injury and injury physically
with regard to Garvin's liberties being taken away.

While the Defendants deny Garvin's claims, Garvin
can support a cause of action under Federal and State Law.

The Court should deny the Defendants' request for
summary judgement with respect to all claims. With respect
to the Defendants' defense of absolute immunity from
damages based on the Defendants' alleged discretionary
acts and policy making decisions, The Plaintiff states
that the conditions created and situations created by the
Defendants caused the basis of these claims, when they
(the Defendants)violated their own policies, procedures
and Codes of Mass Regulations that were and are in place
and thus were and are not discretionary acts but actions
and inactions, which are obligatory. Therefore M.G.L.c.
258 § 10(b) and (j) are not applicable on the Tort
claims due to the exclusions under § 10(j)(1)and(2).

With respect to the defense of escape statute,
1) Mr. Zanetti(the attacker) was never given any disciplinary
ticket for escape nor assault on Muldrow during the"escape"
2) Officer Muldrow requested the cell door to be opened

2

by the defendant Tim Allen. See App. p.3(Complaint, ¶ 19)

3) Defendant Tim Allen alleges that he had knowledge of

a potential risk between the two inmates. See App. p. *119A - 119C*

(Tim Allen's incident report), yet 4) Tim Allen proceeded

to open Zanetti's cell, knowing he had not secured the

the subdayroom that Garvin was in, this was deliberate

indifference and gross negligence.These allegations do

amount to civil rights claims as a matter of law. To the

same extent the Defendant do have liability for the

invasion of privacy by the Commonwealth's agent/jailhouse

snitch.

### SUMMARY JUDGEMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil

Procedure, summary judgement is appropriate where, after

drawing all reasonable inferences in favor of the non-

moving party, there is no genuine issue of fact for trial.

See Anderson V. Liberty Lobby, Inc., 477 U.S. 242, 249,

106 S.Ct. 2505, 91 L.Ed.2d 202 (1986);"The Court must

construe the evidence most strongly in favor of the party

opposing the motion". See UNited States V. Hodges X-Ray,

Inc., 759 F.2d 557, 562 (6th cir 1985); " The handwritten

pro se document is to be liberally construed. As the Court

unanimously held in Haines V. Kerner, 404 U.S. 519, 92

S.Ct. 594, 30 L.Ed.2d 652 (1972), a pro se complaint,

'however inartfully pleaded,' must be held to 'less

stringent standards than formal pleadings drafted by

lawyers' and can only be dismissed for failure to state

a claim if it appears 'beyond doubt that the plaintiff

3

can prove no set of facts in support of his claim which
would entitle him to relief.'"Id., at 520-521, 92 S.Ct.
at596, quoting Conley V. Gibson, 355 U.S. 41, 45-46, 78
S.Ct. 99, 2 L.Ed.2d 80 (1957); A factual dispute is
material if it "affects the outcome of the litigation,"
and genuine if manifested by "substancial" evidence
"going beyond theallegations of the complaint." See
Boston Athletic Ass'n V. Sullivan, 867 F.2d 22,24 (1st
Cir. 1989) citing Astra, 718 F.2d at 1204 and Pignons,
657 F.2d at 486; quoting Hahn V. Sargent, 523 F.2d 461,
464 (1st Cir. 1975), cert. denied, 425 U.S. 904, 96
S.Ct. 1495, 47 L.Ed.2d 754 (1976).

**ARGUMENT**

I.        **PLAINTIFF CAN RECOVER ON HIS CLAIMS**
               **RELATING TO THE ASSAULT BY INMATE.**

Garvin claims that as a result of the assault
by Zanetti he suffered injuries of a deep cut on his
lip, which left a permanate scar, two bumps to the back
of his head, trauma to his right eye and mental anguish.
See App. p3&7 (Complaint,¶ 22 and ¶ 52) Garvin alleges
that he continuously requested medical treatment which
was repeatedly denied to him by unit staff. See App. p.3
(Complaint,¶ 23). Significantly, Garvin claims that all
of his injuries were inflicted by Zanetti, because the
defendants were grossly negligent in failing to preform
obligatory[Empasis Added], not discretionary functions
and denying him medical treatment after the assault.

4

A.      There is evidence to warrant a finding
        that Defendants violated Plaintiff's
        Civil Rights by denying medical care.

As a pretrial detainee at the time of the assault
Garvin's claim that he was denied medical treatment invokes
the due process protections of the Fourteenth Amendment.
See Gaudreault V. Municipality of Salem, Mass., 923 F.2d
203, 208 (1st Cir. 1990) Cert denied, 111 S.Ct. 2266(1991).
Which triggers Eigth Amendment protections. Pretrial
detainees are entitled to "Rights.... at least as great
as the Eigth Amendment protections available to a convicted
prisoner." City of Revere V. Mass. Gen. Hosp., 463 U.S.
239, 244 (1983) "The Eighth Amendment ...imposes a duty
to attend to a prisoner's 'serious medical needs."
Gaudreault, 923 F.2d at 208 (internal citations omitted).
Deliberate indifference may be demonstrated by prison
officials "intenionally denying or delaying access to
medical care or intentionally interfering with the
treatment once prescribed." Estelle V. Gamble, 429 U.S.
97, 104-105 (1976).

While the defendants concede that Garvin was
injured, See App. P.196(Defendants' motion for summary
judgement page 4 first sentence second paragraph) It is
a disputed fact that nothing was done. Garvin was not
given anything to put on his lumps/bumps (ice would have
been appropiate), combined with the fact that he complained
of headaches and dizyness presented a "serious Medical
need". The second dispute here is that his bleeding lip

was not given any stitches/careful stitching or butterfly stitches nor was he given anything to prevent infection. See App. p.59(medical record) The Plaintiff states that a "medical need is serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention"[Empasis Added] Gaudreault, 923 F.2d at 208 that is the case here with Garvin's bleeding lip and headaches and lumps/bumps. As the defendants concede Garvin's injuries were obvious/ visible. See App. p. 197(Defendants' Motion for summary judgement p.5) The Material fact in dispute here is that the injuries did rise to the level of "serious medical needs" so as to trigger Constitutional protection. Contrary to the Gaudreault case and his ijuries comparee to Garvin's is that Garvin had a lacerated lip, dizziness easily atributed to the lumps / bumps, while Gaudreault's injuries consisted of abrasions and bruises clearly distinguishable from Garvin's injuries.

The effects of the denial of medical treatment are appearant. A permanant visible scar, See App. p.191 (Affidavit of medical expert) On and off headaches and eye throbbing and he must now must wear glasses for reading. See App. p.59F(medical record)."The First Circuit has instructed that the seriousness' of an inmate's need may....be determined by reference to the effect of the delay in treatment. Under this test, a medical need is considered serious' when the delay in

treating it causes 'unnecessary and wanton infliction of
pain' or 'a life-long handicap or permanent loss." Rand
V. Simonds. 422 F.Supp. 2d 318, 330 (D.N.H. 2006) (internal
citations and quotations omitted). Another highly
material fact is that the varacity of the defendants can
be challenged. See App. p.117-118(Defendant Muldrow's
inconsistent incident reports, which were signed under
the pains and penalties of perjury); App. p.188(Zanetti's
cell assignment computer printout on date of incident
under reason listed as "cell change" and "I/M shower by
OPS/No rec") Also with regard to any records being
inconsistent to Garvin's claims of not being seen by
medical for several days, evidence of records being lost,
See App.185D-E (Incident reports of lost log books sought
in discovery) records being incomplete(refer to Zanetti
printout supra) and the control over what will go into
reports records and the likes as well as the allegedly
lost/distroyed video tape of the assault, are all
material facts which are admissible under Fed.R.Evid Rule
404 Character Evidence not admissible to prove conduct;
Exceptions; other crimes; Rule 405 Methods of proving
Character; and Rule 406 Habit; Routine Practice.

One of the most important disputable facts is
that the defendants chose to do nothing for the lacerated
lip. "prison officials may not, with deliberate indifference
to the serious medical needs of an inmate, opt for an
easier and lessefficacious treatment of the inmates

7

condition" "even elective treatment recomended by a
physician but not necessary in life or health saving
sense, may be Constitutionally mandated upon a
prisoner's election" Ran V. Simonds supra[Empasis added]
cting Monmouth County Corr. Inst. Inmates V. Lanzaro,
834 F.2d 326 347 (3d Cir. 1987)(internal quotation
marks and citation omitted) and Laaman V. Helgemoe 437
F.Supp. 269, 311 D.N.H. 1977. Garvin's contiuous complaints
about headaches was his only,regarding the lumps/bumps, way
to elect other treatment. What else could Garvin do.

　　　　The last disputed material facts regarding the claim
of denial of medical treatment is that there is a permanant
scar, which if it would've been treated properly, may not
be visible or at least less visible. See App. p.191(Affidavit
of medical expert)and App. p.39:33-34(Garvin's deposition)
Garvin must also now wear glasses while reading due to a
eye muscle converging problem and experiences headaches
as well as throbbing in the eye. See App. p.59E and F
(Medical records) Garvin has certainly produced Medical
evidence of such exacerbation. "jury were competent to
conclude that the scarring was permanent without the need
for expert testimony'.... 'Evidence of scarring which
persists after the passage of ten months time is sufficient
to warrant a lay jury to conclude that the scarring was
permanent. Whether a particular permanent scar amounts
to permanent disfiguement is a judgement that a jury
are competent to make." Com V. Gauthier 63 Mass App.Ct.
1106 823 N.E2d 823 (2005) See Sullivan V. O'Connor, 363

8

Mass. 579, 581 1973 a medical malpractice case, in which
the trial judge charged the jury without objection that
disfigurement was "any change of appearance for the
worse."

      There is sufficient evidence that Garvin had
"serious medical needs" and or that the defendant
exhibited "deliberate indifference" and "gross negligence"
to such needs. Thus Garvin has supported his claims
that the defendants violated his civil rights by denying
him medical treatment(proper treatment) and Garvin's
claims are actionable under State tort and a 42 U.S.C.A
1983suit.

    **B.**      **THERE IS EVIDENCE THAT DEFENDANTS
VIOLATED PLAINTIFF'S CIVIL RIGHTS
BY FAILING TO PROTECT HIM FROM
ASSUALT BY ANOTHER INMATE.**

      In count one Garvin contends/claims that the
defendants violated his civil rights with indifference
and gross negligence towards his safty and failed to
protect him from assault by another inmate.

      Garvin can meet both requirements of Farmer V.
Brennan 511 U.S. 825 (1994) For prison officials to be
liable first Garvin has to show he was incarcerated
under conditions posing a substantial risk of serious
harm which Garvin has already shown and the defendants
concede to this. See App. p.10-11(Complaint Ex A & B)
Also see App. p.199(Defendants' motion for summary
judgement page 7 second paragraph) However Garvin wants
to go even further and says that the defendants'

9

actions and inactions were so unreasonable that they
shock the conscience when they placed him on protective
custody status, but ironically housed him in a unit
with the very gang members of the two gang said to be
working together two harm Garvin's family, while there
was a more reasonable alternative, the protective custody
unit D. Then whatever protection that may have existed
in the special management unit, was depravated when he
was placed in an unsecured area handcuffed and shackled
by the defendant Muldrow, who walked away to continue
other duties without locking the subday room.(He was
opening Zanetti's cell to handcuff the cellmate allegedly)
At this tim defendant Tim Allen was working in the
contrl tower, meaning he had total control over all
locking mechanisms. Tim All claimed that he knew that
Zanetti and Garvin had had issues. See App.119A-C (Tim
Allen's two year delayed incident report) Thus a
competent jury can conclude that Defendant Tim Allen
deliberately failed to lock the door to the area in
which Garvin was and deliberately released Zanetti
knowing that Muldrow had not handcuffed any of the
occupants of that cell. See App.184A-C (Photos of the
subdayroom) These are material facts that are in
dispute, particularly the failure to lock the subday
room, which the defendants stritegically avoided and
failed to mention in there intire motion for summary
judgement. See App. p.57(Garvin's Deposition p.106}
These actions and inactions violated their own policy

10

and procedure. See App.115A -K (Defendants' Supp response
to document request procedure A(12),procedure H,procedure
P,procedure J, procedure B) Also See App.116A -E ( Defendants'
unredacted Supp response to document request procedure
B(7)) and See App. p.69-70 and App. p.73A-73B(Defendant
Muldrow's answers to first set and Supp interrogatories)
See Helling V. McKinney, 509 U.S. 25, 32-34, 113 S.Ct.
2475, 125 L.Ed.2d 22 (recognizing a policy-based Eighth
Amendment claim against prison officials because the
eighth Amendment "requires that inmates be furnished
with the basic human needs, one of whic is reasonable
safety")(internal quotation marks omitted); Jensen V.
Clarke, 94 F.3d 1191 (8th Cir.196)) (affirming finding
against director of state prison system and warden of
state prison on basis of inadequate prison safty policies);
Walsh V. Mellas, 837 F.2d *34. 789 (7th Cir.1988)(affirming
finding that prison officials "devised and operated"
[Empasis Added] a deficient security system for prisoners
in "investigative status"). Known risks of harm were
ignored and disregarded. These are disputed material
facts. Garvin was literally left to be beaten without
even so much as self-defense to protect himself due to
the handcuffs and shackles, this shocks the conscience.
See Clappier V. Flynn 605 F.2d 519, (C.A. 10(Wyo.)1979)
"we recognize that the degree of harm or injury inflicted
is intertwined with the action or inaction allegedly
responsible therefor. Even so the area of concern in
terms of a sec 1983 liability involving an allegation

11

of cruel and unusual punisment relating to a claimed
omission requires proof of exceptional circumstances
and conduct so grossly incompetent, inadequate or
excessive as to shock the conscience or to be
intolerable to basic fairness ".

Garvin did object to his classification as
protective custody. See App.122 A–C(Inmate request
forms from Garvin) This is a material disputed fact
contrary to defendants' Motion for summary judgement.
See App. p.200(Defendants motion for summary judgement
p. 8) "Deliberate depravation of an inmates
constitutional rights may result from actual intent
to deprive him of rights or from recklessness in
ignoring known threats" See Schaal V. Rowe 460 F.Supp
155(S.D.Ill.1978) . This is the case here in this
matter.

These are important facts to consider: 1)The
Sheriff and Superintendent of Hampden County Correction
center/house of correction, are responsible for the
day to day operation at the facility. See 103 C.M.R.
900.10(1) and (2); 103 C.M.R.900.01 which states that
**103** C.M.R. **900.00** through 999.00 establish standards
for the care and cusody of all persons committed to
anycounty correctional facility, and provisions for
enforcement of such standards. They failed to do so
in such a manner as to reasonably protect Garvin
from the assault; 2)They allowed double cell housing
in a special management unit in violation of 103

12

C.M.R. 920.07(1) "Only one inmate should occupy each
cell designed for single occupancy'....'Single cells are
required for maximum security inmates." No waiver
pursuant to 103 C.M.R. 901.04 and 901.05 was filed.
Inmate Zanetti was housed in a cell designed for single
occupancy with another inmate.; 3)While the unit was
designed to segregate it was not used in the matter it
was designed for, I.e. separation of inmates. The
defendants argue that "at the time, plaintiff was in
the subday room, separated by a corridor from Zanetti's
cell."(See App.$_{211}$    motion for summary judgement p.19)
this is a disputable fact. The Plaintiff states that
what actually separated Garvin and Zanetti was the sub-
day room door which should've been locked by either
the defendant Muldrow or Allen. See App. p.13$\mathbf{3}$(Testimony
of Defendant Ramos at Garvin's criminal trial p.21:9-14)
and App.$_{144}$A-C (photos of sub-day room 3 pics); 4) The
classification system failed to place Garvin in the most
appropiate level of security required to ensure protection
of Garvin. See 103 C.M.R. 420.07(2) and 926.03(3)(Written
policy and procedure shall provide that an inmate be
placed in segregation for the purpose of protective
custody only when there is documentation that protective
custody is warranted and no reasonable alternatives are
available.[Emphasis added]"There was a protective custody
unit that was available thus placing Garvin in the
segragation unit for that purpose was not reasonable.
Placing Garvin with known enemies should shock the

13

conscience; 5)Failure to refer previous inmate assaults
to the local prosecutor waives the opportunity to deter
future assaults. See M.G.L.A 127 § 38C which states in
part "shall forthwith notify" similar to the cicumstances
in Martin V. White 742 F.2d 469,(C.A.8(MO.)1984)"When
a felonious assault occurs, he(superintendent(Defendant
Tsagaris)) is under a duty to report it to the prosecutor.
He has no right to decide which felonious assaults
should be reported and which should not." This is material
facts which should be placed before a jury and it
shocks the conscience.

    While aprison official has discretion over the
placement/housing of an inmate said placement is made
based on the classification process and in this case
the known risk factors. Defendants Weldon and Cadigan
deliberately subjected Garvin to be housed around known
threats. See App.122B-D (Garvins request forms to be
transfered to D unit) These were his objections to
being in the C-2 unit and the Defendants should have
realized that there were recent threats based on the
comment "threats and PC" and taken reasonable steps.
they didn't. See App. 122D (Grievance by Garvin) See
Wade V. Haynes, 663 F.2d 778,(C.A.8(Mo.) 1981)which
states in part as follows: "Gross negligence....
means a callous indifference or thoughtless disregard
for the consequences of one's act or failure to act'...
'Egregious failure to protect means a flagrant or
remarkably bad failure to protect." It was the callous

14

nature of thess acts which recklessly exposed Garvin
to inhumane treatment which constitutes the actionable
wrong. Garvin states that while talking to cadigan
about being moved to North Hampton jail Defendant
Cadigan said "If you were cooperating with the D.A.
you would've been moved". Garvin has met the requesit
to his civil rights claims.

### C.    **THE PLAINTIFF CAN RECOVER ON**
### **HIS TORT CLAIMS UNDER LAW.**

Tort claims against the Commonwealth of Mass,
it's subdivisions and it's employees are subject to
the provisions of the Mass Tort Claims Act, M.G.L.c
258, § 1 this is not in dispute.

> ### 1. **The individual defendants are not immune**
> ### **from liability.**

The individual defendants committed
affirmative acts which contributed and created specific
conditions and or situations that resulted in the harm
Garvin suffered. While there is immunity in respects to
all consequences except where'the condition or situation'
was 'originally caused by the public employer." Brum V.
Dartmouth 428 Mass, at 692, 704 N.E.2d 1147 quoting
from G.L.c. 258 § 10(j). The affirmative actions are as
follows: 1) The Commonwealth remanded Garvin to the
Ludlow County Jail with prior knowledge from defendant
Ramos of threats this was discriminatory treatment
because the Commonwealth rutinely requests specific
housing for there snitches/informants' safety. Garvin

15

while not a Commonwealth witness was at a risk to be
harmed. See App. p.186(Affidavit of Madera brothers) and
App. p.192(Omars latter requesting favors and transfer
which he received both of); 2)Defendant Ramos, Cadigan,
Korman, Kenney, Tsgaris and Weldon are members of the
classification board or were at the time of the incident.
The classification board or commitee would fall under
the meaning of employer within the meanings set out in
M.G.L.A. 258 § 1. All of these officials played a part
in putting Garvin into the C-2 unit on a protective
custody status. This action of the board can be seen
as them implying that he was being protected and more
specifically prior to the attack Defendant Weldon
assured Garvin that he was placed there for his protection.
See App. p.12 also App.122B-C(before and after attack
assurances from Weldon of protection) Thus the
exclusionary rules under M.G.L.A. 258 § 1-8 can not
apply based on M.G.L.A. 258 §10(j)(1) which states in
part; "This exclusion shall not apply to:(1)any claim
based upon explict and specific assurances of safety
or assistance,....made to the direct victim....by a
public employee, provided that the injury results in
part from reliance on those assurances." Which Garvin
did; 3)Defendants Muldrow, Kelly, Allen and Korman
knew of the Plaintiff's protective custody status and
intervened in said status' operation when they placed

16

Garvin in a worse position than he was before, by failing
to secure the sub-day room's door's locking mechanism.
See App.117-118(Muldrow's second(inconsistent)incident
report)Also see App. p. 133(Garvin Trial testimony of Juan
Ramos p.21:9-14)"he comes out with cuffs and shackles on,
and gets put in one person as[sic]a time in each sub-day
room, and those sub-day rooms are locked for one hour a
day." This was not done! See M.G.L.A. 258 § 10(j)(2)
which states inpart " This exclusion shall not apply to:
(2)"any claim based upon the intervention of a public
employee which causes injury to the victim or places the
victim in a worse position than he was in before the
intervention;" The defendants Muldrow, Kelly, and Allen
operated the C-2 unit that day in violation of their own
policy and procedure. See App. p.115-115L and 116-116E
(Production of documents policy/procedure) Procedure
3.4.1(A) sec 12 § A, B and D(applies restraints only
when necessary for the following reasons: A. To prevent
self-injury, injury to others, or property damage B. As
a normal or extraordinary precaution during inmate normal
movement within the facility or during transportation.
D. For staff and inmate saftey and security in pods C-1,
C-2 and C-9, or as determined by classification.; Procedure
3.4.1(H) sec 2(Showers/shave(special management units)):
2. The pod floor officer handcuffs inmates, in C-1, C-2
and C-9 or as directed by classification Board prior to
showering, to prevent self-injury, injury to others, or

property damage. Inmates are handcuffed utilizing the
pass-through in the cell door, and in the lockable shower
door. This was not done and contributed to the assault.
See App. p.70:4(Mulrow'answers to Interr.); Procedure
4.4.6(J) sec 2(Showers/Special management security risk
inmates): Base upon Schedule, (in C1, C2 &C9) when a
special management /discipline status inmate wants to
shower, the inmate extends both hands through the cell
door pass through, and the pod officer applies handcuffs.;
and Procedure 3.4.1 Page 11 of 29 sec 7(defendants failed
to identify this procedure)(App. p.116C): "The pod officer
ensures that inmates are not allowed to enter any restricted
areas, including: A. other inmates' cells" The Plaintiff
states that a reasonable jury can conclude that the sub-
day room is one of the restricted areas within the meaning
of this procedure.

         The Defendant Basil Tsagaris is the one who revises
these policies. See the left hand bottom corner of the
procedure documents. Yet he failed to create any procedure
for removing an inmate from a cell where there are two
inmates in the cell. See App. p.115(Defendants response
to documents request number1.(a)"There is no specific
written policy or procedure that defines the duty of anyone
who is removing an inmate, or placing an inmate in and out
of a cell holding two inmates in a special management unit."
Therefore we must rely upon the procedures provided with
concern to a cell with one inmate in it. Furthermore it
is a reasonable inference that there is no procedure due

                              18

to the fact that pursuant to 103 C.M.R. 920.07(1), there should only be one inmate two each cell in the first place. [Emphasis Added]

The defendants failed to supervise, train, inforce and create policy and or procedure concerning the orderly running of the C-2 unit on the day of the assault. They were made aware of the risk of danger Garvin faced and therefore their actions/inactions were an abdication of their responsibilities and recless dereliction of their duties. See Giroux V. Somerset County 178 F.3d 28,(C.A.1 (Me.)1999)(1st Cir.) Defendants, Sheriff's and Sergeant's Motion for Summary Judgement Against 1983 action and Maine Tort claims Act Granted then vacated due to facts a reasonable jury could find to support Plaintiff's claims supervisor failed to do duty. Also see Clappier V. Flynn 605 F.2d. 519,

(C.A. 10(Wyo.)1979) Citing Dewell V. Lawson 489 F.2d 877 (10th Cir.1974) "Lawson was negligent in not supervising his subordinates". Accordingly, summary judgement should be denied to each of the defendants individually with respect to the Plaintiff's tort claims in this case.

> 2. GARVIN'S CLAIMS THAT DEFENDANTS WERE NEGLIGENT WITH RESPECT TO THE DECISIONS THEY MADE CONCERNING HOUSING AFTER THEY WERE NOTIFIED OF RECENT THREATS IS NOT BARRED BY THE DISCRETIONARY FUNCTION EXCLUSION OF THE MASS. TORT CLAIMS ACT.

Garvin states that the defendants have misconstrued his claims with regard to the housing issue. Garvin claims

19

that the defendants who are or were apart of the classisifcation
board totally diregarded Garvin's request while he was
notifying them that he was currently being threatened.
See App. p.12(Inmate request form)"Threats and PC". Garvin
states that they violated their own policy and procedure
concerning classification and Codes of Mass Regulations
103 C.M.R. 420.07(2) and 103 C.M.R. 926.03(3) which
makes it clear that they were suppose to have housed
Garvin in the most appropriate level of security required
to ensure protection and that placing Garvin in the
segregation unit for protective custody purposes was not
the only alternative. There was a more reasonable and
sensible alternative which would have made such a decision
guided by policy and thus not a discretionary function.
The actual protective custody unit was unit D and Garvin
expressed his knowledge of this. See App. p.122B(Inmate
request form) 103 C.M.R. 926.03(3) states that:"Written
policy and procedure shall provide that an inmate be
placed in segregation for the purpose of protective
custody only[**Emphasis Added**]when there is documentation
that protective custody is warranted and **no[Emphasis Added]**
reasonable alternative are available. There was a reasonable
alternative, Unit D ! This is a disputable Material fact
which should bar summary judgement. Furthermore based on
the same argument above and that the defendants made
assurances to the Plaintiff that he was being protected
and that he was in no danger where he was, under M.G.L.A.

258 §10(j)(1) the exclusion shall not apply thus the
statute clearly makes this an actionable claim. Garvin
states that M.G.L.A. 258 § 10(j)(2) also bars exclusion
here because the defendants intervened with the protective
custody status by placing Garvin where they wanted to
instead of following the Code of Mass Regulation 103
C.M.R. 420.07(2) and 926.03(3). If the defendants do not
have a policy and or procedure pursuant to the prescirption
in said C.M.R's then they have violate/abused their
discretion if any exist here. Such a claim is not barred.

> 3. **PLAINTIFF'S CLAIM THAT THE DEFENDANTS ARE
> LIABLE FOR NEGLIGENTLY FAILING TO PREVENT
> AN ASSAULT ON HIM BY ANOTHER INMATE IS NOT
> BARRED BY PUBLIC DUTY ACT AND ESCAPE
> EXCLUSIONS OF MASS TORT CLAIM ACT.**

First Garvin states that with regard to the alleged
escape by Zanetti(the Attacker), Zanetti was never charged
with escape criminally nor discipline internally by the
defendants. This is a highly factually Materially disputed
issue which should bar summary judgement.

Furthermore the defendant
Muldrow and Allen opened the door and let him out. Zanetti
was released in violation of departmental policy and
procedure  3.4.1(A)sec 12 § A, B and D; 3.4.1(H)sec 2;
4.4.6(J)sec 2 and most importantly 3.4.1(?)sec 7 page 11
of 29 of App. p.116C which makes it clear that the pod
officer have the obligation/duty to ensure that inmates
are not allowed to enter restricted areas, for instance

a Sub-Day Room while another special management inmate is
having recreation in handcuffs and shackles. This is why
the door is suppose to be locked. The defendants affirmative
acts of failing to lock the sub-day room door voids the
escape exclusion rule if it ever was applicable based on
M.G.L.A. 258 §10(j)(1) and (2) Supra the escape exclusion
shall not apply. Furthermore even 258 § 10(i) makes it
very clear that where gross negligence is shown 258 § 10
(i) the exclusion does not apply. It states in part "any
claim based upon the....' 'or escape of any person,
including but not limited to prisoner, inmate, detainee,..'
'from the custody of a public employee or employer or
their agents, **unless gross negligence is shown in allowing
such release,....' 'or escape.**" Gross negligence is and
has been shown here based upon the failure to lock the
sub-day room door, and releasing Zanetti from his cell
without applying restraints in violation of their own
procedures in combination with the fact that Defendant
Allen caims to have had prior knowledge of a problem
between the to inmates. And thus Garvin now claims that
Defendant Allen deliberately left the door to the sub-day
room open and then opened Zanetti's door. Tim Allen never
prior to the incident documented what he claimed to have
heard nor did he issue an enemey status between Garvin
and Zanetti.

22

        The other material fact in dispute is that Muldrow
was not in front of Zanetti's door and was leading an inmate
from the shower, back to the cell when he radioed to Allen
and requested for Zanetti's cell to be opened. See App. p18-
19(Complaint) in Contrast to Muldrow's incident report(App.
p.13). This fact would not be in dispute if not for the
spoilation of the video tape of the incident. The lost/
distruction of said tape/video has irreparably damaged
Garvin's proof and deprived him of the chance to litigate.
See Keene V. Brigham and Women's Hospital, Inc., 56 Mass.
App. Ct. 10, 775 N.E.2d 725,(Mass.App.Ct. 2002).

        Garvin states that this matter closley ressembles
Enterprise rent a car of Boston Inc., V. Imbrogna 1996
WL 384128,(Mass.Super.1996), Where the affirmative act was
the defendant giving keys to someone resulting in the
damage of property.("The affirmative act of giving the keys
to Venuti was sufficient risk-creating intervention or
involvement by the officer to give rise to liability. For
this reason, Summary judgement is inappropiate.") This
was essentially giving access to cause damage just like
leaving the sub-day room door unlocked and releasing
Zanetti unrestrained to attack Garvin..See Parker V.
Chief Justice for Admin. and Management of trial Court,
(Mass.App.Ct. 2006)("Thus, for harm to be actionable, it
must, as in any consideration of causation in a tort case,
have been a foreseeable result of the negligence.") The
defendant Tim Allen has allowed such a standard to be met
when he claimed that he knew Garvin and Zanetti had

had issues claiming that Garvin had previously taunted
Zanetti. Also calling Zanetti a punk. See App. p. //9B
(Tim Allen's 3 page incident report) This was "very great
negligence or absence of slight diligence, or the want of
even scant care." Which is within the meaning of gross
negligence. Garvin has presented facts that are material
and that are in dispute, which bar summary judgement.

　　　　Gārviṅ lastly states that if this court intends
on granting summary judgement on any of the grounds raised
by the defendants, then this Honorable Court must take
into consideration that the Plaintiff is suing the defendants
in all capacities available and thus the Court must only
grant summary judgement in the proper capacities.

II.　　　　**GARVIN CAN RECOVER ON HIS CLAIM RELATING
　　　　TO THE TESTIMONY GIVEN BY ANOTHER INMATE
　　　　AT THE PLAINTIFF'S CRIMINAL TRIAL.**

　　　　In count two of the plaintiff's complaint Garvin
seeks to hold the defendants liable for damages/injury
from the false testimony given by Omar Marrero, who was
a known snitch/informant and enemey or known gang member
of one of the gangs known by the defendants to want to
bring Garvin harm. Garvin was placed on a protective custody
status for this very reason. The fact that Marrero was
placed with Garvin is a material fact that is in dispute
as to whether or not it violated Garvin's eigtht Amendment
right.See App. p.7:58 (Complaint)

　　　　Garvin states and claims that the defendants put
him(Garvin) in harm deliberately, in violation of his

Eigtht Amendment right when they placed Omar Marrero in
Garvin's cell. Garvin claims that Marrero searched
Garvin's legal documents and fabricated a statement from
the contents. Garvin also claims that the defendants
conspired to violate Garvin's rights to a fair trial,
Due process under the fifth and fourteenth amendments,
Garvin's rights under the first amendment regarding access
to the courts by denying him a fair trial and due process.
Garvin also raises his rights under Part I Article I, Art
XII and Art XIV of the Massachusetts Declaration of Rights,
Mass.General.Laws.A , 127 Sec 32 Privacy and Federal
Privacy rights. See App. 7-8:58-59

        While the Defendants claim they are "unaware of
any law State or Federal, where prison officials have been
found, liable for the outcome after one inmate decides to
testify against another." , the laws concerning the basis
of Garvin's claims are very clear and clearly established,
furthermore there are cases that are, if not similar close
enough to guide this case. "A Plaintiff is required to
show that a violation of that right has been found in
factually similar cases, or that the violation was so
clear that an official would realize he or she was violating
an inmate's constitutional rights even in absence of an on-
point case." Borello V. Allison, 446 F.3d 742,(C.A.7(Ill.)
2006)

        First in order to begin to approach Garvin's claims
first we must ask did the defendants violate clearly

25

established statutory or constitutional rights of which a
reasonable person would have known. Mendenhall V. Riser,
213 F.3d 226, 230 (5th Cir. 2000); we ask whether the **contours**
of the constitutional right in question were sufficiently
clear that a reasonable officer would understand that
what she is doing violates that right. See Saucier V. Katz,
533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)

Garvin had a right to be free from cruel and unusual
punishment. The Defendants knew there was a risk of harm
due to defendant Ramos' report which was submitted to
Defendant Kenney and reviewed at Garvin's classification
hearing, which prompted the jail officials to place Garvin
on a protective custody status. Said report was generated
by Ramos based on information he obtained from one of his
informants alleging that two gangs, La Familia with the
help of the Latin Kings were plotting to "retaliate against"
Garvin's family. See App. 10 (Ramos' Report) The Defendants
concede to their having knowledge of a risk of harm. See
App. 199 (Defendants' Memorandum P.7:Para.2) Also App. 88C-
88D:10 (Ramos' Supp Answers to Plaintiff's Supp set of
Interrogatories)

Next we ask was Garvin's eigtht amendment rights
violated when the defendants placed Omar Marrero into
Garvin's cell, knowing that Marrero was a La Familia gang
member. The answer is yes they did violate the right in
question. See App. 86:18 (Ramos' answers to first set of
Interrogatories) For this reason summary judgement should

26

be denied. Ramos was so concerned about the threat that he
notified the local law enforcement authorities of his
report and it's contents. See App.*127-128* (Ramos Testimony
Garvin Trial p.40-41:17-2) What changed Ramos claimed he
did not have a problem with Garvin and Marrero being in
the same cell. See App. 88C:8-9 (Ramos answers to Supp set
of Interrogatories) The class baord notified the unit staff
of Marrero's status. See App. 190C (Loss of privileges form)
This is how they notify the unit staff with these forms.
The Defendants Cadigan, Korman, Tsagaris, Kenney, Weldon
and Ramos are a part of the classification Board and knew
of Marrero's Gang affiliation and the fact that he was a
witness for the Commonwealth in his own cases. See App. 180A-B
(Incident reports) " The eighth Amendment requires the
government to protect prisoners from each other, McGill V.
Duckworth, 944 F.2d 344, 347 (7th Cir. 1991), Cert denied,
503 *290 U.S. 907, 112 S.Ct. 1265, 117 L.Ed.2d 493 (1992),
and prison officials likewise must not endanger pretrial
detainees. Swofford V. Winnebago County Dss, 489 U.S. 198,
199, 109 S.Ct. 998, 1005, 103 L.Ed.2d 249 (1989)("If it is
cruel and unusual to hold convicted criminals in unsafe
conditions, it must be unconstitutional [under the Due
Process clause] to confine the involuntarily committed--
who may not be punished at all--in unsafe conditions.")
(Citations omitted). All cited in Zarnes V. Rhodes 64 F.3d
285, (C.A. 7(Ill.) 1995) That is exactly what the defendants
did, they placed Garvin in an unsafe condition by placing

27

a known enemy and snitch(by Marrero's own words) into Garvin's cell. See App. *139* (Marrero's testimony at Garvin trial(told jail officials that he was beat up because his gang brothers thought he was a snitch p.186:16-24) This is a material fact in dispute that should preclude summary judgement, shock the conscience and be deemed gross negligence and deliberate indifference.

The defendants Muldrow and Kelly violated their own policy and procedure when they placed Marrero into Garvin's cell. They both admit that they know the procedure and that they must take all pertinent information available including known enemy status into the assignment process. See App. 68B:3 and 73B:3(Kelly and Muldrow's answers to Supp set of Interrogatories) These are material facts in dispute which should bar summary judgement.

It is most important to reconize that Ramos' job is to identify and track gang members, stay on top of who's enemies with who, who shot who, who's warring with who and to correspond with Law enforcement agencies, which is including but not limited to the District Attorney's office and the CPAC Unit which is attached to the District Attorney's office and which is the very same CPAC Unit that Marrero testified at Garvin's trial, that some at the jail had given to him to contact State Trooper Ronald Gibbons with his information obtained against Garvin. See App. 123 (Ramos' trial testimony Garvin trail p.11-13) And App. *137*

.

(Marrero Trial testimony Garvi trial p. 144:4-13) Thus it is clear that the defendants were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and by the Protective Custody status they all drew that inference. Farmer V. Brennan 511 U.S. 825,---,114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994) For these reasons summary judgement should be denied.

Ramos' actions following Marrero and Garvin being separated is direct and circumstantial evidence supporting Garvin's claims that the jail Officials conspired to place Marrero into Garvin's cell for the purpose of obtaining inculpatory evidence from Garvin namely searching through Garvin's legal documents. First Ramos gave testimony that was untrue regarding why Marrero was placed or may have been placed into Garvin's cell, when he testified that "That move was made to the segregation unit. It was probably the only bed available at the time." App. 133-134 (Ramos testimony Garvi trial p.67-68:18-4) This is not near the truth and totally inconsistent with his earlier testimony where he used the printouts to state that Marrero had been in other cells, all except one was prior to being in Garvin's cell. See App. 3 (Ramos trial testimony Garvin trial p.58:3-10) Secondly Ramos attempted to undermind Garvin's defense concerning Marrero when he testified falsely that the inmates in the segregation unit has nothing in their cells when questioned about legal documents. See App. 135 And App. 136 (Ramos testimony Garvi trial p.69:8-24 and 70:1-12)

141-143

Also see App.141-143 Marrero testimony refuting Ramos concerning

legal mail in the cell p.213-215 Garvin trial) The third

action and most important and that should shock the

conscience taken by Ramos is when he allowed two Springfield

Police Detectives utilize his(Ramos') office to attempt to

intimidate and coerce Timothy Zanetti into cooborating

Marrero's statement and then not documenting the visit as

Regulated by 103 CMR 950.07 which provides that all visits

are to be documented. Zanetti rebuffed the detectives. See

App. 120-120D(Zanetti's affidavit and visiting record 4/2/4) But

that wasn't the end of his affirmative action in assisting

these detectives, Ramos then told Garvin's Private

investigator that Zanetti was no longer housed at that

facility and that Zanetti did not want to speak to anyone.

This was far from the truth. Zanetti had requested to speak

with garvin's Private investigator. See App. 120A-C(Zanetti

Affidavit) These are affirmative actions that should shock

the conscience and that a reasonable and compitent jury

can infer that there could have been a number of undocumented

visits in ramos' office and that the defendants conspired

to place Marrero into Garvin's cell for the purpose of

illegally searching Garvin's legal documents for the

Commonwealth to use to contrive an alleged Admittion

to Assist them in Convicting Garvin. These are

Disputed Material facts, which should bar summary

Judgement. The eighth Amendment Violation

(Placing Marrero in Garvin's cell) is And was

the Nexus [Emphasis Added] to All other Constitutional

Rights, State and Federal, that were subsequently

Violated.  See Rodriguez V. Connecticut, 169 F. Supp 2d 39 (D. Conn. 2001) (where a rival gang member placed in cell murdered rival gang member in a close custody unit designed to manage Gang Members, was a Failure to protect And Sufficient to state a claim of action).

The circumstances of Garvin's claims are Factually similar to Rodriguez Supra. with the exception of the injury suffered. However the injury Garvin has Suffered and continues to suffer; (the loss of his liberties Secured by Federal and State Constitutions and Laws, the mental anguish, psychological injury, irreparable damage to his relationship with his then Wife, Now ExWife (Marrero testified to Garvin being upset At his wife), And Garvin being Particularly distraught because his relationship with his very Young daughter is being restricted and she suffers but All Garvin can do is Fight For his Freedom And visitation as well as phone calls

to his daughter.); is in Garvin's eyes, in it's own way, similar to the physical death in the Rodriguez case supra. to Garvin. See A.L.A. V. West Valley City, 26 F. 3d 989, (C.A. 10 (Utah) 1994) " The fact that the test results ultimately turned out to be false is simply immaterial to the question of whether Plaintiff sustained a personal injury as a result of the broadcasts. Plaintiff's allegations of direct psychological injury stemming from the damage the broadcasts caused to his relationships with his friends and family are more than sufficient to satisfy the "injury in fact" requirement for standing."

Now Garvin turns to the 4th, 5th, 14th And 1st Amendment Rights As well as his rights under the Massachusetts Constitution. While the 8th Amendment Violation was the nexus to the 4th Amendment Violation the 4th Amendment

Violation triggered the 1st, 5th, 14th U.S. Constitional rights and all rights secured under the Mass. Declaration of rights

First was clearly established statutory or Constitutional rights violated by the defendants?

A. Was GARVIN's Right to be Free From Unreasonable Search and Seizure violated And A Clearly established Right

The defendants do not dispute the material fact that Marrero searched And seized information from GARVIN's legal documents and for this reason Summary Judgement Should be denied. See App 212 - 214 (Defendants' Memorandum to Summary Judgement p 20-22) They Only dispute Knowledge of a "deal" between Marrero and the District Attorney's office. Marrero himself admitted to doing so. See App 121 A - 121 H (Affidavits of 5 people) (Regarding Searching Garvins documents and Fabricating an alleged admission) see U.S. v. Ready 574 F. 2d 1009, (C.A. 10 (Kan.) 1978) "It has Since been held that prisoners do not

give up all Constitutional rights while in prison. See Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 LEd. 2d 935 (1974). Mr. Justice Stevens, while a Circuit Judge, invoked the Fourth Amendment, holding that a prisoner enjoys its protection "at least to some minimal extent," to support, along with due process grounds, " Also See U.S. V. Stumes, 549 F.2d 831, (C.A.8 (S.D.) 1977) "Only where the search is justified by legitimate institutional needs and that where, as here, the seizure relates to an alleged offense having no bearing on institutional order or security, a warrant must be obtained."    Clearly established Constitutions (1st, 5th, 14th, Art XII (12), Art XIV And the 4th Amendments of the U.S. and MASS. Constitutions) have been Violated.

  B. Was / Is the actions of
   Marrero attributed to the
   defendants.

 While there is a major material fact in dispute as to whether or not the defendants

knew that Marrero was under a prior agreement with the District Attorney's office prior to violation of Garvin's eighth Amendment right (Placing Marrero in Garvin's cell), the defendants do not dispute the Material Fact that they are Hampden County Law Enforcement and employees Attached to the Courts particularly the D.A.'s office. See App. 123 (Ramos' Testimony Garvin Trial) These two Material Facts Should bar Summary Judgement. Another Material Fact in dispute is whether or not Marrero had a deal with the D.A.'s office. For this reason Summary Judgement Should be denied. Garvin Also States that he was denied deposition of Marrero because he (Marrero) Allegedly Could not be Found to be Served,' a trial can fix this. Marrero is on probation until 2010 his probation officer must have An address for Marrero. For this reason

_____

1. The U.S. Marshals did not serve Marrero with the Summons for the depositions because they said they were unSuccessful.

Summary Judgement should be denied. See Cooper V. Aaron, 78 S.Ct. 1401, 358 U.S. 1, (U.S. Ark. 1958) ("The situation here is in no different Posture because the members of the School Board and Superintendent of Schools are local officials; from the point of View of the Fourteenth Amendment, they Stand in this litigation as the agents of the State.") Whether or not the defendants had knowledge that Marrero was an agent is immaterial, because the Plaintiff Claimed that All of the defendants Conspired and acted in Conjunction with; (meaning the Acting with Detectives, giving Marrero, the Agent, the opportunity to harm Garvin in violation of the Constitution, And being directly the "baby sitter" of an "informant at large"); the defendants want to try and adopt the elements of conspiracy as the standard and burden of proof For the Plaintiff, when it simply is not the Governing Standard of a 42 USC 1983 Civil Action. This is a Question of Law. However the plaintiff

Garvin subsequently Notified the Court and U.S. Marshal service that Marrero was on probation and that they should try this route Garvin got no response to this Notice.

in the event, that this Court adopts the elements
of Conspiracy as the Standard, the Plaintiff States
he has presented Circumstantial Evidence and
direct evidence of Conspiracy and acting in Conjunction,
which should bar Summary Judgement. See Other
Material Facts Unmentioned P.5:8, P.6:9-14,
P. 7:15-18 and P.8 (End of :18) (Plaintiff's Statement
of facts) See Com V. Jung, 420 Mass. 675,
651 N.E.2d 1211, (Mass 1995) (A Private Party
becomes a state agent When government officials
have instigated the party to Search or participated
with the party in a Search in which they
Could not themselves have legally engaged.)
In the Garvin Case the defendants by their
actions and inactions before and after
Marrero Was in Garvin's Cell Committed
Affirmative Acts Which a Competent Jury
Can Conclude that the defendants instigated
A.K.A in Conjunction and or Participated
with AKA Conspired For Marrero to
Search. In Jung Supra the Cooperation
and involvement of Police and Fire
Officials, the Circumstances Under Which
they Gave assistance, the extent of the
assistance and what resulted From it
in terms of aid to the investigation, determined

whether or not the Actions of a private party
was Sufficient to establish a State action.
These are Facts For a Jury to determine and
Conclude. For these reasons Summary Judgement
Should be denied, because under Jung Supra
the agent relationship could have began
when Marrero was placed in the cell aswell.

C. Summary Judgement Should
be denied due to Spoilation
of Evidence on Both Counts

On Count One the video tape/disk has been
Lost and or distroyed. See App. 95:10 (Defendant
Kenney's Answers to First Set of interrogatories p2:10)
Garvin Claims that Zanetti was released from
his cell while no officer was infront of his
door. See App. 3:18-19 (Complaint) This is a
Material fact in dispute. See App. 117 (Incident
report) "Zanetti ran out of Cell #15 behind his
room mate" and App. 69-70:4 (Muldrows
Answers to First set of Interrogatories) "I
was Cuffing an inmate in Front of his cell".
The lost and or distruction of the Video Tape/disk
"Irreparably damage" Garvins Proof and deprived him
of a chance to litigate. See Keene V.
Brigham and Women's Hospital, Inc., 56 Mass. App
Ct. 10, 775 N.E. 2d 725, (Mass. App. Ct. 2002)

38

Also see App. 98E : 7-8 (Kenney's Answers to
Supp set of interrogatories p. 3) They didn't
even back their System up in this day
and age of technology. For these reasons
Summary Judgement Should be denied.

On Count two the Log Book has been
Lost and or distroyed. See App. 185A : 2,
185D - 185E (Response to Request for Documents)
and (Two incident reports of unsucessful Search)
Regarding the Second log book for September
10, 2003 to October 28, 2003.
    Garvin Claims that claims that Marrero
was deliberately placed in his cell by the
defendants who totally disregarded A
Serious know risk of harm. See App 4 : 35-37.
and App. 5-6 ; 38 - 49 Also App 7-8 : 58-60
(All in complaint) The defendants dispute
these material facts And Allege that
the Plaintiff Cannot Prove count Two
See App. 212 - 214 (Memorandum p. 20-22)
The lost or distroyed Log Book prevents
Garvin from Identifying witnesses, Showing
Dates and times and any comments Logged
by any of the defendants or Witnesses,
And thus "irreparably damaged" Garvins

Proof and deprived him of a chance to litigate. See Keene V. Brigham and Women's Hospital, Inc., Supra. For these reasons Summary Judgement Should be denied.

On Both Counts the spoilated evidence Should've been preserved by LAW. For this Reason Summary Judgement Should be denied. The due process clause imposes limits upon a court's discretion to impose a sanction that deprives a party of the opportunity for a trial on the merits" Societe Internationale pour Participations Industrielleset Commerciales, S.A. .V. Rogers, 357 U.S. 197, 209, 78 S.Ct. 1087, 2 L.Ed 2d 1255 (1958). We shald have Our Day in Court. On these Grounds Summary Judgement Should be denied.

And Last, due to Spoilation GARVin Can request an instruction that informs the Jury that they may draw adverse inferences against the defendants. GARVin Can also move to exclude Related evidence Once spoilation has been established. See West over V. Leiserv, Inc., 64 Mass App Ct. 109, 831

40

N.E. 2d 400, (Mass. App. Ct. 2005)
Accordingly the defendants motion for
Summary Judgement on both counts should be
denied.

## Conclusion

For the Foregoing reasons, the Court
Should deny Summary Judgement as requested
by the defendants with respect to both Claims.

For the Plaintiff pro-se

Anthony

Anthony GARVIN pro-se
S.B.C.C.
P.O. Box 8000
Shirley, Ma. 01464

## Certificate of Service

Anthony GARVIN Certifies that Copies of the
Foregoing document were served on all parties
by First Class MAil on  10-1-7 .

41