UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CIVIL ACTION NUMBER: 05-30102-MAP

ANTHONY GARVIN,
PLAINTIFF

v.

COMMONWEALTH OF MASSACHUSETTS. ET. AL.,
DEFENDANTS

PLAINTIFF'S STATEMENT OF THE FACTS

**UNDISPUTED MATERIAL FACTS**

1. The Plaintiff Anthony Garvin filed this instant action against the defendants on April 27,2005 Pro-Se. See App.p.1(Complaint)

2. H.C.H.C is owned and operated by the Commonwealth of Massachusetts. See App. p.20(Answer par. 2)

3. Defendant Michael J. Ashe, Jr. is the Sheriff of Hampden County and a public employee of the Commonwealth of Massachusetts. See App. p.20(Answer¶ 2)

4. Defendants Basil Tsagaris, John Kenney, Edward Weldon, Thomas Korman, Juan Ramos, John Cadigan, William Muldrow and Victor Kelly are public employees of the Commonwealth of Massachusetts. See App. p. 20 (Answer ¶ 2)

5. Garvin was housed as a pretrial detainee at the HCCC/HCHC on May 27,2003 in Ludlow Mass. See App. p.2(Complaint ¶ 17)

6. Garvin was classified as Administrative Protective Custody and assigned to the C-2 unit/pod/Special Management Unit based upon concerns that other inmates who were gang members may attempt to retaliate against Garvin for the murder of one of their fellow members. See App. p.11(Complaint Ex. B incident report)

8. On the Morning of June 2,2003, defendant Muldrow escorted Garvin from his cell to a subday room for recreation time. See App. p. 35(Garvin Depo. 19:2-8)

12. As a result of the assault by Zanetti, Garvin suffered a

laceration to his lip and lumps to the back of the head, over his eye(right) and complained of throbbing of his eye(right). See App. p.39 (Garvin Depo. 33:10-17 and 36:14-17)

15. At his deposition Garvin Conceded that defendants Tsagaris, Kenney, Weldon, Korman, Ramos, Cadigan and Ashe were not present at the time of the attack/assault. See App. 43(Garvin Depo. 50:6-10)

16. At his deposition, Garvin stated that defendant Cadigan denied his request to be transferred to another facility and instructed Garvin that "if [he] wanted to move that [he] would have to contact the jail[to which he wished to be transfered] and get permission from them." See App. 42 (Garvin Depo. 47:13-16)

19. Garvin claims that Marrero "unlawfully searched through the plaintiff's legal documents to seize information about the circumstances of Garvin's criminal case for the benifit of the Commonwealth as well as his own." See App. 5(Complaint ¶ 45)

21. At his deposition Garvin claimed that sometime in August of 2003, and prior to being assigned to Garvin's cell, Marrero "made a deal" with someone from the Hampden County District Attorney's Office to testify against Garvin in exchange for less time. See App.67(Garvin Depo. 72:7-18

22. At his deposition Garvin claimed to have a written statement from a witness who informed him of Marrero's alleged deal with the District Attorney's Office. See App. 49(Garvin Depo. 73:8-15)

24. Approximately two or three weeks after Marrero was assigned as Garvin's cell mate, Garvin "was removed out of the cell." See App. 51(Garvin's Depo. 82:3-8)

## MATERIAL FACTS IN DISPUTE

4. Defendant Tim Allen is also an employee of the Commonwealth of Massachusetts.

7. Garvin did object to his classification as Protective custody

   status inmate and his placement in the segregation unit for
   this purpose of protective custody. See App. 122A-122C (Garvin
   request forms) and App. 12(Ex.C of Complaint)

9. Muldrow was returning an inmate to Zanetti's cell from the
   shower and radioed to defendant Allen in the control tower to
   open Zanetti's cell before he could secure the front of the
   cell door. See App. 3:18-19 (Complaint)

10. Defendant Muldrow restrained Zanetti by himself while defendant
    Kelly placed Zanetti's cell mate back into their cell. See
    App. 3:20 (Complaint)

11. Garvin was not treated for any of his injuries sustained in
    the assault. Nothing was done or given to Garvin. There is
    a difference between being examined and treated. See App. 3:23
    (Complaint) and App. 59 (Medical record)

13. Garvin claims that Defendant Weldon violated his civil rights
    by denying Garvin's request for a transfer and totally
    disregarding Garvin's notification of recent threats, Also
    Weldon assured Garvin that he was being protected. See App. 12:
    (Complaint Ex. C)

14. Defendant Kelly was responsible for the assault by Zanetti
    because he ran the unit in violation of policy and procedure
    by housing two inmates in a cell designed for one inmate
    and failed to assist Muldrow at a cell with two inmates in
    it. See App. 3:18-19 (Complaint)

17. Garvin states that the defendants Tsagaris, Kenney, Weldon,
    Ramos and Ashe are responsible for the assault based on the
    decision to house Garvin in the C-2 Unit/Segregation Unit
    instead of the Protective custody unit D-Unit which was the
    most reasonable alternative and appropriate level of security
    available Pursuant to Codes of Mass. Regulations 103 CMR
    420.07(2) and 926.03(3).

18. Garvin was placed into a double cell on August 27,2003 and
    Marrero was placed into Garvin's cell on September 17,2003

    See App. 189C (Marrero's cell assignment printout).

20. All of the defendants knew or should have known of an agreement between Marrero and the District Attorney's office prior to Marrero being placed into Garvin's cell. See App. 5:39 (Complaint); App. 190B (Incident report where Marrero informed them) and App. 190C (Marrero's Loss of privilage form from his Special Management Hearing) This was enough to cause Defendant Ramos contact the Holyoke Police Department to validate the reason for being beaten. App. 189B (Marrero's Classification & Movement printout Dated 10/20/03).

23. At Garvin's deposition he did provide the Defendants with All of the witnesses names including the witness who informed Garvin that Marrero had a deal with the District Attorney's office. See App. 52(Garvin Depo. 88:7-9) to App. 53(Garvin's Depo.89-90)

25. On October 21,2003 defendant Kelly entered on the system to keep Marrero and Garvin separate, because he heard the men arguing and not talking, which Kelly issued an enemy status for. See App. 68(Kelly's Answer to Interrogatory #27); App. 121A-121C (Garvin's Letter(To his Attorney; Nelson Denzy affidavit; William Murphy affidavit)

26. Garvin did not admit that the defendants did not know about Marrero's deal with the District Attorney's office. Garvin only said that he could not say that they knew, However now Garvin is in possession of documents since the deposition, which clearly shows that Marrero informed the defendants of his status with the D.A.'s office on his own cases. See App. 190-190C (Marrero's Incident reports and Special Management Inmate hearing form) as well as App.189B (Marrero's Movement Printout(Showing that Ramos looked into why marrero was jumped by his own gang brothers))

## OTHER MATERIAL FACTS UNMENTIONED

1. The defendants violated their own procedures regarding the amount of inmates to be housed in each cell designed for one

inmate. See CMR. 103 CMR 920.07(1)

2. Defendant Tim Allen claimed to have witnessed Garvin constantly taunting Zanetti, yet he never issued any enemey status nor took any reasonable steps to avoid any confrontation. See App. 119A-119B (Tim Allen's Recently contrived Incident report)

3. Defendant Allen then failed to secure the subday room door's locking mechanism. See App. 3:17 (Complaint)

4. Defendnat Muldrow walked away from the subday room he had just placed Garvin in without either manually locking the door or radioing to Allen to lock the door. Muldrow continued with other duties. See App. 118 (Mulrow's inconsistent Incident report( I/M Garvin had only been out on rec for a short period of time not allowing us the chance to secure the subday room door.)Last sentence)

5. Defendant Allen then with the knowledge he possessed of Garvin and Zanetti's disputes deliberately opened Zanetti's cell door creating the condition and situation for Garvin to be attacked. See App. 3:19 (Complaint)

6. Defendant Muldrow knowing that he did not lock the subday room door radioed to Allen gave the order for Zanetti's cell to be opened creating the condition and situation for Garvin to be attacked. See App. 3:19(Complaint) and App. 69:3 (Muldrow's answers to first set of Interrogatories)

7. On both counts the defendants totally disregarded known risks and threats and intervened in the protective custody status by their affirmative actions. See number 1, 3, 4, 5 and 6 above. Also see number 8 below.

8. Marrero was a Known La Famial Gang member and the simple affirmative act of totally disregarding the known threat posed by La Familia and Latin King Gang members, and placing Marrero into Garvin's cell intervened in any alleged protection that may have been afforded to Garvin. See App.190B (Incident Report "Marrero is Familia")

9. Defendant Ramos works with other law enforcement agencies which includes the District Attorney's office and most importantly the C.P.A.C unit attached to the District Attorney's office. See App. 123:11-17 (Ramos' testimony at Garvin's trial)

10. Ramos' job consists of but are not limited to identifying and tracking as many gang members as possible within the facility; reading news papers to keep tabs on the latest violence, gang violence, who shot who, who's warring with who and who's enemies with who. See App. 123:8-10 and 18-24 (Ramos' testimony, Garvin Trial)

11. Ramos even admitted that he had no problem with Garvin and Marrero being in the same cell. See App. 88C:8(Ramos' answers to supp set of Interrogatories)

12. Marrero testified at Garvin's trial that someone gave him State Trooper Ron Gibbons' phone number to contact with his information at the Jail. Gibbons is attached to the CPAC Unit.

13. Defendant Ramos assisted Police Detectives with the attempted pocurement of Zanetti as a Commonwealth witness by providing an undocumented/recorded visit with Zanetti in Ramos' office at the HCCC/HCHC, which was a violation of 103 CMR 950.07 (Documenting all visits). See App. 120A-120E (Zanetti's 3 page affidavit and Zanetti's visitors log(Visit was on 4-2-04))

14. The Commonwealth and it's agents had already claimed that Garvin had made admissions to, at the time, suspended Police officer Michael White, who was an inmate at the HCHC/HCCC for Assault and Battery on his wife. White never testified against Garvin but received rewards for simply writing the statement of inculpatory nature. Whites statement clearly, if believed as true, would have violated Garvin's rights within the meaning of Missiah (Right to counsel and Due Process). This Garvin contends is why Marrero was placed into Garvin's cell, as a civilian who if no agent relationship could be established, then Marrero's statement would not violate the Missiah

6

"defense".

15. Garvin states that Hampden County's District Attorney made comments regarding information obtained through jail house snitches in the Lawyers Weekly on Tuesday, March 13, 2007 after the SJC decision in the Matter of Commonwealth V. Frederick Murphy 448 Mass. 452, 862 N.E.2d 30 (Mass. 2007) (Conduct of Government Agents, Due Process of Law, Assistance of counsel, Extrajudicial statement.) William M. Bennett (D.A.) Stated "It's clear that getting information from people who are themselves involved in criminal activity is an important part of a lot of cases, and it would be a bad situation if the Commonwealth were prohibited from using that type of information," The Hampden county D.A.'s office creates a market for jail house informants who already know that they can come to the D.A.'s office and get a deal for any information they obtain.

16. In some situations the D.A.'s Office will get informants transfered for safety reasons and to obtain inculpatory evidence against pretrial detainees. See App. 192 (Marrero's letter to D.A. William M. Bennett requesting a transfer) also See App. 186 (Affidavit of the Madera Brothers(agent transfered from one jail to another to obtain inculpatory evidence against two separated brothers))

17. In cases where the D.A.'s office wants to circumvent the law they need the Sheriff's Department to move the informants into the appropriate area. See App. 186 (Affidavit of the Madera brothers)

18. The Defendants' credibility can be called into question due to inconsistent statements/Incident reports; spoilation of evidence(Log Book and video of assault); and Failure to document visit held in Defendant Ramos' office with two Springfield Police Detectives and Garvin's potential witness prior to Garvin's Private Investigator being able to speak with the witness (Zanetti (attacker). See App. 117-118; 185A

-185E; 95:10; 98E:7; and 120A-120E

19. Defendant Tim Allen's Incident report is totally inconsistent with the medical reports regarding his statement "I was witness to'...'Ididnt see anyone get hurt'...'I was very impressed with Garvin's boxer like skills as he avoided all of Zanetti's punches Garvin wasnt struck at all"(In part), the medical reports clearly calls Allen a bold face liar! See App.59 (Medical reoprt post altercation); and App. 119 (Allen's Incident report) It appears that Defendant Tsagaris signed the incident report as the suporvisor.

20. Garvin now suffers from a converging problem with regard to his eye and gets headaches when he reads for a short time period and also has been ordered to wear eye glasses by the eye physician at the facility he now resides in. See 59-59F (Medical records)

21. Zanetti was never charged with, or disciplined for escape.

Garvin states that the statements made herein are true to the best of his ability to remember and are hereby signed under the pains and penalties of perjury.

For the Plaintiff Pro-Se

_Anthony_ (signature)
Anthony Garvin Pro-Se
S.B.C.C.
P.O. BOX 8000
Shirley, Ma. 01464

CERTIFICATE OF SERVICE

I Anthony Garvin hereby certify that a copy of the foregoing document has been served upon Defense Counsel, Kevin D. Withers by first class mail on  10-1-7  .