UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ANTHONY GARVIN,            )
       Plaintiff            )
                                         )
                                         )
      v.                        )    Civil Action No. 05-30102-MAP
                                         )
                                         )
HAMPDEN COUNTY SHERIFF'S   )
DEPARTMENT, ET AL.,        )
       Defendants           )

REPORT AND RECOMMENDATION WITH REGARD TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT (Document No. 104)
March 4, 2008

NEIMAN, C.M.J.

In this *pro se* action, Anthony Garvin ("Plaintiff"), a state prisoner, seeks damages for certain events that occurred during his incarceration at the Hampden County Correctional Center ("HCCC") in Ludlow, Massachusetts, during the summer of 2003. In particular, Plaintiff asserts the following three causes of action against various HCCC employees, the Hampden County Sheriff's Department, the Hampden County Commissioners, and the Commonwealth of Massachusetts (together "Defendants"): (1) constitutional claims arising under 42 U.S.C. § 1983; (2) negligence claims arising under the Massachusetts Torts Claims Act ("MTCA"), Mass. Gen. L. ch. 258; and (3) civil conspiracy claims. Defendants' motion for summary judgment, which targets all three causes of action, has been referred to this court for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B). For the following reasons, the court will recommend that Defendants' motion be allowed.

I. BACKGROUND

The following background sketches certain incidents that occurred at the HCCC in the summer of 2003 and is stated in a light most favorable to Plaintiff, the party opposing summary judgment. *See Douglas v. York County*, 433 F.3d 143, 149 (1st Cir. 2005). Additional facts with respect to these incidents are addressed in the court's discussion below.

On May 27, 2003, Plaintiff was housed as a pre-trial detainee on state charges. (Doc. No. 104-4, Def.'s Local Rule 56.1 Statement of Facts ("Def.'s Facts") ¶ 5.) Plaintiff was given "administrative custody" status and assigned to a special management unit based upon a concern that other inmates -- who were rival gang members -- desired to retaliate against Plaintiff for his murder of one of their associates. (*Id.* ¶ 6. See also Doc. No. 3 ("Compl.") Ex. A, B.) On May 30, 2003, Plaintiff requested to be transferred to another facility for his safety. (Compl. Ex. C.) One of the defendants, a "Major Weldon," allegedly responded to this request by telling Plaintiff the following: "You are in no danger where you are now. If you want to go somewhere else, write to them and if they take you I will transport you there." (*Id.*)

On June 2, 2003, another defendant, Officer William Muldrow, escorted Plaintiff from his cell to a day room for recreation time. (Def.'s Facts ¶ 8.) Shortly thereafter, while Muldrow was escorting another inmate to the showers, that inmate's cell mate, Timothy Zanetti, ran out of his cell, past Muldrow, and into the day room where Plaintiff was handcuffed and shackled. (*Id.* ¶ 9. See also Doc. No. 104-7 ("Garvin Dep.") at 18.) Zanetti attacked Plaintiff by punching him approximately six times in the face, back

of the head, eye and lip. (Def.'s Facts ¶ 9; Garvin Dep. at 30.) Officer Muldrow, along with Officer Victor Kelly, another defendant, then restrained Zanetti and returned him to his cell. (Def.'s Facts ¶ 10. See also Compl. Ex. D.) Shortly thereafter, Plaintiff was examined by medical personnel and treated for a lump over his eye, a bleeding lip and dizziness. (Def.'s Facts ¶ 11.)

Three months later, on September 1, 2003, Plaintiff was moved to a double bunk cell, which he shared with yet another inmate, Omar Marrero. (*Id.* ¶ 18.) Plaintiff claims that Marrero unlawfully searched through his legal documents and provided information about Plaintiff's criminal case to the government. (*Id.* ¶ 19.) Plaintiff also asserts that Marrero made a deal with the Hampden County District Attorney's Office to testify against Plaintiff in exchange for less prison time. (*Id.* ¶ 21.)

Plaintiff filed his complaint on April 27, 2005. Dissecting its two "counts," the complaint actually appears to present three causes of action: (1) that Plaintiff's constitutional rights were violated by Defendants' failure to provide adequate medical attention and security; (2) that Defendants are liable in negligence for failing to protect him from Zanetti's attack; and (3) that Defendants are liable for civil conspiracy regarding Marrero's testimony against Plaintiff at his criminal trial. In due course, Defendants moved for summary judgment and Plaintiff filed an opposition. On January 28, 2008, the court allowed Plaintiff to amend his opposition.

## II.  DISCUSSION

It is well-established that summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(c). The nonmoving party bears the burden of placing at least one material fact into dispute after the moving party shows the absence of any disputed material fact. *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir. 1994) (discussing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). To be sure, *pro se* allegations must be given a certain degree of solicitude. *See Haines v. Kerner*, 404 U.S. 519 (1972). Even so, the court believes that, in the instant matter, Defendants are easily entitled to summary judgment with respect to all three of Plaintiff's causes of action.

A.   Constitutional Claims

Plaintiff begins with a constitutional, *i.e.*, Eighth Amendment, argument that has three aspects, which the court will address *seriatim*. Plaintiff first alleges that, following his attack by Zanetti, Defendants exhibited deliberate indifference to his serious medical needs. (Compl. ¶ 6.) For Plaintiff to maintain such a claim, he must show that the prison officials knew of, yet disregard, an excessive risk to health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 838 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). In this court's opinion, it is impossible for any reasonable juror to make such a finding.

According to the undisputed facts, Plaintiff was examined by medical personnel just after his attack on June 2, 2003, immediately prescribed Tylenol, and promptly told to apply a cold, damp cloth above his eye and return if he had further complaints. (Doc. No. 121, Ex. E.) Two days later, when Plaintiff continued to complain of headaches, he was given ibuprofen and told to rest and avoid strenuous activity. (*Id.*)

Later that day, Plaintiff was examined again for throbbing behind his right eye and then scheduled for an eye exam which was administered on June 10, 2003. (*Id.*)

These facts reveal that Plaintiff was evaluated by medical personnel and dealt with efficiently and appropriately every time he requested medical attention. His bald assertion that he was "examined" and not "treated" (Pl.'s Local Rule 56.1 Statement of Facts ¶ 11 at 3) is without merit. Since there is no evidence that any prison official disregarded Plaintiff's health or safety, let alone acted with deliberate indifference, Defendants' motion for summary judgment should be allowed as to this first aspect of Plaintiff's constitutional claims.

Second, Plaintiff claims Defendants violated his Eighth Amendment rights by failing to protect him from Zanetti's assault. (Compl. ¶ 6.) To succeed on this theory, Plaintiff must demonstrate two conditions: first, that he was "incarcerated under conditions posing a substantial risk of serious harm"; and, second, that prison officials acted with "deliberate indifference" to his health or safety, resulting in an "unnecessary and wanton infliction of pain." *Farmer*, 511 U.S. at 834. Again, the court believes that Plaintiff will be unable to make that showing. For one thing, Defendants themselves were concerned that Plaintiff might be a target and, thus, gave him "protective custody" and housed him in the administrative segregation unit. In addition, when Plaintiff was assaulted, the officers on duty immediately restrained his attacker. Plaintiff does not dispute these facts but, again, simply makes broad-based allegations of deliberate indifference. That is simply insufficient.

Third, Plaintiff argues that Major Weldon and another defendant -- a "Lieutenant

5

Cadigan" -- violated his Eighth Amendment rights by failing to honor his request to be transferred to another facility. It is well-established, however, that prison officials retain by law the discretion to make transfer decisions "for whatever reason or for no reason at all." *Meachum v. Fano*, 427 U.S. 215, 228 (1976). *See also Hastings v. Comm'r of Correction*, 674 N.E.2d 221, 225-26 (Mass. 1997) (holding that a prisoner has no reasonable expectation to remain in, or be granted a transfer to, a particular prison). Accordingly, summary judgment should also enter in Defendants' favor on this third aspect of Plaintiff's constitutional claims.

B.  Negligence Claims

Plaintiff next claims that Defendants committed "negligence towards [his] safety" by failing to prevent Zanetti's attack. (Compl. ¶¶ 6, 7. See also *id*. ¶¶ 13-34.) In the court's view, however, summary judgment should enter in Defendants' favor on these claims as well for at least three reasons: (1) the individual defendants were undisputedly acting within the scope of their employment and, therefore, are immune from liability in their individual capacities under section 2 of the MTCA; (2) the MTCA's discretionary function exception, section 10(b), immunizes all Defendants from liability regarding their decisions with respect to Plaintiff's classification and housing; and (3) section 10(j) of the MTCA immunizes Defendants from any remaining negligence liability they might have with respect to their alleged failure to prevent Zanetti's attack. However, the court disagrees with Defendants that another portion of the MTCA, section 10(i), also immunizes them from negligence liability.

1.  *The Individual Defendants*

The parties agree that negligence claims of the sort pursued by Plaintiff must comport with section 2 of the MTCA. In pertinent part, that section provides that "no . . . public employee . . . shall be liable for any injury or loss of property or personal injury or death caused by his negligent or wrongful act or omission *while acting within the scope of his office or employment.*" Mass. Gen. L. ch. 258, § 2 (emphasis added). Thus, the parties agree that the individual defendants here would be immune from personal liability if they were acting within the scope of their employment at the time of Zanetti's attack. *See Petricca v. City of Gardner*, 194 F. Supp. 2d 1, 4 (D. Mass. 2002) (finding public officials immune from personal MTCA liability for alleged misfeasance conducted during employment); *Canney v. City of Chelsea*, 925 F. Supp. 58, 69-70 (D. Mass. 1996) (similar).

In the court's view, there can be no dispute that all of the individual defendants against whom this claim is directed were acting within the scope of their respective employment at the time of the attack. It is undisputed that Officer Muldrow, as part of his job, was escorting an inmate back to his cell and then restrained Zanetti after the altercation. (Compl. ¶¶ 18-20.) It is also undisputed that Officer Kelly, again as part of his job, helped place the initial inmate in his cell after Officer Muldrow began restraining Zanetti. (*Id.*) Finally, it is undisputed that Officer Tim Allen, yet another defendant, was working in his regular capacity in the control tower at all relevant times. (See *id.*) And there appear to be no specific negligence allegations leveled against any other individual defendant. Since no facts have been asserted by Plaintiff that any defendant was working outside the scope of his employment when Zanetti attacked him, summary

judgment as to the individual defendants should be allowed with respect to Plaintiff's negligence claims.

   2. *Discretionary Function Exception*

In the court's view, summary judgment should also enter in Defendants' favor to the extent Plaintiff asserts that Zanetti's attack was premised on a negligent classification of Plaintiff's status and housing assignments.  As Defendants note, section 10(b) of the MTCA -- the so-called "discretionary function" exception -- immunizes them from "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting within the scope of his office or employment, whether or not the discretion involved is abused."  Mass. Gen. L. ch. 258, § 10(b).  As the First Circuit has explained, "decisions with regard to classification of prisoners, assignment to particular institutions or units . . . must be viewed as falling within the [federal] discretionary function exception . . . if penal institutions are to have the flexibility to operate."  *Santana-Rosa v. United States*, 335 F.3d 39, 44 (1st Cir. 2003) (Ponsor, J., sitting by designation).  Since the MTCA's discretionary function exception is modeled directly after its federal counterpart, *see Crete v. City of Lowell*, 418 F.3d 54, 60-61 (1st Cir. 2005), those immunity principles necessarily apply to Plaintiff's MTCA claims here.

   3. *Section 10(j)*

The court also agrees with Defendants that section 10(j) of the MTCA immunizes them from any remaining negligence liability regarding their alleged failure to prevent Zanetti's attack.  Section 10(j) provides that there shall be no liability of a public

employer for "any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer." Mass. Gen. L. ch. 258, § 10(j).

To be sure, the Massachusetts Supreme Judicial Court has described the language used in section 10(j) as "convoluted and ambiguous, as evidenced by the difficulty Superior Court judges have had in applying it and the inconsistency of outcomes." *Brum v. Town of Dartmouth*, 704 N.E.2d 1147, 1153 (Mass. 1999). Even so, it appears clear in the instant case that Plaintiff's "harmful consequences" (his injuries) were caused by "the violent or tortious conduct of a third person" (Zanetti) and that, classification and housing aside, Defendants themselves did not "originally cause[]" Plaintiff's condition or situation. It is also clear that section 10(j) was intended to apply quite expansively. *See id. See also Jacome v. Commonwealth*, 778 N.E.2d 976, 979 (Mass. App. Ct. 2002) (noting the legislature's intent to immunize the Commonwealth from "*any* claim for a loss not originally caused by the public employer") (emphasis in original).

In many ways in fact, this case is similar to *Jacome*, which applied section 10(j) immunity to state officials who oversaw a public beach where the decedent drowned. *Id.*, 778 N.E.2d at 979. Noting the broad sweep of section 10(j), the court acknowledged -- similar to Plaintiff's attempted argument here -- that there were many "examples of ways in which the public employees might have *prevented* the harm to [the plaintiff]," *e.g.*, they may have closed the beach, posted conspicuous warning or

placed lifeguards on duty until 6:00 p.m. *Id.* (emphasis in original). However, "[f]or there to be liability despite the protection of § 10(j)," the court stated, "the act of the government's agent 'must have *materially contributed* to creating the specific "condition or situation" that resulted in the harm.'" *Id.* (quoting *Kent v. Commonwealth*, 771 N.E.2d 770, 775-76 (Mass. 2002)) (emphasis added). Yet here, as in *Jacome*, there are no factually supported allegations -- other than, perhaps, the classification and housing decisions addressed above in the context of section 10(b) -- that any defendant "materially contributed" to the condition or the situation, only that Defendants failed to prevent the harm. Thus, the instant situation, like *Jacome*, appears to be the very type for which section 10(j) was intended to immunize public officials. *See Brum*, 704 N.E.2d at 1155 ("[T]he principal purpose of § 10(j) is to preclude liability for failures to prevent or diminish harm, including harm brought about by the wrongful act of a third party."). *Accord Serrell v. Franklin County*, 713 N.E.2d 389, 392 (Mass. App. Ct. 1999). Accordingly, the court is compelled to recommend that summary judgment enter in Defendants' favor with respect to any remaining negligence liability.

    4. *Section 10(i)*

As is obvious, the above analysis calls for summary judgment in Defendants' favor with respect to Plaintiff's claims of negligence. In order to provide a full report and recommendation, however, the court wishes to point out that it does not agree with Defendants that yet another section of the MTCA, section 10(i), immunizes them from negligence liability with respect to Zanetti's attack. That section provides that liability shall not apply to "[a]ny claim based upon the release, parole, furlough or escape of

any person, including but not limited to a prisoner, inmate, detainee, juvenile, . . . from the custody of a public employee . . . unless gross negligence is shown in allowing such release, parole, furlough or escape." Mass. Gen. L. ch. 258, § 10(I). Broadly speaking, section 10(i) appears to apply to a situation in which a person in custody escapes and then harms some third person, who then brings an action against the public official in charge. *See Suboh v. City of Revere*, 141 F. Supp. 2d 124, 135 (D. Mass. 2001), *aff'd in part and rev'd in part on other grounds*, 298 F.3d 81 (1st Cir. 2002).

      The court does not believe that section 10(i) was intended to encompass the particular situation here.  Unlike other section 10(i) cases which involve a prisoner's release from custody into the general public, *see, e.g.*, *Suboh*, 141 F. Supp. 2d at 135; *LaMachia v. City of Worcester*, 17 Mass. L. Rptr. 467, 2004 WL 689268, at *2 (Mass. Super. Ct. Mar. 17, 2004); *see also See also* Joseph W. Glannon, *Liability for "Public Duties" Under the Tort Claims Act: The Legislature Reconsiders the Public Duty Rule*, 79 Mass. L. Rev. 17, 26 (March 1994) ("Subsection (I) deals with claims based on the release of persons in custody."), Zanetti cannot be deemed to have "escaped" within the prison's internal walls.  To paraphrase District Judge Patti B. Saris, section 10(i) has never been read by Massachusetts courts sweep as broadly as section 10(j).  *See Willhauck v. Town of Mansfield*, 164 F. Supp. 2d 127, 140 (D. Mass. 2001) (holding that "the term 'juvenile' as used in section 10(i) should be construed . . . to mean only those juveniles who are entirely committed to the 'custody' of a public entity").  Even if the trial court finds that section 10(i) does apply to the instant facts, this court believes that,

11

given the facts alleged, Plaintiff will be unable to demonstrate the necessary level of *gross* negligence required by that subsection. *See Altman v. Aronson*, 121 N.E. 505, 506-07 (Mass. 1919); *First Am. Title Ins. Co. v. Lippman*, 851 N.E.2d 1133 (Mass. App. Ct. 2006).

Perhaps most importantly, however, section 10(i) is unnecessary to the court's allowance of Defendants' motion for summary judgment. As Judge Saris noted in *Willhauck*, "[t]he immunities provisions contained in § 10 operate in the alternative." *Id.* at 136. "Thus, even if § 10(i) would otherwise permit [Plaintiff's] claim[s] to be brought," those claims are "barred because the immunities provided in § 10(b) and § 10(j) already apply." *Id.* at 140 (citing *Brum*, 704 N.E.2d at 1156)

C.  Civil Conspiracy Claims

Finally, Plaintiff claims that Defendants entered into an illegal agreement with his former cell mate, Marrero, who testified against him at his criminal trial. Unfortunately for his cause, Plaintiff's attempt to set forth a claim for civil conspiracy falls woefully short.

"Civil conspiracy is recognized as a 'very limited cause of action in Massachusetts.'" *Brown v. Armstrong*, 957 F. Supp. 1293, 1305 (D. Mass. 1996) (quoting *Aetna Cas. Sur. Co. v. P & B Autobody*, 43 F.3d 1546, 1563 (1st Cir. 1994)). A valid conspiracy claim requires "first, a common design or an agreement, although not necessarily express, between two or more persons to do a wrongful act and, second, proof of some tortious act in furtherance of the agreement." *Aetna*, 43 F.3d at 1564.

Plaintiff fails to present sufficient evidence to satisfy these requirements and to counter the facts proffered by Defendants. First, as stated in their undisputed answers to interrogatories, Defendants were not aware of any arrangement between Marrero and the District Attorney's office before Marrero was assigned as Plaintiff's cell mate. Second, and more to the point, Plaintiff has provided not an iota of evidence to show that, with respect to Marrero, Defendants acted tortiously or otherwise. To the contrary, Plaintiff conceded at his deposition that Defendants knew of no "deal" between Marrero and the District Attorney's Office:

> Q: And it is your claim that one of the named–one or more of the named defendants in this case was aware of that deal before Mr. Marrero was put in as your cell mate?
>
> A: Well, either they were aware of the deal or they were aware that there was a possibility that he was a snitch. They knew that for sure because he told them.
>
> Q: As far as the deal that Mr. Marrero made with someone in the DA's office–
>
> A: I can't say that they knew about that.

(Garvin Dep. 90:14 to 91:5). As a result, this court believes that Defendants are entitled to summary judgment as to Plaintiff's civil conspiracy claims.[1]

### III. CONCLUSION

For the reasons stated, the court recommends Defendants' motion for summary

---

[1] Although the court recently allowed Plaintiff to amend his opposition to Defendants' motion for summary judgment, it agrees with Defendants that his additional assertions -- which attempt to bolster his civil conspiracy claims -- add absolutely nothing of substance to and in no way alter the preceding analysis.

judgment be ALLOWED.[2]

DATED: March 4, 2008

               /s/ Kenneth P. Neiman
               KENNETH P. NEIMAN
               U.S. Magistrate Judge

---

[2] The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. See *Keating v. Secretary of Health & Human Services*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980). See also *Thomas v. Arn*, 474 U.S. 140, 154-55 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.